IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BAILEY REYNOLDS and HELEN MARTINEZ on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| *Plaintiffs,* | ) ) | No. 1:18-cv-00423-CCE-LPA |
| v. | ) ) | |
| FIDELITY INVESTMENTS INSTITUTIONAL OPERATIONS COMPANY, INC., FMR LLC, FIDELITY BROKERAGE SERVICES LLC, FIDELITY WORKPLACE INVESTING LLC, and VERITUDE LLC, | ) ) ) ) ) ) ) | |
| *Defendants.* | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASSES; APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL; APPROVAL OF SETTLEMENT ADMINISTRATOR; AND APPROVAL OF PLAINTIFFS' NOTICE OF SETTLEMENT

**TABLE OF CONTENTS**

I.     INTRODUCTION ..................................................................................... 1

II.    FACTUAL & PROCEDURAL HISTORY ............................................. 1

       A.     The Nature of Plaintiffs' Claims ................................................. 1

       B.     Procedural History ........................................................................ 2

       C.     Settlement Negotiations ............................................................... 3

III.   SUMMARY OF SETTLEMENT TERMS ............................................ 4

       A.     Monetary Awards .......................................................................... 4

       B.     Settlement Administrator .............................................................. 5

       C.     Notice Provisions .......................................................................... 6

       D.     Attorney's Fees, Expenses, Service Awards & Settlement Costs ................. 7

IV.    CLASS CERTIFICATION ..................................................................... 10

       A.     Provisional Certification of the Rule 23 Class for Settlement is
              Appropriate ................................................................................... 10

              1.     Numerosity ......................................................................... 12

              2.     Commonality ...................................................................... 13

              3.     Typicality ........................................................................... 14

              4.     Adequacy ............................................................................ 15

              5.     Predominance and Superiority ........................................... 17

       B.     Plaintiffs' Counsel Should Be Appointed as Class Counsel. ...... 20

V.     PRELIMINARY APPROVAL ............................................................... 21

       A.     Preliminary Approval of the Settlement is Procedurally Fair. .... 24

       B.     Preliminary Approval of the Settlement is Substantively Fair
              because the Settlement is Fair, Reasonable and Adequate. ......... 24

              1.     Litigation Through Trial Would be Complex, Costly, and

Long (*Grinnell* Factor 1) ................................................................. 26

2.  The Reaction of the Classes Has Been Positive (*Grinnell* Factor 2) ............................................................... 26

3.  Litigation and Discovery Have Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3) ........................................................... 27

4.  Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5) ............................................ 28

5.  Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6) ............................................ 29

6.  Defendants' Ability to Withstand a Greater Judgment is Not Determinative (*Grinnell* Factor 7) ................................. 29

7.  The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ...................................... 30

C.  The Notice Plan and Distribution Process are Appropriate ........................ 31

VI.  CONCLUSION ................................................................................ 32

# TABLE OF AUTHORITIES

**CASES**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................. 19

*Baby Neal v. Casey*,
  43 F.3d 48 (3d Cir.1994) .......................................................................... 13

*Beasley v. Custom Communs, Inc.*,
  2017 U.S. Dist. LEXIS 219975, at *9 (E.D.N.C. Oct. 24, 2017) .................................. 9

*Beaulieu v. EQ Indus. Servs.*
  2009 U.S. Dist. LEXIS 133023 (E.D.N.C. Apr. 20, 2009) .......................................... 32

*Berber v. Hutchison Tree Serv.*,
  2018 WL 3869980 (E.D.N.C. Aug. 14, 2018) ..................................................... 16

*Brown v. Delhaize Am., LLC*
  2015 U.S. Dist. LEXIS 184265 (M.D.N.C. July 20, 2015) ................................... 28, 29

*Carrillo v. Schneider Logistics Transloading and Distribution, Inc.*
  No. 2:11-cv-08557 (C.D. Ca. 2015) .............................................................. 6

*Central Wesleyan Coll. v. W.R. Grace & Co.*,
  143 F.R.D. 628 (D.S.C.1992) ................................................................... 13

*Ceras-Campo v. WF P'ship,*
  2011 U.S. Dist. LEXIS 12688 (E.D.N.C. Feb. 7, 2011) ........................................... 18

*Cerrato v. Durham Pub. Sch. Bd. of Educ.*,
  2017 WL 2983301 (M.D.N.C. Mar. 17, 2017) ..................................................... 17

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) .............................................................. passim

*DeWitt v. Darlington Cty.*
  2013 U.S. Dist. LEXIS 172624 (D.S.C. Dec. 6, 2013) .................................. 7, 9, 22, 25

*Domonoske v. Bank of Am., N.A.*,
  790 F. Supp. 2d 466 (W.D. Va. 2011) ........................................................... 27

*Duprey v. Scotts Co. LLC*,
  30 F. Supp. 3d 404 (D. Md. 2014) .............................................................. 27

iv

*Ealy v. Pinkerton Gov't Servs., Inc.*,
    514 F. App'x 299 (4th Cir. 2013) .............................................................. 11

*Faile v. Lancaster Cty.*
    2012 U.S. Dist. LEXIS 189610 (D.S.C. Mar. 8, 2012) ............................ 8, 9

*Flinn v. FMC Corp.*
    528 F.2d 1169 (4th Cir. 1975) ............................................................. 25, 30

*Frank v. Eastman Kodak Co.*
    228 F.R.D. 174 (W.D.N.Y. 2005)............................................................... 30

*Gaxiola v. Williams Seafood of Arapahoe, Inc.,*
    776 F. Supp. 117 (E.D.N.C. 2011)....................................................... 14, 18

*Gen. Tel. Co. of the Sw. v. Falcon,*
    457 U.S. 147 (1982)................................................................................... 13

*Gunnells v. Healthplan Servs., Inc.*,
    348 F.3d 417 (4th Cir. 2003) .................................................................... 17

*Hackett v. ADF Rest. Invs.*
    2016 U.S. Dist. LEXIS 174775 (D. Md. Dec. 16, 2016)............................... 7

*Hall v. Higher One Machs., Inc.*
    2016 U.S. Dist. LEXIS 131009 (E.D.N.C. Sep. 26, 2016)...................... 21, 23

*Helmick v. Columbia Gas Transmission*
    2010 U.S. Dist. LEXIS 65808 (S.D. W. Va. July 1, 2010) ........................... 9

*Hoffman v. First Student, Inc.*
    2010 U.S. Dist. LEXIS 27329 (D. Md. Mar. 23, 2010)................................ 8

*Hood v. Uber Techs., Inc.,*
    2019 WL 93546 (M.D.N.C. Jan. 3, 2019) ........................................... 7, 28

*Horton v. Merrill Lynch, Pierce, Fenner & Smith*
    855 F. Supp. 825 (E.D.N.C. 1994)....................................................... 23, 30

*In re A.H. Robins Co.*
    880 F.2d 709 (4th Cir. 1989) .................................................................... 30

*In re Am. Med. Sys., Inc.,*
    75 F.3d 1069 (6th Cir. 1996) .................................................................... 15

*In re Dollar Gen. Stores FLSA Litig.*

2011 U.S. Dist. LEXIS 98162 (E.D.N.C. Aug. 22, 2011) ...........................................24

*In re Jiffy Lube Sec. Litig.*
927 F.2d 155 (4th Cir. 1991) ..................................................................................23

*In re MI Windows & Doors Prods. Liab. Litig.*
2015 U.S. Dist. LEXIS 95889 (D.S.C. July 23, 2015) .........................................28, 29

*In re MicroStrategy, Inc. Sec. Litig.*
148 F. Supp. 2d 654 (E.D. Va. 2001) ....................................................................22, 25

*In re The Mills Corp. Sec. Litig.*,
265 F.R.D. 246 (E.D. Va. 2009) ..............................................................................27

*In re Tyson Foods, Inc.*,
694 F. Supp. 2d 1372 (M.D. Ga. 2010) ...................................................................16

*Irvine v. Destination Wild Dunes Mgmt.*
204 F. Supp. 3d 846 (D.S.C. 2016)............................................................................9

*Kampfer v Fifth Third Bank, et al.*
No. 3:14-cv-02849 (N.D. Ohio 2017).........................................................................6

*Kay Co. v. Equitable Prod. Co.*
749 F. Supp. 2d 455 (S.D. W. Va. 2010) ...................................................................9

*Kirkpatrick v. Cardinal Innovations Healthcare Sols.*,
2018 WL 6718948 (M.D.N.C. Dec. 18, 2018) ..........................................................22

*Kruger v. Novant Health*,
2016 WL 6769066 (M.D.N.C. Sept. 29, 2016)............................................................9

*Mace v. Van Ru Credit, Corp.*,
109 F.3d 338 (7th Cir. 1997)....................................................................................19

*Martinez-Hernandez v. Butterball, LLC*,
2011 WL 4549606 (E.D.N.C. Sept. 29, 2011)...........................................................17

*Matthews v. Cloud 10 Corp.*
2015 U.S. Dist. LEXIS 114586 (W.D.N.C. Aug. 27, 2015)........................................24

*McClaran v. Carolina Ale House Operating Co., LLC*
2015 U.S. Dist. LEXIS 112985 (D.S.C. Aug. 26, 2015) ..............................................7

*McLaurin v. Prestage Foods, Inc.*,
2012 WL 12910993 (E.D.N.C. Feb. 3, 2012)............................................................16

*McLaurin v. Prestage Foods, Inc.*,
    271 F.R.D. 465 (E.D.N.C. 2010) ................................................................. 12, 14, 18

*Moore v. Publicis Groupe SA*
    No. 1:11-cv-01279 (S.D.N.Y. 2016)............................................................. 6

*Newman v. Stein*
    464 F.2d 689 (2d Cir. 1972)........................................................................ 30

*Olvera-Morales v. Int'l Labor Mgmt. Corp.*,
    246 F.R.D. 250 (M.D.N.C. 2007) ............................................................. 13, 15

*Paine v. Intrepid U.S.A., Inc.*
    No. 3:14-cv-02005 (M.D. Tenn. 2017)........................................................ 6

*Reed v. Friendly's Ice Cream, LLC*
    No. 1:15-cv-00298 (M.D. Pa. 2016) ........................................................... 6

*Riddle v. City of Anderson*,
    2015 U.S. Dist. LEXIS 192079 (D.S.C. Jan. 26, 2015)............................... 27, 28

*Rindfleisch v. Gentiva Health Servs., Inc.*,
    962 F. Supp. 2d 1310 (N.D. Ga. 2013) ..................................................... 15, 16

*Robinson v. Harrison Transp. Servs., Inc.*
    2016 U.S. Dist. LEXIS 86294 (E.D.N.C. June 30, 2016) ........................... 24

*Romero v. Mountaire Farms, Inc.*,
    796 F. Supp. 2d 700 (E.D.N.C. 2011)....................................................... 13, 14, 15, 18

*S.C. Nat. Bank v. Stone*,
    749 F. Supp. 1419 (D.S.C. 1990)................................................................ 22, 25, 26

*Saman v. LBDP, Inc.*
    2013 U.S. Dist. LEXIS 83414 (D. Md. June 13, 2013) ............................... 24

*Smith v. Krispy Kreme Doughnut Corp.*,
    2007 WL 119157 (M.D.N.C. Jan. 10, 2007) ............................................ 7, 9

*Solais v. Vesuvio's II Pizza & Grill, Inc.*,
    2016 WL 1057038 (M.D.N.C. Mar. 14, 2016) .......................................... 15

*Speaks v. U.S. Tobacco Coop., Inc.*,
    324 F.R.D. 112 (E.D.N.C. 2018) .............................................................. 17

*Talarico v. Pub. Partnerships, LLC*,

2018 WL 3972332 (E.D. Pa. Aug. 20, 2018) ............................................................ 16

*Tomkins v. Amedisys, Inc.*,
    2014 WL 129407 (D. Conn. Jan. 13, 2014) ................................................. 16

*Velasquez-Monterrosa  v. Mi Casita Restaurants*
    No. 5:14-CV-448-BO, Dkt. 121 (E.D.N.C. September 26, 2017) .............................. 30

*Velasquez-Monterrosa v. Mi Casita Restaurants*
    No. 5:14-CV-448-BO, Dkt. 110 (E.D.N.C. July 25, 2017) ........................................... 6

*Velasquez-Monterrosa v. Mi Casita Restaurants*,
    2016 WL 1703351 (E.D.N.C. Apr. 27, 2016) ..................................................... 16, 17

*Velazquez v. Burch Equip., LLC*
    2016 U.S. Dist. LEXIS 29426 (E.D.N.C. Mar. 8, 2016) ............................................ 21

*White v. Publix Super Markets, Inc.*,
    2015 WL 6510395 (M.D. Tenn. Oct. 28, 2015) ...................................................... 16

*Wineland v. Casey's Gen. Stores, Inc.*,
    267 F.R.D. 669 (S.D. Iowa 2009) ................................................................................. 9

*Zelaya v. A+ Tires, Brakes, Lubes, & Mufflers, Inc.*,
    2015 WL 5703569 (E.D.N.C. Sept. 28, 2015) .......................................................... 16

**STATUTES**

29 U.S.C. § 216 ............................................................................................................... 1

N.C. Gen. Stat. § 95-25.22 ............................................................................................ 1

N.C. Gen. Stat. § 95-25.6 .............................................................................................. 1

**OTHER AUTHORITIES**

Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.41 at 90 (4th ed. 2002)
    ............................................................................................................................... 11

Manual for Complex Litigation (Fourth) (2004) ............................................................ 12

Manual for Complex Litigation (Third) (1995) .............................................................. 11

**RULES**

Fed. R. Civ. P. 23 ....................................................................................................... passim

# I.   <u>INTRODUCTION</u>

Pursuant to Rule 23 of the Federal Rules of Civil Procedure and 29 U.S.C. § 216, the undersigned Counsel—on behalf of the Plaintiffs, the Proposed FLSA collective and Rule 23 Settlement Classes[1]—submit this Memorandum in Support of Plaintiffs' Unopposed Motions for Provisional Certification of the Settlement Classes, Preliminary Approval of Class and Collective Action Settlement; Appointment of Plaintiffs' Counsel as Class Counsel; Approval of Settlement Administrator; and Approval of Plaintiffs' Notice of Settlement. The terms of the settlement are set forth in the Stipulation and Settlement Agreement, attached as Exhibit A hereto, and described in detail in Section II, *infra*. The settlement is the result of arm's length settlement negotiations. It is both procedurally and substantively fair and in the best interests of the FLSA Class and the Rule 23 Class; therefore, this Court should grant Plaintiffs' Motion.

# II.   <u>FACTUAL & PROCEDURAL HISTORY</u>

## A.   <u>The Nature of Plaintiffs' Claims</u>

Plaintiffs Bailey Reynolds and Helen Martinez worked as call center associates for Defendants in their Durham, North Carolina and Albuquerque, New Mexico locations, respectively. They assert claims on behalf of themselves and all others similarly situated, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b); the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.6, 95-25.22(a), (a1), and (d);

---

[1]For simplicity's sake, this Memorandum will refer to the Plaintiffs seeking class certification based on their claims under the NCWHA and NMWHA as "the Rule 23 class," and the Plaintiffs seeking to pursue a collective action under the FLSA as "the FLSA class."

1

and the New Mexico Minimum Wage Act ("NMMWA") N.M. Stat. Ann. §§ 50-5-2, 50-4-15, 50-4-22(D), 50-4-26(C), (D), (E), and (G). Plaintiffs claim that Defendants failed to pay workers in the call centers servicing their Workplace Services Business ("Workplace Call Centers") for required pre-shift work, and that Defendants failed to include certain bonuses and reimbursements for student loan payments and fitness expenses in calculating the regular rate and the correct overtime rate. Plaintiffs claim that each of these violations resulted in a failure to accurately calculate overtime due, in violation of the FLSA, the NCWHA, and the NMMWA and that the unpaid pre-shift time violates the NCWHA even in weeks when no overtime was worked. In addition, Plaintiff Bailey Reynolds asserts that Defendants retaliated against her individually in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, for taking intermittent FMLA leave.

B. Procedural History

Plaintiffs filed this case on May 17, 2018 against Defendants Fidelity Investments Institutional Operations Company, Inc. ("FIIOC") and FMR LLC. On July 13, 2018, Defendants FIIOC and FMR LLC responded with a Motion for Partial Dismissal of Plaintiffs' Complaint. *See* Dkt. 20. On August 3, 2018, Plaintiffs filed their Response in Opposition and First Amended Complaint which added Defendants Fidelity Brokerage Services LLC ("FBS"), and Fidelity Workplace Investing LLC ("FWI").[2] *See* Dkts. 27, 28. On August 7, 2018, Plaintiffs filed a motion requesting that the Court conditionally certify their FLSA claims for collective treatment pursuant to 29 U.S.C. § 216(b). *See* Dkt.

---

[2]Plaintiffs requested to add an additional Defendant, Veritude LLC, for purposes of settlement. All Defendants are referred to collectively as "Defendants" or "Fidelity."

29.

C.     Settlement Negotiations

In September 2018, the Parties jointly agreed to participate in mediation prior to engaging in discovery.  The Parties negotiated a mediation agreement governing the mediation and providing for a confidential exchange of informal discovery.  On September 13, 2018, the Parties jointly moved to stay proceedings until December 17, 2018, to pursue mediation.  *See* Dkt. 43.  The Court granted the motion on September 17, 2018.  *See* Dkt. 45.  The Parties signed the mediation agreement on September 20, 2018, the terms of which also required Fidelity to share the time and payroll data for Plaintiffs, Opt-ins, and putative plaintiffs/R.23 class members, which was required to conduct a data analysis and calculate the range of possible damages.

In October and November of 2018, Defendants provided Plaintiffs with time and payroll data, policy documents, and other confidential mediation materials to allow the parties to evaluate their settlement positions.  Plaintiffs' counsel and their retained consultant reviewed the documents and analyzed the data to develop Plaintiffs' damages calculations, which were then shared with Fidelity and used during the mediation.

Michael Dickstein, an attorney with extensive experience in the mediation of complex wage and hour actions, served as mediator by agreement of the parties.  At the mediation on December 14, 2018, the Parties reached an agreement in principle.  After further negotiation, the Parties reached the Settlement Agreement described below on

3

February 22, 2019. [3]

### III. SUMMARY OF SETTLEMENT TERMS

####   A.   Monetary Awards

The Stipulation and Settlement Agreement creates a final, "all in" settlement fund, in the amount of $3,000,000, which covers all awards to putative Rule 23 Class and FLSA Class members, service awards to named and opt-in plaintiffs, attorneys' fees, settlement administration fees, and litigation costs.  *See* Ex. A, § II(A)(6).  It provides that each member of the Settlement Classes and Settlement Collective submitting a timely claim form shall receive a minimum award of $25.00.  Ex. A, § III (C)(2).  The Named and existing Opt-in Plaintiffs will not be required to send back a claim form to be considered Authorized Claimants, as they have already opted into the case and/or have been active participants, and they will be entitled a minimum award of $2000 given their active participation in this matter.  *See* Ex. A, §§ III(C)(3).  The amount that each Authorized Claimant will receive will be based on an estimate of the actual amount of overtime that each Authorized Claimant would have earned had all hours of work been reported and overtime rates properly calculated.

Specifically, the calculation starts with considering workweeks from three years prior to the Tolling Date through December 31, 2018, the number of shifts worked by an

---

[3] Based upon the information obtained during the informal discovery in advance of mediation, Plaintiffs sought leave to amend their Complaint to better define the proposed class.  Plaintiffs' unopposed motion was filed on February 22, 2019.  Specifically, there was substantial difference in the amount of paid and unpaid time between FBS workers and non-FBS workers.  Plaintiffs' Second Amended Complaint focused on workers at the Workplace call centers, which are primarily, though not exclusively, non-FBS workers.

4

employee each week was estimated by dividing the number of hours worked per week by 8.4 and rounding that number to the nearest whole digit. The amount of time allegedly worked each week was calculated by adding to hours already recorded and paid, 10 minutes for each shift worked before July 2016, and four minutes for every shift worked after July 2016. These times were based on Plaintiffs' estimate of *unpaid* pre-shift time. Defendants disputed these estimates and provided data to support their position. An alleged corrected regular rate was calculated by incorporating the employees' bonus compensation, fitness and student loan reimbursements that were not previously included in calculating the regular rate. Potential damages were calculated for each employee by taking the difference between the corrected wages due and the actual wages paid each week, and adding up the total, considering only workweeks in which the corrected hours worked exceeded 40, except for in the state of North Carolina where all workweeks were considered. Ex. A, §§ III(C)(1). If a member of the Settlement Class or Collective does not timely return a claim form, Defendants shall retain any settlement amount allocated to that individual. Ex. A § III(B).

B. Settlement Administrator

Notice and claim forms will be processed by a settlement administrator. The parties have agreed to request that the Court appoint RG2 Claims Administration LLC ("RG2") as settlement administrator. Courts routinely approve RG2 as a settlement administrator in cases such as this one. *See, e.g., Velasquez-Monterrosa v. Mi Casita Restaurants,*[4] No.

---

[4] Undersigned counsel was co-lead class counsel in this matter.

5:14-CV-448-BO, Dkt. 110 (E.D.N.C. July 25, 2017) (certified R.23 and FLSA classes with subsequent $2.5 million class-wide settlement involving both FLSA opt-in and Rule 23 opt-out class members for over 200 employees); *Carrillo v. Schneider Logistics Transloading and Distribution, Inc.*, No. 2:11-cv-08557, Dkt. 617 (C.D. Ca. 2015) ($21 million FLSA settlement involving Wal-Mart and both FLSA and Rule 23 opt-in and opt-out classes); *Reed v. Friendly's Ice Cream, LLC*, No. 1:15-cv-00298, Dkts. 94-3, 98 (M.D. Pa. 2016) ($3.5 million FLSA settlement involving both FLSA and Rule 23 opt-in and opt-out classes); *Moore v. Publicis Groupe SA*, No. 1:11-cv-01279, Dkts. 610, 612 (S.D.N.Y. 2016) ($2.875 million settlement for 75 class members); *Paine v. Intrepid U.S.A., Inc.*, No. 3:14-cv-02005, Dkts. 125, 128 (M.D. Tenn. 2017) ($1.75 million FLSA settlement for 559 class members); *Kampfer v Fifth Third Bank, et al.*, No. 3:14-cv-02849, Dkts. 92-1, 93 (N.D. Ohio 2017) ($1.1 million FLSA settlement reached by Fifth Third Bank involving over 200 class members). The concurrently filed proposed order details the specific tasks the parties request that the Court order RG2 to perform.

C.  Notice Provisions

The settlement administrator will check the National Change of Address database prior to mailing the notice. Ex. A, § IV(A)(1). The settlement administrator will then mail the Proposed Notice, attached as Exhibit 1 to Ex. A, to all members of the Settlement Classes or Settlement Collective. Ex. A, § IV(A)(2). The Notice will include a simple opt-in/claim form and a prepaid return envelope. The Settlement Administrator will perform skip-trace searches for any Notices returned undeliverable and will also send a reminder postcard to those who have not responded, half-way through the time period allotted for

6

members of the Settlement Classes or Settlement Collective to respond. The Settlement Administrator will also maintain a website providing information about the settlement and which can be used to aid in providing notice and the opportunity to submit the required claim form. A more comprehensive list of the settlement administrator's assignments is set forth in the proposed Order.

D. Attorney's Fees, Expenses, Service Awards & Settlement Costs

The Stipulation and Settlement Agreement provides that Defendants shall not oppose any petition for attorneys' fees filed by Plaintiffs' counsel, up to one-third of the total maximum settlement amount. Ex. A, § IV(C). This Court and others in the Fourth Circuit have approved fee awards in that amount. *See, e.g., Hood v. Uber Techs., Inc.,* 1:16-CV-998, 2019 WL 93546, at *6 (M.D.N.C. Jan. 3, 2019) (approving one-third of attorneys' fees)*; Smith v. Krispy Kreme Doughnut Corp.*, 2007 WL 119157, at *2 (M.D.N.C. Jan. 10, 2007) ("In this jurisdiction, contingent fees of one-third (33.3%) are common."); *Hackett v. ADF Rest. Invs.*, 2016 U.S. Dist. LEXIS 174775, at *14-17 (D. Md. Dec. 16, 2016) ("[c]lass [c]ounsel have applied for . . . one-third of the settlement amount, plus . . . reimburse[ment] of their out-of-pocket litigation costs . . . . [T]he [c]ourt finds that [c]lass [c]ounsel are entitled to [these] fees and . . . costs."); *McClaran v. Carolina Ale House Operating Co., LLC*, 2015 U.S. Dist. LEXIS 112985, at *11 (D.S.C. Aug. 26, 2015) ("After reviewing awards in other wage and hour cases brought as FLSA collective actions and class actions, it appears that the percentage requested here is reasonable. In a number of cases, courts found that a fee award of one-third of the settlement fund was reasonable.") *DeWitt v. Darlington Cty.*, 2013 U.S. Dist. LEXIS 172624, at *22 (D.S.C. Dec. 6, 2013)

7

(providing that, "one-third of the recovery appears to be a fairly common percentage," and "[p]laintiffs' counsel's request for one-third of the gross settlement proceeds for attorney's fees is fair and reasonable."); *Hoffman v. First Student, Inc.*, 2010 U.S. Dist. LEXIS 27329, at *11 (D. Md. Mar. 23, 2010) ("[u]nder the FLSA and the terms of the lead class members' Agreement with counsel, [p]laintiffs' counsel may recover one-third of the damages award. [These] fees and costs requested are reasonable and appropriate."); *Faile v. Lancaster Cty.*, 2012 U.S. Dist. LEXIS 189610, at *20 (D.S.C. Mar. 8, 2012) ("The proposed apportionment of the settlement provides for attorney's fees of one-third of the gross amount of the common settlement funds . . . plus . . . reimbursement of actual costs . . . . [T]hese amounts are fair and reasonable.").

The Settlement Agreement stipulates that litigation expenses incurred to date, as well as costs for the Settlement Administrator are also to be paid out of the final total settlement amount. Ex. A, § IV(C). The litigation expenses Plaintiffs seek do not exceed $30,033.87; settlement administration costs are estimated to be $46,000. A separate unopposed motion for attorney's fees and costs is filed contemporaneously addressing fees and costs in greater detail. The Settlement Agreement is not contingent upon approval of the amount requested.

The Stipulation and Settlement Agreement also provides that Named Plaintiffs Bailey Reynolds and Helen Martinez will apply for service awards of $20,000 and $15,000, respectively, in addition to their allocated share of the damages, and Opt-In Plaintiffs will apply for a service award of $2,000, or the amount they would otherwise be due under the allocation formula, whichever is greater. Ex. A, § III(C)(3)-(4). These service awards are

8

also addressed in a separate motion, and the settlement is not contingent upon the Court approving the amounts requested. Other courts in the Fourth Circuit have approved service awards that are larger than what is requested here. *See, e.g., Helmick v. Columbia Gas Transmission*, 2010 U.S. Dist. LEXIS 65808, at *8 (S.D. W. Va. July 1, 2010) (approving a $50,000 service award, and stating that such awards "are routinely approved in class actions to encourage socially beneficial litigation by compensating named plaintiffs for their expenses on travel and other incidental costs, as well as their personal time spent advancing the litigation on behalf of the class and for any personal risk they undertook."). *Irvine v. Destination Wild Dunes Mgmt.*, 204 F. Supp. 3d 846, 851 (D.S.C. 2016) (approving $30,000 total in service awards to several named and opt-in plaintiffs in a wage and hour action) (citing *Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677-78 (S.D. Iowa 2009)) (named plaintiffs received $10,000 each); *DeWitt*, 2013 U.S. Dist. LEXIS 172624, at *39-40 (listing FLSA cases with up to $20,000 in granted service awards, and referring to such awards as "very common"); *Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 468 (S.D. W. Va. 2010) (granting $15,000 personal service awards for [n]amed [p]laintiffs initiating suit and participating in discovery); *Faile*, 2012 U.S. Dist. LEXIS 189610, at *43 (granting $67,500 in service awards among several plaintiffs, where the average service award equaled $9,600); *Beasley v. Custom Communs, Inc.*, 2017 U.S. Dist. LEXIS 219975, at *9 (E.D.N.C. Oct. 24, 2017) (approving $15,000 service awards each for the named plaintiff and opt-in plaintiff); *Smith,* 2007 WL 119157, at *4 (granting service awards of $15,000 each to two class representatives); *Kruger v. Novant Health*, 2016 WL 6769066, at *6 (M.D.N.C. Sept. 29, 2016) (granting service awards of $25,000

9

each to seven plaintiffs). This award reflects Plaintiffs' estimate of the relative amount of work that these individuals have contributed to the litigation. Named Plaintiffs Bailey Reynolds and Helen Martinez provided information used in prosecuting the case and input to counsel throughout the litigation, provided declarations in support of Plaintiffs' Motion for Conditional Certification and reviewed documents produced by Defendants prior to mediation. Moreover, the Named Plaintiffs are providing a broader release to Defendants than class members are subject to by the settlement terms, and Ms. Reynolds is releasing her individual FMLA claim that is part of this litigation. *See* Ex. A, §§ V(A)(1).

## IV.   **CLASS CERTIFICATION**

Plaintiffs ask the Court to provisionally certify the alleged Rule 23 classes in this action solely for purposes of the proposed settlement, and to appoint the undersigned as class counsel for the purpose of settlement.[5] As explained below, Plaintiffs contend the proposed classes and Plaintiffs' counsel meet all the requirements of Rule 23, and, thus, that this Motion should be granted.

### A.   Provisional Certification of the Rule 23 Class for Settlement is Appropriate.

A class qualifies for certification where the proposed class satisfies all of the prongs

---

[5]While Plaintiff argues herein that the putative North Carolina state law class they seek to represent in this lawsuit fulfills Federal Rule of Civil Procedure 23's requirements for class treatment, and while Defendants have agreed not to oppose those arguments or Plaintiffs' requests that the Court provisionally certify these classes for purposes of the proposed settlement, Plaintiffs expressly acknowledge that Defendants do not concede the propriety of class treatment if this case were to proceed in litigation and specifically reserve the right to dispute the arguments made herein if the parties' proposed settlement is not approved by the Court.

of Rule 23(a) and one of the prongs of Rule 23(b).  Rule 23(a) requires that:

(1)    the class is so numerous that joinder of all members impracticable;

(2)    there are questions of law or fact common to the class;

(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  *See also Ealy v. Pinkerton Gov't Servs., Inc.*, 514 F. App'x 299, 303–04 (4th Cir. 2013).  Additionally, Rule 23(b)(3) requires the court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  For purposes of the settlement, Plaintiffs respectfully request that this Court provisionally certify the following Rule 23 classes defined as follows:

(i)    With respect to Plaintiffs' NCWHA Rule 23 class claims, all non-exempt employees of Fidelity Workplace Investing LLC, Fidelity Investments Institutional Operations Company, Inc., FMR LLC, Fidelity Brokerage Services LLC or Veritude LLC who (1) worked in the Durham, North Carolina call center between May 17, 2016 and December 31, 2018, (2) for the Workplace Investing Business Group, (3) primarily interacting telephonically or on-line with customers, and (4) utilizing the Aspect or Genesys phone systems; and

(ii) With respect to Plaintiffs' NMMWA Rule 23 class claims, all non-exempt employees of Fidelity Workplace Investing LLC, Fidelity Investments Institutional Operations Company, Inc., FMR LLC, Fidelity Brokerage Services LLC or Veritude LLC who (1) worked at least 40 hours in one full workweek in the Albuquerque, New Mexico call center between May 17, 2016 and December 31, 2018, (2) for the Workplace Investing Business Group, (3) primarily interacting telephonically or on-line with customers, and (4) utilizing the Aspect or Genesys phone systems.

Ex. A. § II(A)(24). Plaintiffs contend this class satisfies all of the prerequisites for certification under Rule 23(a) and (b)(3).

       1.    <u>Numerosity</u>

While there is no specific numerical requirement for satisfying the numerosity requirement, courts have provided that as few as eighteen (18) class members may satisfy the numerosity requirement. *See McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 476 (E.D.N.C. 2010) ("given that the Fourth Circuit has held that a class of eighteen (18) people alone is sufficient to satisfy the numerosity requirement, the court rejects [defendant's] arguments and concludes that the numerosity requirement has been met."). The Plaintiffs easily satisfy this threshold, as Defendants' payroll information provides that there are several hundred, if not thousands of members in the two Rule 23 classes combined, consisting of Defendants' Workplace Call Center associates in North Carolina and New Mexico. Thus, the Rule 23(a)(1) numerosity requirement is met.

2.    Commonality

The commonality requirement is satisfied where "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Olvera-Morales v. Int'l Labor Mgmt. Corp.*, 246 F.R.D. 250, 256 (M.D.N.C. 2007) (citing *Baby Neal v. Casey,* 43 F.3d 48, 56 (3d Cir.1994)); *see also Central Wesleyan Coll. v. W.R. Grace & Co.,* 143 F.R.D. 628, 636 (D.S.C.1992) ("This subsection does not require that all, or even most, issues be common, nor that common issues predominate, but only that common issues exist.").

Here, the commonality requirement is satisfied because there are multiple questions of law and fact that are common to the class.  Did Defendants require Workplace Call Center associates in North Carolina and in New Mexico to perform pre-shift duties?  If so, did Defendants violate state wage and hour laws by failing to compensate employees for that time?  Did Defendants include bonuses and reimbursements in calculating the regular and overtime rate for class members?  Should they have done so under state law?  If the answers are yes, Plaintiffs contend that the class members would be entitled to back payment in the amount of unpaid straight time and overtime wages.  If the answers are no, they would be entitled to nothing.  But, either way, their claims would rise or fall together.  Accordingly, Rule 23(a)'s commonality requirement is satisfied.  *See, e.g., Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 715 (E.D.N.C. 2011) (finding that the

13

commonality requirement was satisfied where the common questions of whether North Carolina law precluded the employer from making certain wage deductions and whether the employer provided required advance written notice applied to the entire proposed class).

### 3.   Typicality

A plaintiff's claim is typical if it arises from the same event, practice, or course of conduct that gives rise to the claims of other class members, and if the plaintiff's claim is based on the same legal theory as those of the other members. *McLaurin*, 271 F.R.D. at 476.   *See Romero*, 796 F. Supp. 2d at 715 (the typicality requirement is satisfied where claims arise from the same employee policies, raise common questions of law and fact including whether particular work is compensable, and are based on the same legal theory); *Gaxiola v. Williams Seafood of Arapahoe, Inc.,* 776 F. Supp. 117, 130-131 (E.D.N.C. 2011) (the typicality requirement is satisfied where the plaintiff's claims are brought under the same theory as those of the rest of the class, that workers were not paid promised wages when due).

In the instant case, Plaintiffs' claims arise from the same alleged factual and legal circumstances as those of every other member of the Rule 23 classes.  In other words, Plaintiffs' claims are typical of the Settlement Classes because they concern the same alleged policies and practices, i.e., mandatory pre-shift work and unpaid promised wages in violation of N.C. Gen. Stat. § 95-25.6 and N.M. Stat. Ann. § 50-4-1, *et seq*., and Rule 23(a)(3) is therefore satisfied.

14

4.   <u>Adequacy</u>

Adequacy under Rule 23(a)(4) relates to: (1) whether the proposed class representatives will "vigorously prosecute the claims of the class through qualified counsel"; and (2) whether the proposed class representatives have common interests with unnamed members of the class. *See Olvera-Morales*, 246 F.R.D. at 258 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996)).   Class counsel must also be adequate, as they are here.   Rule 23(a)(4) is satisfied here because Named Plaintiffs in this action have unpaid overtime claims in this action and there is no evidence that their interests are at all antagonistic to the members of the classes.   Accordingly, they are adequate class representatives.   There are no conflicts of interest between the Plaintiffs and the Settlement Class, and Plaintiffs have retained competent counsel to represent them and the Settlement Class.   Plaintiffs' Counsel here regularly engage in wage and hour class action litigation similar to the present case and have dedicated substantial resources to the prosecution of the Action.   Specifically, The Law Offices of Gilda A. Hernandez, PLLC has successfully represented employees asserting wage claims in courts across the country and in North Carolina.   *See, e.g., Solais v. Vesuvio's II Pizza & Grill, Inc.,* 1:15CV227, 2016 WL 1057038, at *8 (M.D.N.C. Mar. 14, 2016) ([p]laintiff has "sufficiently shown that the members of [her] proposed class are similarly situated for purposes of conditional certification"); *Romero*, 796 F. Supp. 2d at 700, 717 (granting conditional and class certification in wage action); *Rindfleisch v. Gentiva Health Servs., Inc.*, 962 F. Supp. 2d 1310 (N.D. Ga. 2013) (granting employees' motion for partial summary judgment in wage action); *Tomkins v. Amedisys, Inc.*, No. 3:12CV1082 WWE, 2014 WL 129407 (D. Conn.

15

Jan. 13, 2014) (granting employees' motion for conditional certification of FLSA action); *Velasquez-Monterrosa v. Mi Casita Restaurants*, No. 5:14-CV-448-BO, 2016 WL 1703351 (E.D.N.C. Apr. 27, 2016) (granting employees' motion for conditional and class certification in wage action); *McLaurin v. Prestage Foods, Inc.*, No. 7:09-CV-100-BR, 2012 WL 12910993, at *1 (E.D.N.C. Feb. 3, 2012) (approving class and collective action settlement in wage action); *Zelaya v. A+ Tires, Brakes, Lubes, & Mufflers, Inc.*, No. 5:13-CV-810-F, 2015 WL 5703569, at *1 (E.D.N.C. Sept. 28, 2015) (granting conditional and class certification in wage action); *Berber v. Hutchison Tree Serv.*, No. 5:15-CV-143-D, 2018 WL 3869980, at *2 (E.D.N.C. Aug. 14, 2018) (same).

Attorneys at Cohen Milstein Sellers & Toll, PLLC, also specialize in wage-and-hour class and collective actions and have successfully litigated wage claims on behalf of workers across the country. *See, e.g., In re Tyson Foods, Inc*., 694 F. Supp. 2d 1372 (M.D. Ga. 2010) (denying decertification in FLSA action), 694 F.Supp.2d 1358 (M.D. Ga. 2010) (denying summary judgment in FLSA action), (No. 07-md-1854, M.D. Ga.) (settlement of FLSA action encompassing approximately 19,000 workers approved); *Rindfleisch*, 962 F. Supp. 2d 1310 (granting employees' motion for partial summary judgment in wage action); *Tomkins*, 2014 WL 129407 (granting employees' motion for conditional certification of FLSA action) (settlement subsequently approved); *Talarico v. Pub. Partnerships, LLC*, No. CV 17-2165, 2018 WL 3972332 (E.D. Pa. Aug. 20, 2018) (granting conditional certification in FLSA action); *White v. Publix Super Markets, Inc.*, No. 3:14-CV-1189, 2015 WL 6510395, at *1 (M.D. Tenn. Oct. 28, 2015) (granting conditional certification in FLSA action).

16

5.    Predominance and Superiority

Rule 23(b)(3) is satisfied, as well, because the common legal and factual issues predominate over individualized issues, and resolution of the common issues for hundreds of class members in a single, coordinated proceeding is superior to many individual lawsuits addressing the same legal and factual issues. *See Cerrato v. Durham Pub. Sch. Bd. of Educ.*, No. 1:16CV1431, 2017 WL 2983301, at *5 (M.D.N.C. Mar. 17, 2017) (finding both prongs to be satisfied in an unpaid wage claim).

Where the named plaintiffs and proposed class are "unified by a common legal theory" centered on common facts, predominance is satisfied. *See Speaks v. U.S. Tobacco Coop., Inc.*, 324 F.R.D. 112, 141 (E.D.N.C. 2018), *judgment entered,* No. 5:12-CV-729-D, 2018 WL 1089995 (E.D.N.C. Feb. 27, 2018). "Common issues of law and fact have been held to predominate where the same evidence would resolve the question of liability for all class members." *Id.* (internal quotations omitted). The fact that each class member's damages will be slightly different does not affect certification; "[i]n fact, Rule 23 explicitly envisions class actions with such individualized damage determinations." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 428 (4th Cir. 2003).

Courts in this Circuit routinely hold that the predominance requirement has been met when defendant has implemented a common, uniform policy. *See Zelaya v. A+ Tires, Brakes, Lubes, & Mufflers, Inc.*, No. 5:13-CV-810-F, 2015 WL 5703569, at *5 (E.D.N.C. Sept. 28, 2015); *see also Velasquez-Monterrosa,* 2016 WL 1703351; *Martinez-Hernandez v. Butterball, LLC*, No. 5:07-CV-174-H(2), 2011 WL 4549606, at *4 (E.D.N.C. Sept. 29, 2011) (finding that the predominance requirement was met because defendant's use of a

17

"GANG" time policy affected all of the putative class members); *Ceras-Campo v. WF P'ship,* 2011 U.S. Dist. LEXIS 12688, at *10 (E.D.N.C. Feb. 7, 2011) (same); *Gaxiola,* 776 F. Supp. 2d at 130; *McLaurin*, 271 F.R.D. at 478 (same); *Romero*, 796 F. Supp. 2d at 716 (same); *Mitchell v. Smithfield Packing Co.*, No. 4:08-CV-182-H 1, 2011 WL 4442973, at *3 (E.D.N.C. Sept. 23, 2011).

The predominance requirement is satisfied here because the members of the proposed Rule 23 classes are united by identical factual allegations and a common legal theory: they all claim that Defendants failed to pay proper promised wages, including, but not limited to, overtime wages in violation of both state and federal law by failing to record all hours worked and to calculate overtime correctly.

Moreover, the variance among class members relates only to the amount of compensation they would be due if the classes prevailed in this litigation, based on different hourly rates, number of days worked, the amount received in bonus, and whether or not reimbursements were received. All of those "variances" are accounted for in Defendants' payroll data, and are less significant than the common, overarching policies and legal questions those policies give rise to. Accordingly, common issues predominate in this case. *See Mitchell*, 2011 WL 4442973, at *3 (claim arising from a common compensation policy regarding which activities the employer considered to be "work," presented common legal and factual issues predominating over any individual issues of law or fact).

The requirement of superiority ensures that resolution by class action will "achieve economies of time, effort, and expense, and promote uniformity of decisions as to persons similarly situated without sacrificing procedural fairness or bringing about other

18

undesirable results." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). Moreover, "the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Id.* (*quoting Mace v. Van Ru Credit, Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)). The requirement is also designed to ensure the "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents to court at all." *Id.* at 617.

Here, the use of the class action mechanism conserves substantial time and judicial resources by resolving an issue in one case which would otherwise require hundreds of individual suits. Moreover, given the relatively small size of many of the claims asserted by members of the class, it is likely that many of them would not be able—due to the expense of initiating and maintaining an individual action—or willing to seek recovery on their own. Resolving these claims at once also removes the risk of inconsistent adjudications that might result from forcing each class member to litigate alone. There is no evidence that any members of the proposed class wish to pursue an individual action rather than allow the Plaintiffs to pursue a class action. And, to the extent there are class members who do wish to do so, the fairness hearing that would follow this Court's preliminary approval of the settlement in this case will allow them the opportunity to voice their objections. Also, the financial resources of the class members weigh in favor of certifying the class, as the class members may not have the means to pursue individual actions to recover damages which, for a large number of class members, may be less than $1,000 even if they were successful at trial.

19

B.    Plaintiffs' Counsel Should Be Appointed as Class Counsel.

Rule 23(g) sets forth four criteria for the appointment of class counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the class.  Fed. R. Civ. P. 23(g)(1)(B).  In this case, all of these factors suggest that the undersigned counsel should be provisionally appointed as Class Counsel for the purpose of settlement.

Plaintiffs' counsel have labored tirelessly to investigate and resolve the claims of both the named representatives and all potential class members. *See* Hernandez Decl. ¶¶ 15-22.  Plaintiffs' Counsel have extensive experience in litigating claims under the FLSA and numerous other worker protection and civil rights statutes. Hernandez Decl. ¶¶ 4-10; Webber Decl. ¶¶ 3-5.  Moreover, the lawyers assigned to this case are well-versed in class action, wage-and-hour, and other FLSA claims and are exceptionally well qualified to represent the class in this action. *See id.*   Courts in this Circuit and elsewhere have repeatedly found counsel to be adequate class counsel.  Hernandez Decl. ¶ 9; Webber Decl. ¶ 4.  Accordingly, the Court should appoint the undersigned counsel as Class Counsel in this matter.

For all of the foregoing reasons, Plaintiffs believe the proposed Rule 23 classes and Plaintiffs' counsel meet the requirements of Rule 23, and the Court should grant Plaintiffs'

20

Motions for Provisional Class Certification and Appointment of Class Counsel and provisionally certify the proposed settlement classes defined above for the sole purpose of the parties' proposed settlement of this action.[6]

## V.    <u>PRELIMINARY APPROVAL</u>

As this settlement is both procedurally and substantively fair and adequate, Plaintiffs request the Court grant preliminary approval.

Courts in the Fourth Circuit favor compromise and settlement of class action suits. *See   Hall v. Higher One Machs., Inc.*, No. 5-15-CV-670-F, 2016 WL 5416582, at *2 (E.D.N.C. Sep. 26, 2016) (providing, in a hybrid FLSA and NCWHA action, that there is a "strong judicial policy in favor of settlements, particularly in the class action context.") (citations omitted); *Velazquez v. Burch Equip., LLC*, 2016 U.S. Dist. LEXIS 29426, at *3 (E.D.N.C. Mar. 8, 2016) (same).  Under Rule 23(e) of the Federal Rules of Civil Procedure, a court may approve a proposed class action settlement if the court determines that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).

 Although district courts have broad discretion in approving the settlement of a class action case, there is a "strong presumption in favor of finding a settlement fair."  *See Lomascolo*, 2009 U.S. Dist. LEXIS 89136, at *27; *Kirkpatrick v. Cardinal Innovations*

---

[6] Plaintiffs request provisional certification of these classes solely for purposes of the parties' proposed settlement. In the event the Court declines to grant preliminary approval to that settlement, as discussed *infra*, it should also deny Plaintiffs' Motions for Provisional Class Certification and Appointment of Class Counsel.  Moreover, to the extent the parties' proposed settlement of this action does not receive final Court approval, any provisionally certified class should be decertified without prejudice to Plaintiffs' ability to again seek class certification at a later time as part of this litigation.

*Healthcare Sols.*, No. 1:16-CV-01088, 2018 WL 6718948, at *2 (M.D.N.C. Dec. 18, 2018). "A settlement fairness hearing is not a trial, and the court should defer to the evaluation and judgment of experienced trial counsel in weighing the relative strengths and weaknesses of the parties' respective positions and their underlying interests in reaching a compromise." *DeWitt*, 2013 U.S. Dist. LEXIS 172624, at *11; *see also*, *Muhammad*, 2008 U.S. Dist. LEXIS 103534, at *13. "[T]he Court's function in assessing a proposed settlement is to determine whether, as a whole, it is fair, adequate and reasonable to [c]lass [m]embers." *S.C. Nat. Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." Manual for Complex Litigation (Third) § 30.42 (1995); *see also* Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.41 at 90 (4th ed. 2002) ("There is usually a presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for approval."); *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 665 (E.D. Va. 2001) (holding that, when counsel had extensive experience in the subject matter of the class action, it was "appropriate for the court to give significant weight to the judgment of class counsel that the proposed settlement is in the interest of their clients and the class as a whole, and to find that the proposed partial settlement is fair.") (quotation omitted).

As described by the Manual for Complex Litigation, judicial approval of a proposed class settlement is a two-part process. Manual for Complex Litigation (Fourth) § 13.14, at 173 & § 21.632, at 320-21 (2004). First, "the judge reviews the proposal preliminarily to

determine whether it is sufficient to warrant public notice and a hearing." *Id.* If the court finds the settlement is sufficient, *i.e.*, is within the range of possible judicial approval, it will schedule a formal fairness hearing and direct notice to the class. *Id.* at § 21.633, at 321-22. Second, once notice has been disseminated to the class and the relevant evidence has been presented, the court makes the final determination as to whether the settlement is fair, reasonable, and adequate. *Id.* at § 21.634-635, at 322-23; *see also In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991).

Plaintiffs ask the Court to find that the settlement is within the range of fairness sufficient to justify a notice and fairness hearing. At this stage, the question is limited to whether the settlement agreement is sufficient to justify public notice and a hearing, at which time the class members and others may present arguments and evidence for or against the proposed agreement. Manuel for Complex Litigation (Third) § 30.41, 236-37 (1995); *see also Horton v. Merrill Lynch, Pierce, Fenner & Smith*, 855 F. Supp. 825, 827 (E.D.N.C. 1994). While Plaintiffs are confident that the settlement warrants final approval, the Court is not required now to probe extensively into the merits of the settlement or to make a final determination on the adequacy of the settlement; that awaits the final approval stage.[7] *Id.* Because preliminary approval is provisional, any doubts are resolved in favor

---

[7] The standard for approval of a FLSA settlement is lower than for a Rule 23 settlement, because a FLSA settlement does not implicate the same due process concerns. *See Hall*, 2016 U.S. Dist. LEXIS 131009, at *11 ("approval of settlements in collective actions under the FLSA generally involve less stringent standards than Rule 23 class settlements.") (quotations omitted). Since Plaintiff seeks approval for both the FLSA and Rule 23 class settlements, this brief addresses the Rule 23 standard. If the Court agrees that standard is satisfied, then clearly the FLSA standard is satisfied as well.

of approval. *Id.*

A. <u>Preliminary Approval of the Settlement is Procedurally Fair.</u>

A proposed settlement is procedurally fair when it is reached through vigorous, arms-length negotiations and after experienced counsel had evaluated the merits of plaintiffs' claims. *See Robinson v. Harrison Transp. Servs., Inc.*, 2016 U.S. Dist. LEXIS 86294, at \*6 (E.D.N.C. June 30, 2016); *Saman v. LBDP, Inc.*, 2013 U.S. Dist. LEXIS 83414, at \*12 (D. Md. June 13, 2013); *In re Dollar Gen. Stores FLSA Litig.*, 2011 U.S. Dist. LEXIS 98162, at \*12 (E.D.N.C. Aug. 22, 2011). Where negotiations are conducted at arms-length and in the presence of an experienced mediator, there is a presumption that the settlement meets the requirements of due process. *See Matthews v. Cloud 10 Corp.*, 2015 U.S. Dist. LEXIS 114586, at \*4 (W.D.N.C. Aug. 27, 2015); *see also Robinson*, 2016 U.S. Dist. LEXIS 86294, at \*6; *Saman*, 2013 U.S. Dist. LEXIS 83414, at \*12; *In re Dollar Gen. Stores FLSA Litig.*, 2011 U.S. Dist. LEXIS 98162, at \*12. Here, the settlement was reached via arms-length negotiations, conducted by experienced counsel, with the assistance of a neutral and experienced mediator. There is no suggestion of any coercion or collusion or any other improper dealing that would lead to a finding that the negotiations were in any way unfair. *Cf. Robinson*, 2016 U.S. Dist. LEXIS 86294, at \*5-6 ("There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary.") (quotations omitted). Moreover, as discussed below, the settlement reached is substantively fair to all parties concerned. Thus, the settlement should be found procedurally fair.

B. <u>Preliminary Approval of the Settlement is Substantively Fair because the</u>

<u>Settlement is Fair, Reasonable and Adequate.</u>

The Fourth Circuit evaluates substantive fairness and adequacy considering the factors from the seminal case of *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). *See DeWitt*, 2013 U.S. Dist. LEXIS 172624, at \*9-10; *Stone*, 749 F. Supp. at 1423; *Flinn v. FMC Corp.*, 528 F.2d 1169, 1172-73 (4th Cir. 1975) (citing *Grinnell* with approval). The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.[8]  Here, the balance of the *Grinnell* factors weighs in favor of preliminary approval.

---

[8] Alternatively, courts in this circuit have considered factors separately grouped under "fairness" (the posture of the case, the extent of discovery conducted, the circumstances surrounding the negotiations, and the experience of counsel) and "adequacy" ((1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strength of the defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expenses of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement). *Jiffy Lube Sec. Litig.*, 927 F.2d at 158-159; *see also In re MicroStrategy*, 148 F. Supp.2d at 665. Section V(A) on procedural fairness addressed the third and fourth factors under "fairness," while the first two factors correspond to *Grinnell* factor 3. With respect to adequacy, factors 1 & 2 are encompassed by *Grinnell* 4-6 and 8-9; factor 3 is the same as *Grinnell* 1; factor 5 is the same as *Grinnell* 2; and factor 4 is the same as *Grinnell* 7. Thus, while the discussion is organized to correspond to the *Grinnell* factors, all *Jiffy Lube* factors are encompassed by the discussion as well.

1.  Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1)

"Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources." *Stone*, 749 F. Supp. at 1423 (internal citations omitted); *see also Muhammad*, 2008 U.S. Dist. LEXIS 103534, at *14 ("The complexity, expense, and duration of class action litigation are factors that support approval of a settlement.").

If the parties were forced to continue litigating this case, conditional certification, class certification, and joint employment would all be hotly contested issues, requiring extensive briefing and discovery. Class-wide discovery would involve numerous depositions and discovery from a sample of opt-in plaintiffs. Expert reports and depositions would add to the discovery burdens. Moreover, even post-trial, the ultimate result—regardless of which side prevails—may be the subject of an appeal. In short, while this litigation is currently in the early stages, it would almost certainly become long, complex and costly should the parties continue to litigate. This factor thus weighs in favor of preliminary approval.

2.  The Reaction of the Classes Has Been Positive (*Grinnell* Factor 2)

Notice of the settlement and its details have not yet been issued to the classes. As such, the Court should more fully analyze this factor after notice issues and putative Class Members are given the opportunity to opt out or object. But, at this early stage in the settlement process, the Named Plaintiffs and current Opt-in Plaintiffs have expressed approval of the settlement. More than 20 FLSA plaintiffs have already "opted-in" to this

litigation, suggesting that they are generally supportive of the way in which it has been managed by the Named Plaintiffs and their counsel up to this point.  *See* Dkt. Nos. 1-4, 1-5, 5-1, 5-2, 15-1, 15-2, 15-3, 15-4, 15-5, 15-6, 15-7, 15-8, 23-1, 23-2, 23-3, 23-4, 23-5, 23-6, 24-1, 25-1, 40-1, 40-2, 44-1, 46-1 (consents to file suit by Opt-In Plaintiffs).  The Court's order granting Rule 23 class certification will give the Rule 23 class members an opportunity to participate in the settlement by sending back a simple claim form.

3. <u>Litigation and Discovery Have Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)</u>

In evaluating a settlement, courts must consider "the stage of the proceedings, including the complexity, expense and likely duration of the litigation." *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 409 (D. Md. 2014).  Engaging in informal, rather than formal, discovery can be sufficient to enable a settlement and presents the advantage that "resources that otherwise would have been consumed by the litigation were made available for settlement, and the risk and uncertainties for both parties were reduced."  *See id.*  The proper question is whether the parties have the opportunity to "appreciate the full landscape of their case." *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009); *see also Riddle v. City of Anderson*, 2015 U.S. Dist. LEXIS 192079, at *16 (D.S.C. Jan. 26, 2015) (finding that because both sides were fully aware of the factual issues, sufficient discovery had taken place); *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 473 (W.D. Va. 2011) (extensive discovery is not necessary to justify a settlement as long as the parties have obtained sufficient information to evaluate the merits).

While discovery had not yet begun at the time of the parties' mediation, Defendants

27

provided extensive informal discovery prior to mediation, including nearly 4000 pages of policy documents and over 2,000,000 lines of payroll and timekeeping data. This extensive document production allowed for an evaluation of Plaintiffs' claims and the calculation of damages. Plaintiffs' counsel have also had the benefit of informal discovery from all of the opt-in Plaintiffs and some Rule 23 class member(s). Counsel is thus in a strong position to negotiate a fair settlement and advise the Plaintiffs of the advantages and disadvantages of litigating through trial. This factor thus weighs in favor of preliminary approval. *See Hood,* 2019 WL 93546, at *5 (finding that the exchange of a 322,215-line spreadsheet and reviewing summary judgment records in parallel lawsuits over the same issue, without conducting formal discovery, was sufficient to "allow [] the parties to adequately assess the claims and defenses.").

 4. Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)

"In complex, multi-year class actions, the risks inherent in the litigation are immense." *In re MI Windows & Doors Prods. Liab. Litig.*, 2015 U.S. Dist. LEXIS 95889, at *8 (D.S.C. July 23, 2015) (citations omitted); *Brown v. Delhaize Am., LLC*, 2015 U.S. Dist. LEXIS 184265, at *5 (M.D.N.C. July 20, 2015) (same); *Riddle*, 2015 U.S. Dist. at *18 (same). Indeed, "settlement must be evaluated taking into account the uncertainty and risks involved in litigation and in light of the strength of the claims and possible defenses." *In re MI Windows*, 2015 U.S. Dist. LEXIS 184471, at *38 (citations omitted). A court should consider "the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after

28

protracted and expensive litigation. *Id.* (citations omitted).

A trial on the merits would involve significant risks for Plaintiffs. The Plaintiffs will have to overcome Defendants' opposition to a finding of joint employment among all corporate defendants, as well as on the merits. Although the Plaintiffs are confident that they could prevail on liability, even if they do there are risks with respect to the magnitude of damages, as the amount of unpaid time is in dispute, and was not recorded. Plaintiffs are also realistic and recognize the inherent risks. Even if Plaintiffs prevail, this victory could only be obtained after extensive briefing and argument of an uncertain duration, and the process of trial and appellate litigation is always full of uncertainty. These factors thus weigh very strongly in favor of preliminary approval.

>    5.    Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6)

The Court has not yet addressed Plaintiffs' motion for conditional certification of the FLSA collective, and Plaintiffs have not even moved for certification of the Rule 23 classes. While Plaintiffs are confident that conditional certification would be granted, they would still face a motion to decertify at the conclusion of discovery, and that there would be many issues in dispute. Plaintiffs recognize that the inherent uncertainty about maintaining class and collective certification for the entire scope plead, through trial. *See Brown,* 2015 U.S. Dist. LEXIS 184265, at *5. This factor thus weighs in favor of approval.

>    6.    Defendants' Ability to Withstand a Greater Judgment is Not Determinative (*Grinnell* Factor 7)

While Defendants could likely withstand a greater judgment, a "defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement

29

is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9); *Velasquez-Monterrosa v. Mi Casita Restaurants*, No. 5:14-CV-448-BO, Dkt. 121 (E.D.N.C. September 26, 2017). Thus, given that all of the other *Grinnell* Factors weigh in favor of the proposed settlement, even if Defendants could withstand a greater judgment, this factor should not be an obstacle to preliminary approval.

       7.    <u>The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)</u>

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2; *see also*, *In re A.H. Robins Co.*, 880 F.2d 709, 748 (4th Cir. 1989); *Flinn*, 528 F.2d at 1173-74; *Horton*, 855 F. Supp. at 833.

Based on Plaintiffs' estimate that approximately $5.5 million in overtime would be due to members of the FLSA and Rule 23 Classes if Plaintiffs were to prevail on all of their claims, $3 million is a reasonable settlement, particularly when factoring in the

30

uncertainties of litigation. Defendants, of course, have asserted throughout the settlement negotiations that its call center associates have been paid all wages due. If Defendants were to prevail, even simply on the measure of damages, establishing that fewer minutes remained unpaid, Plaintiffs' estimated damages would be reduced to an amount that is substantially less than the current settlement amount. Given this risk to Named, Opt-ins/Current Participants and putative Plaintiffs and R.23 class members, this settlement is beneficial in that it provides a guaranteed monetary recovery that is potentially more generous than if the parties litigated this issue, and the Court ruled in favor of Defendants on one or more aspects of the claims. Thus, the settlement amount here far exceeds the mere fraction of possible damages that has been approved in other cases in this Circuit.

C. <u>The Notice Plan and Distribution Process are Appropriate</u>

For any class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule requires that any such notice "must clearly and concisely state in plain, easily understood language" the following items: (1) the nature of the action, (2) the definition of the class certified, (3) the class claims, issues, or defenses, (4) that a class member may enter an appearance through counsel if the member so desires, (5) that the court will exclude from the class any members who request exclusion, stating when and how members may elect to be excluded, (6) the time and manner for requesting exclusion, and (7) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The proposed notice[9] satisfies each of these requirements. It also describes the terms of the settlement, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing. Courts have approved class notices even when they provided only general information about a settlement. *See Beaulieu v. EQ Indus. Servs.*, 2009 U.S. Dist. LEXIS 133023, at *81 (E.D.N.C. Apr. 20, 2009) (approving a proposed notice where it "generally provide[d] the requisite information as to both certification and settlement"). The detailed information in the proposed notice far exceeds this minimal standard and fully complies with the requirements of Rule 23(c)(2)(B).

The Settlement Agreement provides that the proposed notice will be mailed to all members of the Settlement Classes and Settlement Collective. Ex. A, § IV(A)(1). The proposed notice contains information on how to exclude oneself or object to the settlement, as well as how to make a claim for a share of the settlement. Ex. A, § IV(A)(3). Each member will have seventy-five (75) days following the mailing of the notice to submit opt-out requests, comments, or objections, as well as a claim form for their share of the settlement. Ex. A, § IV(A)(3).

## VI.   **CONCLUSION**

For all of the foregoing reasons, Plaintiffs have demonstrated that the proposed settlement is both procedurally and substantively fair to all parties, that this case is appropriate for class action treatment, and that the notice provisions in the proposed

---

[9] A copy of the proposed notice is attached as Ex. 1 to Ex. A.

Settlement Agreement are appropriate. The Court should therefore grant preliminary approval of the settlement, provisionally certify the Settlement Classes, appoint Plaintiffs' Counsel as Class Counsel, and approve Plaintiffs' Notice of Settlement. The Court should further appoint RG2 as the settlement administrator to perform the specific tasks set forth in the concurrently filed proposed order and set a date for the final fairness hearing.

Dated: February 22, 2019.

Respectfully submitted,

BY: /s/ *Gilda Adriana Hernandez*
    Gilda A. Hernandez (NCSB # 36812)
    **THE LAW OFFICES OF GILDA A.**
    **HERNANDEZ, PLLC**
    1020 Southhill Drive, Suite 130
    Cary, NC 27513
    Telephone: (919) 741-8693
    Facsimile: (919) 869-1853
    ghernandez@gildahernandezlaw.com

    Christine E. Webber (#439368), *pro hac vice*
    **COHEN MILSTEIN SELLERS & TOLL,**
    **PLLC**
    1100 New York Avenue, Suite 500 West
    Washington, DC 20005
    Tel: (202) 408-4600
    Fax: (202) 408-4699
    cwebber@cohenmilstein.com

    *Attorneys for Plaintiffs*

33

# CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing complies with Local Rule 7.3(D)(1), as it contains

9,166 words, excluding parts of the memorandum that are exempted by LR 7.3(D)(1).

I certify that the foregoing is true and accurate.


Dated:    February 22, 2019


/s/ Gilda A. Hernandez
Gilda A. Hernandez (NCSB No. 36812)

34

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 22, 2019, I electronically filed the foregoing true

and accurate copy of **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF**

**CLASS AND COLLECTIVE ACTION SETTLEMENT; PROVISIONAL**

**CERTIFICATION OF THE SETTLEMENT CLASSES; APPOINTMENT OF**

**PLAINTIFFS' COUNSEL AS CLASS COUNSEL; APPROVAL OF SETTLEMENT**

**ADMINISTRATOR; AND APPROVAL OF PLAINTIFFS' NOTICE OF**

**SETTLEMENT** with the Court using the CM/ECF system, and I hereby certify that I have

thereby electronically served the document to the following:

Richard G. Rosenblatt (*pro hac vice*)
August W. Heckman III (*pro hac vice*)
**MORGAN, LEWIS BOCKIUS LLP**
502 CARNEGIE CENTER
PRINCETON, NJ 08540-6289
TELEPHONE: (609) 919-6600
FACSIMILE: (609) 919-6701
EMAIL: richard.rosenblatt@morganlewis.com
august.heckman@morganlewis.com


Kevin Scott Joyner
Regina W. Calabro
Robert A. Star
**OGLETREE DEAKINS NASH SMOAK & STEWART, P.C.**
4208 SIX FORKS ROAD, SUITE 1100
RALEIGH, NC 27609
TELEPHONE: (919) 787-9700
FACSIMILE: (919) 783-9412
EMAIL: kevin.joyner@ogletreedeakins.com
regina.calabro@ogletreedeakins.com
robert.sar@ogletreedeakins.com
*Attorneys for Defendants*

35

Respectfully submitted,

/s/ *Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB # 36812)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Drive, Suite 130
Cary, NC 27513
Telephone: (919) 741-8693
Facsimile: (919) 869-1853
ghernandez@gildahernandezlaw.com

Christine E. Webber (#439368), *pro hac vice*
**COHEN MILSTEIN SELLERS & TOLL, PLLC**
1100 New York Avenue, Suite 500 West
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
cwebber@cohenmilstein.com

*Attorneys for Plaintiffs*

36