# EXHIBIT

# A

## Settlement Agreement

**Ex. 1 - Proposed Notice**
**Ex. 2 - Proposed Claim Form**
**Ex. 3 - Proposed Reminder Notice - Postcard**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| BAILEY REYNOLDS and HELEN MARTINEZ on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| *Plaintiffs,* | ) ) | CA No. 1:18-CV-423-CCE-LPA |
| v. | ) ) | <u>**STIPULATION AND SETTLEMENT AGREEMENT**</u> |
| FIDELITY INVESTMENTS INSTITUTIONAL OPERATIONS COMPANY, INC., FMR LLC, FIDELITY BROKERAGE SERVICES LLC, FIDELITY WORKPLACE INVESTING LLC, and VERITUDE, LLC. | ) ) ) ) ) ) | |
| *Defendants.* | ) | |

Named Plaintiffs Bailey Reynolds and Helen Martinez individually and on behalf of all Opt-in Plaintiffs and all members of the Settlement Classes and Settlement Collective Action defined herein, and their counsel of record, and defendants Fidelity Investments Institutional Operations Company, Inc., FMR LLC, Fidelity Brokerage Services LLC, Fidelity Workplace Investing LLC, and Veritude LLC, and their counsel of record, and subject to the terms and conditions hereof and final approval by the Court, hereby enter into this stipulation of settlement ("Agreement"). This settlement is intended to fully, finally, and forever compromise, release, resolve, discharge, and settle the released claims subject to the terms and conditions set forth in this Agreement. The instant action shall be dismissed with prejudice upon final approval of this settlement by the Court.

1

# I.  RECITALS AND BACKGROUND

## A.  The Nature of the Case and Claims Raised

Plaintiffs Bailey Reynolds and Helen Martinez worked as call center associates for Defendants in their Durham, North Carolina and Albuquerque, New Mexico locations, respectively. They assert claims on behalf of themselves and all others similarly situated, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b); the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.6, 95-25.22(a), (a1), and (d); and the New Mexico Minimum Wage Act ("NMMWA") N.M. Stat. Ann. §§ 50-5-2, 50-4-15, 50-4-22(D), 50-4-26(C), (D), (E), and (G). Plaintiffs claim (1) that Defendants failed to pay workers in their call centers for allegedly required pre-shift work (including booting up computers, launching software programs, checking emails, reviewing call schedules and callbacks, and other tasks that they allege were necessary for Plaintiffs to complete their work); (2) that Defendants failed to include certain bonuses in calculating the regular rate and the correct overtime rate; and (3) that Defendants failed to include reimbursements for student loan payments and fitness expenses in calculating the regular rate and overtime rate. Plaintiffs claim that each of these alleged violations resulted in a failure to accurately calculate overtime due, in violation of the FLSA, the NCWHA, and the NMMWA and that the unpaid pre-shift time violates the NCWHA even in weeks when no overtime was worked. In addition, Plaintiff Bailey Reynolds individually asserts that Defendants retaliated against her in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., for taking intermittent FMLA leave.

## B.  Procedural History of the Case

Plaintiffs filed this case on May 17, 2018, against Defendants Fidelity Investments Institutional Operations Company, Inc. ("FIIOC") and FMR LLC. On July 13, 2018, Defendants

2

FIIOC and FMR LLC responded with a Motion for Partial Dismissal of Plaintiffs' Complaint (Mot. for Partial Dismissal, Dkt. 20). Plaintiffs filed a response to that motion on August 3, 2018 (Pl.'s Resp. in Opp'n.). That same day, Plaintiffs filed their First Amended Complaint, which added Defendants Fidelity Brokerage Services LLC ("FBS"), and Fidelity Workplace Investing LLC ("FWI") (Am. Compl. Dkt. 27). On August 7, 2018, Plaintiffs filed a motion requesting that the Court conditionally certify their FLSA claims for collective treatment pursuant to 29 U.S.C. § 216(b). (Pl.s' Mot. to Conditionally Certify, Dkt. 29.). After that, the Parties agreed to participate in non-binding mediation and, in a joint motion filed on September 13, 2018, asked the Court to stay the litigation until December 17, 2018. (Joint Mot. Requesting Stay of Litigation, Dkt. 43). The Court granted the motion on September 17, 2018. (Order Granting Joint Mot. Requesting Stay, Dkt. 45).

In October and November of 2018, Defendants provided Plaintiffs with time and payroll data, policy documents, and other confidential mediation materials to allow the parties to evaluate their settlement positions. Plaintiffs' Attorneys engaged a consultant to analyze the payroll data and estimate Plaintiffs' unpaid wages. In December 2018, the Parties exchanged mediation statements evaluating their positions, and on December 14, 2018, the Parties attended a mediation with Mediator Michael E. Dickstein, in which the Parties reached a preliminary agreement.

Based upon the information obtained during the informal discovery in advance of mediation, Plaintiffs sought leave to amend their Complaint to better define the proposed class. Specifically, the data produced prior to mediation demonstrated that there is a substantial difference in the amount of paid and unpaid pre-shift time between those non-exempt call center employees who supported the Retail Business, on the one hand (generally designated FBS), and those who supported the Workplace Business, on the other hand (generally designated non-FBS).

3

Based on these differences, Plaintiffs determined that the FBS/Retail employees were not similarly situated to the non-FBS/Workplace employees, and should not be part of the same class. Accordingly, Plaintiffs' Second Amended Complaint, and this settlement, are focused on call center employees servicing the Workplace Business, the vast majority of whom are employed by defendants other than FBS. Plaintiffs' unopposed motion for leave to amend was filed on February 22, 2019.

### C. Parties' Statements and Recognition of the Benefits of Settlement

#### 1. Plaintiffs' Statement

Plaintiffs believe the claims asserted in the Litigation on behalf of the Workplace Business employees have merit under the FLSA and North Carolina and New Mexico law. However, Plaintiffs recognize the uncertainty of the outcome and the risk of loss in any litigation, including this one. Further, Plaintiffs have considered the cost and delay of continued proceedings necessary to prosecute the instant action against Defendants through class certification, discovery, dispositive motions, trial, and appeal. Plaintiffs believe that the settlement set forth in this Agreement confers substantial benefits on members of the Settlement Classes and Settlement Collective Action. Based on their evaluation, Plaintiffs have determined that the settlement is in the best interest of Named Plaintiffs, the Opt-in Plaintiffs, and the other members of the Settlement Classes and Settlement Collective Action.

#### 2. Defendant's Statement

Defendants deny each and all of the claims alleged by Plaintiffs in the Litigation, including the claims in their proposed second amended complaint. Defendants expressly deny any and all charges of wrongdoing or liability alleged in the instant action. To the contrary, Defendants contend that, in compliance with applicable state and federal laws, its call center associates have

4

been paid all wages due. As a result, Defendants believe Plaintiffs' claims for unpaid wages, liquidated damages, pre- and post-judgment interest, attorneys' fees, and costs will fail. Defendants also deny that the asserted claims are appropriate for collective treatment under 29 U.S.C. § 216(b) or class treatment under Fed. R. Civ. P. 23, except for purposes of settlement. Nevertheless, Defendants have taken into account the uncertainty and risks inherent in any litigation and the fact that the conduct of the Litigation would be protracted, expensive, and disruptive to their business. Defendants, therefore, have determined it is desirable and beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in this Agreement.

## II.    DEFINITIONS AND PRELIMINARY REQUIREMENTS

### A.    Definitions

As used throughout this Agreement, the following terms have the meanings specified below:

1.    **"Authorized Claimant"** means any member of a Settlement Class or Settlement Collective Action who is entitled to a Settlement Payment, as defined herein, if he or she timely submits the required claim form, as described herein in Parts III.B and IV.A.3 *infra.* However, notwithstanding the foregoing, all individuals who previously have opted into this action and who otherwise fall within the definition of the Settlement Class or Settlement Collective Action will not be required to submit a required claim form, as these individuals have already opted into the action and have actively participated in the prosecution of this action. As such, they are automatically entitled to a Settlement Payment.

2.    **"Defendants"** refers to Fidelity Investments Institutional Operations Company, Inc., FMR LLC, Fidelity Brokerage Services LLC, Fidelity Workplace Investing LLC,

5

and Veritude LLC, including their past, present, and future members, parent companies, affiliates, divisions, partners, affiliated organizations, subsidiaries and predecessors and successors in interest, and their respective past, present, and future officers, directors, shareholders, employees, agents, principals, heirs, assigns, representatives, accountants, auditors, consultants, attorneys, fiduciaries, both individual and in their official capacities, employee benefits plans, and insurers.

3. **"Defendants' Attorneys"** refers to the attorneys representing Defendants in the Litigation: Morgan Lewis & Bockius, LLP, 502 Carnegie Center, Princeton, NJ 08540; Ogletree, Deakins, Nash, Smoak & Stewart, P.C., 4208 Six Forks Road, Suite 1100, Raleigh, NC, 27609.

4. **"Effective Date"** means the date by which both of the following have occurred: (i) this settlement has received final approval from the U.S. District Court for the Middle District of North Carolina; and (ii) the period for appealing the Court's final order approving the settlement expires without an appeal being filed or, if such an appeal is filed, the date on which the appeal is finally resolved with the settlement approved in a form and substance substantially identical to the form and substance of the final approval order with respect to all material terms, including any decision by the United States Supreme Court.

5. **"Final Settlement Hearing"** means the hearing to be conducted by the U.S. District Court for the Middle District of North Carolina to determine whether to finally approve the settlement explained herein.

6. **"Gross Settlement Amount"** refers to $3 million, which is the total and maximum amount Defendants will be required to pay under this settlement to completely resolve and settle the claims against Defendants in the Litigation, except that, in addition to the Gross Settlement Amount, Defendants will pay the employer share of payroll taxes associated with

6

payments to Authorized Claimants pursuant to this Agreement that are attributable to back wages. The Gross Settlement Amount expressly includes, but is not necessarily limited to, the following elements: (i) Cash Settlement Payments to Authorized Claimants, as described in this Agreement; (ii) Service Awards, as described herein; (iii) Plaintiffs' Attorney's Fees, payable as described herein; (iv) Plaintiffs' Litigation Expenses, as described herein; and (v) Settlement Expenses, as defined herein.

7. **"Litigation"** refers to the civil action filed on May 17, 2018, in the U.S. District Court for the Middle District of North Carolina, *Reynolds, et al. v. Fidelity Investments Institutional Operations Company, Inc., et al.*, No. 1:18-CV-423-CCE-LPA.

8. **"Members"** refers to members of a Settlement Class as defined herein and members of the Settlement Collective Action as defined herein.

9. **"Motion for Preliminary Approval"** refers to the motion for preliminary approval of this settlement and its supporting papers.

10. **"Named Plaintiffs"** means Bailey Reynolds and Helen Martinez.

11. **"Named Plaintiffs' Service Award"** means a sum, as explained in Part III.C.4 *infra*, and as authorized by the U.S. District Court for the Middle District of North Carolina to be paid to the Named Plaintiffs in recognition of their service to the Settlement Classes and Settlement Collective Action in the Litigation.

12. **"Notice of Settlement"** refers to the official notice of settlement of class action and final fairness hearing, substantially in the form attached hereto as Exhibit 1.

13. **"Opt-in Plaintiff"** means any individual who, pursuant to 29 U.S.C. § 216(b), filed a written consent with the U.S. District Court for the Middle District of North Carolina in the Litigation, asking to participate in Plaintiffs' claims under the FLSA as a party

7

plaintiff prior to the date of this Agreement, and who falls within the definition of the FLSA collective action, as defined in the Second Amended Complaint and as set forth in section II.A.21.a.

14.     **"Opt-in Plaintiff Service Award"** refers to a minimum amount, as explained in Part III.C.3 *infra*, and as authorized by the U.S. District Court for the Middle District of North Carolina to be paid as a Settlement Payment to the Opt-In Plaintiffs, not including the Named Plaintiffs, in recognition of their service to the Settlement Classes and Settlement Collective Action in the Litigation.

15.     **"Order Granting Preliminary Approval"** refers to the order or statement of decision in the Litigation granting preliminary approval to this settlement.

16.     **"Plaintiffs"** means Bailey Reynolds and Helen Martinez, individually and on behalf of all Opt-in Plaintiffs defined herein, and all members of the Settlement Classes defined herein, their counsel of record, and their past, present, or future agents, heirs, assigns, representatives, and their respective successors and predecessors in interests.

17.     **"Plaintiffs' Attorney's Fees"** refers to the fee amount to be paid to Plaintiffs' Attorneys under the terms of this Agreement, as authorized by the U.S. District Court for the Middle District of North Carolina which shall not exceed one third of the Gross Settlement Amount.

18.     **"Plaintiffs' Attorneys"** means the attorneys representing Plaintiffs in the Litigation: (i) The Law Offices of Gilda A. Hernandez, PLLC, 1020 Southhill Drive, Suite 130 Cary, NC 27513, and (ii) Cohen Milstein Sellers & Toll, PLLC, 1100 New York Avenue, Suite 500, Washington, District of Columbia 20005.

19. **"Plaintiffs' Litigation Expenses"** means the litigation costs and expenses, incurred by Plaintiffs in connection with the Litigation, which shall be paid to Plaintiffs' Attorneys under the terms of this Agreement, as authorized by the U.S. District Court for the Middle District of North Carolina.

20. **"Releasor"** means each and every Named Plaintiff, Authorized Claimant and member of a Settlement Class.

21. **"Retail Business"** refers to Fidelity's business providing financial services including retail brokerage and managed account services, college savings accounts, and other financial services for investors. Call centers servicing Fidelity's Retail Business are located in Jacksonville, Florida; Covington, Kentucky; Merrimack, New Hampshire; Salt Lake City, Utah; Denver, Colorado; and Westlake, Texas.

22. **"Revised Gross Settlement Amount"** refers to the portion of the Gross Settlement Amount available for distribution as cash Settlement Payments to Authorized Claimants, as described in Parts III.B *infra*. The Revised Gross Settlement Amount is equal to Gross Settlement Amount less: (i) Named Plaintiffs' Service Awards, as described herein; (ii) Plaintiffs' Attorney's Fees, as described herein; (iii) Plaintiffs' Litigation Expenses, as described herein; and (iv) Settlement Expenses, as defined herein.

23. **"Settlement Administrator"** refers to a firm, mutually agreed upon by Plaintiffs and Defendants and approved by the Court, to effectuate the settlement by issuing notice of the settlement, collecting required claim forms, distributing Settlement Payments, and any other tasks specified in this Agreement or by order of the Court.

24. **"Settlement Classes"** are defined as follows:

a.  "NCHWA Class," which corresponds to Plaintiffs' NCWHA Rule 23 class claims, means all non-exempt employees of Fidelity Workplace Investing LLC, Fidelity Investments Institutional Operations Company, Inc., FMR LLC, Fidelity Brokerage Services LLC, or Veritude LLC who (1) worked in the Durham, North Carolina call center between May 17, 2016 and December 31, 2018, (2) for the Workplace Investing Business Group, (3) primarily interacting telephonically or on-line with customers, and (4) utilizing the Aspect or Genesys phone systems; or,

b.  "NMMWA Class," which corresponds to Plaintiffs' NMMWA Rule 23 class claims, means all non-exempt employees of Fidelity Workplace Investing LLC, Fidelity Investments Institutional Operations Company, Inc., FMR LLC, Fidelity Brokerage Services LLC, or Veritude LLC who (1) worked at least 40 hours in one full workweek in the Albuquerque, New Mexico call center between May 17, 2016 and December 31, 2018, (2) for the Workplace Investing Business Group, (3) primarily interacting telephonically or on-line with customers, and (4) utilizing the Aspect or Genesys phone systems.

25.   **"Settlement Collective Action"** means all non-exempt employees of Fidelity Workplace Investing LLC, Fidelity Investments Institutional Operations Company, Inc., FMR LLC, Fidelity Brokerage Services LLC or Veritude LLC who (1) worked at least 40 hours in one full workweek between August 7, 2015 and December 31, 2018, (2) for the Workplace

10

Investing Business Group, (3) primarily interacting telephonically or on-line with customers, and (b) utilizing the Aspect or Genesys phone systems.

26. **"Settlement Expenses"** means all expenses associated with administering the settlement, including, but not limited to, the costs of the Settlement Administrator, the costs of mailing the Notice of Settlement, and the costs of disbursing the settlement proceeds, which shall be determined by the Settlement Administrator prior to the mailing of the Notice of Settlement.

27. **"Settlement Payments"** means the amounts to be paid to individual Authorized Claimants from the Revised Gross Settlement Amount.

28. **"Tolling Date"** refers to August 7, 2018. In their Confidential Mediation Agreement entered into on September 20, 2018, the Parties agreed to toll the statute of limitations for the FLSA claims asserted in this Litigation beginning on August 7, 2018.

29. **"Workplace Business"** refers to Fidelity's business servicing employers with respect to to 401(k) plans, pension plans, and other employer-sponsored retirement plans and benefits. Call center employees assigned to Fidelity's Workplace Investing Business Group service the Workplace Business. Call centers servicing Defendants' Workplace Business are located in Covington, Kentucky; Durham, North Carolina; Merrimack, New Hampshire; Albuquerque, New Mexico; and Westlake, Texas.

**B.    Court Approval of Settlement**

Settlement of the Litigation is contingent upon final Court approval of the Agreement. The parties agree that Plaintiffs will move the Court for preliminary and subsequently final approval of the settlement described herein. Defendants will not oppose Plaintiffs' motions seeking approval of this settlement, provided that they are afforded the opportunity to review and provide input into such motions before they are filed with the Court.

11

As part of the approval process, Plaintiffs will request Service Awards for the Named Plaintiffs, and for the Opt-in Plaintiffs, as set forth herein. Defendant agrees not to oppose such a request, so long as it does not exceed the amounts referenced in Part III.C.3 and 4 *infra*. Further, Plaintiffs' Attorneys will petition the Court for an award of Plaintiffs' Attorney's Fees and Plaintiffs' Litigation Expenses, as set forth herein. Defendant agrees not to oppose such a petition, so long as the amount of Plaintiffs' Attorney's Fees sought does not exceed one-third of the Gross Settlement Amount, as defined herein.

### C. Amended Pleadings and Certification of the Settlement Classes

#### 1. Amended Pleadings

Plaintiffs have sought leave to file a Second Amended Complaint, which shall name Veritude LLC as an additional defendant. In addition, the Second Amended Complaint shall amend the class and collective action definitions consistent with Paragraphs 21 and 22 above. This Agreement is contingent upon the Court granting the motion for leave to file the Second Amended Complaint.

#### 2. Certification of the Settlement Classes

Solely for the purposes of settlement, the parties will stipulate that Named Plaintiffs are adequate to serve as Class Representatives and Plaintiffs' Attorneys are adequate to serve as Class Counsel. Solely for purposes of settlement, the parties agree that Plaintiffs shall request, as part of the motion for preliminary approval, that the U.S. District Court for the Middle District of North Carolina certify the FLSA Settlement Collective Action defined *supra*, under 29 U.S.C. 216(b):

(i) With respect to Plaintiffs' FLSA collective action claims, all non-exempt employees of Fidelity Workplace Investing LLC, Fidelity Investments Institutional Operations Company, Inc., FMR LLC, Fidelity Brokerage Services LLC or Veritude LLC who (1)

worked at least 40 hours in one full workweek between August 7, 2015 and December 31, 2018, (2) for the Workplace Investing Business Group, (3) primarily interacting telephonically or on-line with customers, and (4) utilizing the Aspect or Genesys phone systems.

Additionally, solely for purposes of settlement, the parties agree that Plaintiffs shall request, as part of the motion for preliminary approval, that the Court certify the following state law Settlement Classes, defined *supra*, under Federal Rule of Civil Procedure 23:

  (ii)  With respect to Plaintiffs' NCWHA Rule 23 class claims, all non-exempt employees of Fidelity Workplace Investing LLC, Fidelity Investments Institutional Operations Company, Inc., FMR LLC, Fidelity Brokerage Services LLC or Veritude LLC who (1) worked in the Durham, North Carolina call center between May 17, 2016 and December 31, 2018, (2) for the Workplace Investing Business Group, (3) primarily interacting telephonically or on-line with customers, and (4) utilizing the Aspect or Genesys phone systems; and

 (iii)  With respect to Plaintiffs' NMMWA Rule 23 class claims, all non-exempt employees of Fidelity Workplace Investing LLC, Fidelity Investments Institutional Operations Company, Inc., FMR LLC, Fidelity Brokerage Services LLC or Veritude LLC who (1) worked at least 40 hours in one full workweek in the Albuquerque, New Mexico call center between May 17, 2016 and December 31, 2018, (2) for the Workplace Investing Business Group, (3) primarily interacting telephonically or on-line with customers, and (4) utilizing the Aspect or Genesys phone systems.

The Agreement is contingent upon the approval of, and final certification by the Court of these Settlement Classes and Settlement Collective Action for settlement purposes only.  In

agreeing to Plaintiffs moving the Court for certification of these Settlement Classes and Settlement Collective Action, Defendants do not waive, and instead expressly reserve their rights to challenge the propriety of the certification of such classes for any purpose as if this Agreement had not been entered into by the parties should the Court, for any reason, not approve the settlement contained herein.

## III.   SETTLEMENT PAYMENT AND ALLOCATION

### A.      Defendants' Payment of Maximum Gross Settlement Amount

In order to settle the Litigation, and as consideration for Plaintiffs' release of claims, dismissal of the Litigation, and the other good and valuable consideration described herein that Plaintiffs are providing to Defendants, Defendants agree to pay up to $3 million, the Gross Settlement Amount, which shall be used to provide for:  (i) cash Settlement Payments to Authorized Claimants, as described in this Agreement; (ii) Service Awards, as described herein; (iii) Plaintiffs' Attorney's Fees, payable as described herein; (iv) Plaintiffs' Litigation Expenses, as described herein; and (v) Settlement Expenses, as defined herein.

Pursuant to this Agreement, Defendants will not be required to pay any amount over the Gross Settlement Amount, except that, in addition to the Gross Settlement Amount, Defendants will pay the employer share of payroll taxes associated with payments to Authorized Claimants pursuant to this Agreement that are attributable to back wages.

### B.      Claims Made Procedure

Any member of a Settlement Class or Settlement Collective Action who is not a Named Plaintiff or Opt-in Plaintiff must return a simple claim form (which also serves as an opt-in form for the FLSA collective action), a copy of which is included as Exhibit 2, to receive a Settlement Payment.  To the extent that any member of the Settlement Classes or Settlement Collective Action

14

does not timely submit the required claim forms or chooses to opt out of the settlement, their share of the Gross Settlement Amount will remain the sole and exclusive property of Defendants.

### C. Allocation of Settlement Payments, Minimum Settlement Payments, and Service Awards

All Settlement Payments, not including Named Plaintiffs' Service Awards (which will be paid out of the Gross Settlement Amount, as stated in Part III(a), *infra*), shall be paid from the Revised Gross Settlement Amount. The Revised Gross Settlement Amount will be divided among the Authorized Claimants as described herein.

### 1. Estimated Unpaid Wages

Plaintiffs' Attorneys retained a consultant to calculate the unpaid wages due for members of the Settlement Classes and Settlement Collective Action, using Defendants' payroll data. The estimate was made as follows:

Considering workweeks from three years prior to the Tolling Date through December 31, 2018, the number of shifts worked by a Member each week was estimated by dividing the number of hours worked per week by 8.4 and rounding that number to the nearest whole digit. The amount of time allegedly worked each week was calculated by adding to hours already recorded and paid, 10 minutes for each shift worked before July 2016, and four minutes for every shift worked after July 2016. Plaintiffs estimated that the alleged *unpaid* pre-shift time before July 2016 was approximately ten minutes per day, and after July 2016 was four minutes. Defendants disputed these estimates. Plaintiffs' revised regular rate was calculated by incorporating the Members' bonus compensation and fitness and student loan reimbursements that were not previously included in calculating the regular rate. The corrected wages Plaintiffs allege were due to each Member were calculated by using the corrected regular rate for all hours up to 40 hours per week,

and the corrected regular rate multiplied by 1.5 for all time worked over 40 hours per week. Potential damages were calculated for each employee by taking the difference between the corrected wages Plaintiffs allege were due and the actual wages paid each week, and adding up the total, considering only workweeks in which the corrected hours worked exceeded 40, except for in the state of North Carolina where all workweeks were considered.

## 2. Settlement Payments

Plaintiffs will provide the Settlement Administrator with the calculation of unpaid wages for each Member of a Settlement Class or Settlement Collective Action as described in paragraph 1, *supra*, by the production ID numbers provided to them by Defendants. Defendants will provide the Settlement Administrator with the name, address, and social security number for each Member, as well as production ID number to match with the calculation provided by Plaintiffs. Members of the Settlement Classes and Settlement Collective Action shall be entitled to receive a minimum of $25 under this Agreement, subject to the requirement of submitting a claim form as described in Part IV.A.3 *infra*. Individual Settlement Payments will be calculated by the Settlement Administrator as follows:

(a) Calculate an "Individual Numerator," which equals each Member's unpaid overtime (exclusive of any claims for liquidated damages or interest), calculated as described in part III.C.1, *supra*.

(b) Calculate a "Total Denominator," which equals the Individual Numerator of all Members, added together.

(c) Calculate each Member's "Share Percentage," which equals the Individual Numerator divided by the Total Denominator.

16

(d)     Multiply the Share Percentage by the Revised Gross Settlement Amount to determine each Member's settlement amount.

(e)     If a Member's settlement amount equals less than $25, or, where applicable, less than the Opt-in Plaintiff guaranteed amount pursuant to ¶ II.E.3, *infra*, that Member's "Individual Settlement Payment" will be $25 or the Opt-in Plaintiff guaranteed amount.

(f)     Remove all Members who receive a guaranteed minimum payment pursuant to step (e), subtract the payments received by those Members from the Revised Gross Settlement Amount, and repeat steps (a) through (e) for the remaining Members, until each Member's payment is equal to or greater than $25 to calculate the "Individual Settlement Payment."  The sum total of all Individual Settlement Payments after completion of these steps will not exceed the Revised Gross Settlement Amount.

The Settlement Administrator will calculate individual Settlement Payments to include on the claim form sent to each Member of the Settlement Classes or Settlement Collective Action based on the Revised Gross Settlement Amount assuming the Court approves the requested attorneys' fees and expenses and the requested service awards.  To the extent the Court does not grant these requests, the Settlement Administrator will recalculate the individual Settlement Payments prior to issuing checks to Authorized Claimants.

### 3.     Opt-In Plaintiff Service Awards

Opt-In Plaintiffs, except for Named Plaintiffs, within the amended FLSA collective action definition shall be entitled to receive as their Settlement Payment, a minimum of $2,000, or the amount they would otherwise be due under the allocation formula, whichever is greater, in recognition of their assistance in the investigation of the case and preparation for mediation.

Defendants agree not to oppose such an allocation, which shall be paid from the Revised Gross Settlement Amount, and will be incorporated into the calculation of the individual Settlement Payments in the same way as the $25 minimum award is described above.

### 4. Named Plaintiffs' Service Awards

In addition to the Settlement Payment due to each Named Plaintiff under the allocation formula, Plaintiffs will request Named Plaintiffs' Service Awards for the Named Plaintiffs, in the amount of $20,000 for Plaintiff Bailey Reynolds, and $15,000 for Plaintiff Helen Martinez, in recognition of their assistance in the investigation of the case and preparation for mediation. Defendants agree not to oppose such a request. Such service awards shall be paid from the Maximum Gross Settlement Amount.

### D. Tax Treatment

The settlement fund shall be a qualified settlement fund under 26 U.S.C. § 468B.

The parties agree that each Settlement Payment, including Opt-In Plaintiff Service Awards, to be issued to each Authorized Claimant pursuant to this Agreement shall be separated into two amounts: 75 percent shall be allocated to the claims asserted in the Litigation for unpaid wages; and 25 percent shall be allocated to the claims asserted in the Litigation for liquidated damages and interest. The portion of each Settlement Payment allocated to claims of unpaid overtime and other wages will be subject to authorized or required deductions, including employee-paid payroll tax withholdings required by law, garnishments, and tax liens. However, Defendants will remain responsible for paying the employer's share of all required payroll taxes, and the amount of such taxes is not included in the Gross Settlement Amount. The portion of each Settlement Payment allocated to liquidated damages and interest shall be reported as non-wage income to the recipient. Named Plaintiffs' Service Payments shall be reported as non-wage income to the recipient.

18

The Settlement Administrator will report the portion of the Settlement Payment made to each Authorized Claimant attributable to wages on an I.R.S. Form W-2, and the portion of the Settlement Payment attributable to non-wages on an I.R.S. Form 1099. The Settlement Administrator shall be responsible for issuing the settlement checks, less required withholdings and deductions, to each Authorized Claimant and mailing the settlement checks, Form W-2s, and Form 1099s to each such individual.

## IV. SETTLEMENT ADMINISTRATION

The parties agree that RG/2 Claims Administration LLC., ("RG2"), a neutral third party, shall serve as the Settlement Administrator for this settlement, if approved by the Court. To that end, as part of their Motion for Preliminary Approval, Plaintiffs shall request that the Court approve RG2 to serve in this capacity and order RG2 to perform the specific tasks assigned to the Settlement Administrator in this Agreement or by order of the Court, and only those tasks, unless otherwise agreed to by the Parties. This shall include the issuance of the agreed Notice of Settlement, substantially in the form attached hereto as Exhibit 1, to all members of the Settlement Classes and Settlement Collective Action defined herein after entry of the Order Granting Preliminary Approval of the settlement outlined in this Agreement.

### A. Settlement Administrator and Notice

#### 1. Providing and updating contact information for members of the Settlement Classes

Within 14 days after the date the court enters an Order Granting Preliminary Approval of this Agreement, Plaintiffs will provide the Settlement Administrator with the names and last known mailing address for the Named Plaintiffs and all Opt-in Plaintiffs. Within that same time period, Defendants will provide the Settlement Administrator with the Social Security number and

19

Production ID for each Named Plaintiff and Opt-in Plaintiffs, as well as the name, last known mailing address, Production ID, and Social Security number for all other members of the Settlement Classes and Settlement Collective Action from Defendants' records. This information will remain confidential and will not be disclosed to anyone other than the Settlement Administrator, or as described in this Agreement, with the exception of applicable taxing authorities or pursuant to express written authorization by the party providing the information or by court order. To ensure that the Settlement Administrator has the most up to date addresses possible, the Settlement Administrator shall update all addresses the parties provide for the members of the Settlement Classes and Settlement Collective Action using the national change of address database and, after mailing the Notice of Settlement as described in Part IV.A.2, *infra*, by performing a "skiptrace," as described in Part IV.A.2, *infra*, for any notice that is returned undeliverable. Any fees or costs incurred by the Settlement Administrator in updating addresses are Settlement Expenses and are included in the Gross Settlement Amount.

### 2. Mailing of the Notice of Settlement and related materials

Within 30 calendar days after the Court enters an Order Granting Preliminary Approval of the Agreement, the Claims Administrator will mail the Notice of Settlement. The Notice of Settlement shall consist of a single mailing to all members of the Settlement Classes and Settlement Collective Action defined herein, and a reminder notice as described below. The Settlement Administrator shall issue the Notice of Settlement by First Class U.S. Mail using envelopes that include the names and logos of Plaintiffs' Attorneys' law firms. Along with the Court-approved Notice of Settlement, the Settlement Administrator shall mail the claim forms that members of the Settlement Classes and Settlement Collective Action are required to complete in order to receive Settlement Payments, as discussed in Part III.B, *supra*, and Part IV.A.3, *infra*, and a postage pre-

paid return envelope. If any notice is returned undeliverable, the Settlement Administrator will perform a "skiptrace" and make reasonable efforts to find an updated address and re-send the notice via U.S. mail. If the skiptrace does not yield an updated address (or notice sent to such updated address is returned undeliverable), but the skiptrace does yield an email address or cell phone number, then notice may be sent using email or text message providing a link to the full notice.

Thirty-seven days after sending the original Notice of Settlement, the Settlement Administrator shall send a "reminder" notice to members of the Settlement Classes and Settlement Collective action who have not yet responded, in the form of a postcard sent by first-class mail, in substantially the form attached hereto as Exhibit 3. The Settlement Administrator may provide replacement copies of the Notice of Settlement and claim form to members of the Settlement Classes and Settlement Collective Action via the website discussed in Part IV.A.4, *infra*, or by mail if requested by a member of the Settlement Class or Settlement Collective Action.

### 3. Responses to the Notice of Settlement

The Notice of Settlement will inform the Settlement Classes and Settlement Collective Action that any member of a Settlement Class or Settlement Collective Action who is not a Named Plaintiff or Opt-in Plaintiff must return a simple claim form, a copy of which is included as Exhibit 2, to receive a Settlement Payment. Members of the Settlement Classes and Settlement Collective Action shall have 75 calendar days following the mailing of notice to postmark, email, or fax required claim forms to the Settlement Administrator. In the event a member of the Settlement Classes or Settlement Collective Action submits the required claim form in a timely manner (i.e., emailed, faxed, postmarked within the 75 days of the mailing of the Notice of Settlement), but the claim form is missing a signature, the Settlement Administrator will (no later than 14 calendar

21

days of receipt of the unsigned form) return the deficient document to the Member with a letter explaining the signature is required and stating that the Member will have 14 calendar days from the date the notice was mailed to resubmit the document with a signature. The envelope containing the signed claim form must be postmarked within 14 calendar days of the date the notice is mailed to the Member to be considered timely, unless the signed form is received by the Settlement Administrator via facsimile or email within 14 calendar days of the date the notice is mailed. The Settlement Administrator's decision on whether a form has been "signed" shall be binding on the parties and the individual member of the Settlement Classes.

The Notice of Settlement will also explain the option for members of the Settlement Classes who are not Named Plaintiffs to opt out of the settlement.

Members of the Settlement Classes who are not Named Plaintiffs and who wish to opt out of the settlement must submit a written statement expressly asserting that he or she wishes to be excluded from the settlement. Such written statements should state at the top of the letter "Request for Exclusion from Settlement in *Reynolds, et al. v. Fidelity Investments Institutional Operations Company, Inc., et al.*, No. 1:18-CV-423-CCE-LPA," and should include the name, address, telephone number, and signature of the Member requesting exclusion from the settlement. All written requests for exclusion must be returned by First-Class U.S. Mail to the Settlement Administrator and must be postmarked no later than 75 calendar days from the postmark of the Notice of Settlement sent to members of the Settlement Classes. Any member of the Settlement Classes who requests exclusion from the settlement will not be eligible to receive a Settlement Payment and cannot object to the settlement. In the event that any Members of the Settlement Classes timely and properly submit a written request for exclusion, and also timely submit the required claim form necessary to receive a Settlement Payment, or also timely submit an objection

22

to the Settlement, the Settlement Administrator shall contact such Members, inform them that they cannot request exclusion from the settlement and request a Settlement Payment and/or object to the settlement, and shall ask such Members which option they wish to pursue. Any member of the Settlement Classes who requests exclusion from the settlement will not be legally bound by the terms of the Agreement or the final order approving the settlement. In contrast, any member of the Settlement Classes who does not return a valid and timely written request for exclusion will be bound by all terms of the Agreement and the final order approving the settlement, regardless of whether they have objected to the settlement.

Additionally, the Notice of Settlement will inform the Settlement Classes of their right to object to the settlement and that to do so they must file with the U.S. District Court for the Middle District of North Carolina, and serve on counsel for the parties, either a written statement objecting to the settlement or a written notice of their intention to appear and object at the Final Settlement Hearing. Such written statement or notice must be filed and served within 75 calendar days after the mailing date of the Notice of Settlement. Persons who are included in the Settlement Classes or Settlement Collective Action who fail to timely file and serve written objections or notice of intention to appear and object in the manner specified above will be deemed to have waived any objections and will be foreclosed from making any objection to the settlement, whether by appeal or otherwise.

Within 100 days of the mailing of the Notice of Settlement, the Settlement Administrator shall provide to counsel for both parties a declaration from an appropriate agent or agents working for it, stating under penalty of perjury: (a) the names and addresses of all individuals who were mailed Notice; (b) whether each such individual timely and properly submitted the required claim form to receive a Settlement Payment and, if so, the amount of that payment; (c) the identity of all

23

such individuals who validly and timely requested exclusion from the settlement; and (d) whether each such individual was an Opt-in Plaintiff, member of the Settlement Collective Action, or member of a Settlement Class. The names and addresses of those individuals who were mailed Notice shall be maintained in a confidential manner, and used solely to confirm to individuals who inquire whether or not they were mailed notice.

4.    **Settlement Administrator's website**

In addition to mailing the Notice of Settlement, the Settlement Administrator shall maintain a password protected website from the date that the Notice of Settlement is mailed until at least 75 calendar days following the date of the final fairness hearing. This website shall: (i) provide a brief summary of who is to receive the Notice of Settlement and the purpose of the Notice of Settlement; (ii) provide members of the Settlement Classes and Settlement Collective Action with access to downloadable copies of the Notice of Settlement and the required claim form they are required to submit in order to receive a Settlement Payment; (iii) provide a mechanism for members of the Settlement Classes and Settlement Collective Action to submit their required claim form with an electronic signature; (iv) provide answers to "frequently asked questions" using language agreed to between the parties; and (v) contact information for the Settlement Administrator. The URL for the Settlement Administrator's website will be www.ReynoldsCallCenterSettlement.com and the password has been mutually agreed upon by the parties. The parties shall agree as to the specific language and formatting of that website before it is operational. The password will be plainly included in the Notice mailed to Members. The webpage where the password has to be entered will also have contact information for the Settlement Administrator in case a Member loses the password.

**B.** **Communications Regarding the Settlement, Claims Against Defendants, and the Parties to the Litigation**

        **1.** **Public Comment and Non-disclosure**

Prior to the submission of this Agreement to the Court for preliminary approval, none of the parties, nor any counsel, shall communicate any terms of this settlement to any third parties except as necessary to effectuate the settlement or as required by law.

After the Court has granted preliminary approval, then the parties may communicate about this Agreement with third parties as follows:

        a.      Plaintiffs' Attorneys may update their firm websites' discussion of this Litigation to note the fact of settlement and link to the webpage to be established by the Settlement Administrator. Plaintiffs shall only post text about the Agreement that the parties have agreed upon; this shall not give Defendant the right to demand changes to any text addressing the Litigation other than the settlement.

        b.      Defendants may communicate internally about the Agreement, but if they are going to direct communications to members of the Settlement Class or Settlement Collective Action, then the text of such communications must be agreed upon by the parties first, as in IV.B.1.a.

        c.      Plaintiffs' Attorneys shall remain free to discuss this Litigation or Agreement directly with any member of the Settlement Classes or Collective Action.

25

d.  No party shall issue a press release or otherwise seek press coverage of the Agreement.  If asked for comment on the Agreement, parties and their counsel shall state only that this Litigation has been resolved satisfactorily, by agreement of the parties.

e.  The parties agree that, other than as provided for in this Agreement, or as required by law, Named Plaintiffs, Opt-in Plaintiffs, Authorized Claimants, Plaintiffs' counsel, Defendants, and Defendants' counsel will not disclose the amount paid to any Member , or the Settlement Amount (Gross or Revised) under this Agreement to any third parties, except to immediate family, attorneys, or tax counselors or Defendants' auditors, regulators, examinors or other similarly-situated third parties with whom such information would be shared in the ordinary course of business.

f.  Nothing in this agreement shall foreclose Plaintiffs' Attorneys from listing the existence and resolution of this Litigation in applications to be appointed class counsel in other cases.

g.  Plaintiffs' Attorneys and Defendants' Attorneys shall be permitted to list the existence of the settlement and the Gross Settlement Amount in confidential applications for awards from legal periodicals and associations.  Any such disclosures must stipulate that the existence of the settlement and the Revised Gross Settlement Amount will remain confidential and will not be published by the legal periodical or association.

26

h.    Plaintiffs' Attorneys and Defendants' Attorneys shall be permitted to discuss at professional legal conferences and seminars any aspect of the Litigation that is a part of the public record.

## 2.    Non-Solicitation

The Named Plaintiffs, Opt-in Plaintiffs, and Plaintiffs' Attorneys will not contact, solicit, or otherwise encourage other current or former employees of Defendants or their affiliates to assert claims against Defendants or their affiliates.   However, should one of Defendants' current or former employees who is not already a Named Plaintiff or Opt-in Plaintiff contact Plaintiffs' Attorneys about a potential claim against Defendants, Plaintiffs' Attorneys will be free to follow their professional judgment in advising such an individual about a potential claim regarding Defendants.

## C.    Plaintiffs' Attorneys' Fees and Litigation Expenses

Plaintiffs' Attorneys may make an application to the U.S. District Court for the Middle District of North Carolina for an award of Plaintiffs' Attorney's Fees and an award of Plaintiffs' Litigation Expenses.  The amount of the Plaintiffs' Attorney's Fees will not exceed one third of the Gross Settlement Amount.  Such application shall be filed in connection with the Motion for Preliminary Approval of the Agreement and this settlement.  Defendants will not oppose any such application for fees or costs, provided that Plaintiffs' Attorneys do not seek to recover attorney's fees in excess of one third of the Gross Settlement Amount.

If the Court rules that any amounts requested by Plaintiffs' Attorneys as an award of Plaintiffs' Attorney's Fees or Plaintiffs' Litigation Expenses are excessive or improper, and reduces the same, only the reduced amounts will be deemed to be Plaintiffs' Attorney's Fees and Plaintiffs' Litigation Expenses for purposes of this Agreement.   Any remaining or reduced

27

amounts shall be added to the Revised Gross Settlement Amount available for distribution to Authorized Claimants.

Payment of such Plaintiffs' Attorney's Fees and Plaintiffs' Litigation Expenses to Plaintiffs' Attorneys as set forth in this Agreement, and payment of Settlement Expenses, shall constitute full satisfaction of any and all obligations by Defendants to pay any person, attorney, or law firm (including but not limited to Plaintiffs' Attorneys) for attorneys' fees, expenses, or costs (including but not limited to any fees, costs, and expenses related to any experts and/or consultants and any fees, costs, and expenses associated with mediation) incurred on behalf all members of the Settlement Classes and Settlement Collective Action, and shall relieve Defendants of any other claims or liability to any person for any attorneys' fees, expenses, and costs to which any person may claim to be entitled on behalf of any members of the Settlement Classes and Settlement Collective Action for this Litigation. Upon payment of Plaintiffs' Attorney's Fees and Plaintiffs' Litigation Expenses hereunder, and payment of Settlement Expenses, Plaintiffs' Attorneys, the Authorized Claimants and Settlement Class members shall release Defendants from any and all claims for attorneys' fees, expenses, and costs relating to this Litigation.

Plaintiffs' Attorney's Fees and Litigation Expenses, and the Settlement Expenses, shall be paid solely from the Gross Settlement Amount.

**D.    Funding of Gross Settlement Amount and Payments from Gross Settlement Amount**

**1.    Defendants' payment of the Gross Settlement Amount**

No later than 30 days after the Effective Date, the Settlement Administrator shall establish a Qualified Settlement Fund, which will be maintained by the Settlement Administrator. No later than 30 days after the Effective Date, Defendants shall deposit into the Qualified Settlement Fund,

28

the necessary portion of the Maximum Gross Settlement Amount required to satisfy the approved attorneys' fees and costs and submitted claim forms.

### 2. Settlement Administrator's issuance of Settlement Payments to Authorized Claimants

Within 15 calendar days of when Defendant's payment of the Gross Settlement Amount is received by the Settlement Administrator, the Settlement Administrator will issue Settlement Payments by U.S. Mail to each Authorized Claimant.

Those members of the Settlement Classes who have properly and timely opted out of the settlement are not Authorized Claimants and are not entitled to a Settlement Payment. Additionally, any member of a Settlement Class or Settlement Collective Action who is not a Named Plaintiff or Opt-in Plaintiff who did not timely return a claim form, a copy of which is included as Exhibit 2, is not an Authorized Claimant and is not entitled to any Settlement Payments. The Settlement Administrator's determination of whether a Member of the Settlement Classes or Settlement Collective Action is an Authorized Claimant will be conclusive and binding on all members of a Settlement Class or Settlement Collective Action, subject to the dispute resolution provisions of this Agreement as set forth in Part IV.E, *infra*.

Each Authorized Claimant who is entitled to receive a Settlement Payment will have 180 calendar days from the date on which the Settlement Payment is mailed to negotiate his or her settlement check. If any settlement check is not negotiated in that period of time, that settlement check will be voided, and a stop-payment will be placed on the settlement check. Any individual Settlement Payments which remain unclaimed for any reason 180 calendar days following the mailing of the Settlement Payment shall be deemed unclaimed. In such event, the Authorized Claimants whose Settlement Payment is unclaimed will be deemed to have irrevocably waived

29

any right in or claim to any Settlement Payment, but the Agreement and release of claims contained therein nevertheless will be binding upon them. Such unclaimed funds shall be distributed to a *cy pres* recipient. The *cy pres* recipients will be the National Employment Law Project and Legal Aid of North Carolina, which are charities organized under § 501(c)(3), Internal Revenue Code. Any *cy pres* funds will be divided equally between the two organizations.

Neither Defendants, counsel for Defendants, Plaintiffs' Attorneys, Plaintiffs, nor the Settlement Administrator shall have any liability for lost or stolen settlement checks, for forged signatures on settlement checks, or for unauthorized negotiation of settlement checks. Without limiting the foregoing, in the event an Authorized Claimant notifies the Settlement Administrator that he or she believes that a settlement check has been lost or stolen, the Settlement Administrator shall immediately stop payment on such check. If the settlement check in question has not been negotiated prior to the stop payment order, the Settlement Administrator will issue a replacement check, from which the fees associated with the stop payment order will first be deducted. Any Authorized Claimant who receives a re-issued check will have a minimum of 45 calendar days to negotiate such re-issued check from the date of its mailing, or 180 days from the date of the original check, whichever is longer. If any settlement check is not negotiated in that period of time, that settlement check will be voided.

The Settlement Administrator will issue to each Authorized Claimant an I.R.S. Form W-2 for the portion of his or her Settlement Payments attributable to wages, an I.R.S. Form 1099 for the portion of his or her Settlement Payment attributable to non-wages, and an I.R.S. Form 1099 for his or her pro rata share of the Plaintiffs' Attorney's Fees and Plaintiffs' Litigation Expenses provided to Plaintiffs' Attorneys pursuant to this Agreement and settlement. These tax forms may

be issued and mailed to Authorized Claimants at the same time as the Settlement Payment is mailed, at an appropriate time thereafter.

3. **Settlement Administrator's Payment of Plaintiffs' Attorney's Fees and Plaintiffs' Litigation Expenses**

Plaintiffs' Attorney's Fees and Plaintiffs' Litigation Expenses, as authorized by the Court, will be paid by the Settlement Administrator from the Gross Settlement Amount within five calendar days after receipt of the Gross Settlement Amount, or within five calendar days of a court order in this Litigation awarding Plaintiffs' Attorney's Fees and Plaintiffs' Litigation Expenses to Plaintiffs' Attorneys, whichever is later. Prior to payment of any Plaintiffs' Attorney's Fees or Plaintiffs' Litigation Expenses to Plaintiffs' Attorneys, Plaintiffs' Attorneys shall inform the Settlement Administrator of the proper apportionment of the Plaintiffs' Attorney's Fees and Plaintiffs' Litigation Expenses authorized by the court between their respective firms.

The Settlement Administrator will issue an I.R.S. Form 1099 to each of Plaintiffs' Attorneys firms for the payments and each of Plaintiffs' Attorneys firms will provide the Settlement Administrator with completed I.R.S. Form W-9s.

4. **Settlement Administrator's Payment of Named Plaintiffs' Service Awards**

The Named Plaintiffs' Service Awards, if authorized by the Court, will be paid by the Settlement Administrator from the Gross Settlement Amount within five calendar days after receipt of the Gross Settlement Amount, or within five calendar days of a court order in this Litigation authorizing such Named Plaintiffs' Service Awards, whichever is later. The Settlement Administrator will pay the Named Plaintiffs' Service Awards ordered by the Court directly to the individuals ordered by the Court to receive such payments.

31

At an appropriate time following the issuance of such Named Plaintiffs' Service Awards the Settlement Administrator will issue to each recipient an I.R.S. Form 1099 that accounts for the payment of the Named Plaintiffs' Service Awards.

### 5. Payment of the Settlement Administrator's Expenses

The charges and costs incurred by the Settlement Administrator in performing its duties under this Agreement will be paid solely from the Gross Settlement Amount. The Settlement Administrator shall determine the final amount of such charges and costs prior to mailing the Notice of Settlement. Disputes of any kind relating to the Settlement Administrator will be resolved pursuant to the dispute resolution procedures set forth in Part IV.E, *infra*, if they cannot be resolved informally by the parties. The Settlement Administrator will regularly report to the parties, in written form, the substance of the work performed, including all amounts paid under this Agreement.

### E. Termination of the Settlement Agreement

### 1. Grounds for Settlement Termination:

This Agreement may be terminated on the following grounds:

(a) Plaintiffs' Attorneys or Defendant's counsel may terminate the Agreement if the Court declines to enter an Order Granting Preliminary Approval, an order granting final approval to this settlement, or judgment in substantially the same form as that submitted by the parties, or the Agreement does not become final for any other reason, or a Court of Appeals reverses the entry of an order granting final approval to this settlement or a final judgment in this Litigation following such an order, provided that the parties agree to work cooperatively and in good faith to address and resolve any concerns identified by the Court in declining to enter an Order Granting

Preliminary Approval, an order granting final approval to this settlement, or judgment in the form submitted by the parties.

(b)     If fewer than ten percent of the class and collective action members submit a claim to participate in the settlement or if more than ten percent of the Rule 23 class members exercise their rights to opt out of the settlement and this Agreement, as described in Part IV.A.3, *supra*, Defendants shall have the right, notwithstanding any other provisions of this Agreement, to withdraw from this Agreement.  If Defendants exercise this right, the Agreement will be null and void for all purposes and may not be used or introduced in the Litigation or any other proceeding of any kind.

## 2.     Procedures for Termination:

To terminate this Agreement on one of the grounds specified above, the terminating Counsel (i.e., Plaintiffs' Attorneys or counsel for Defendants) shall give written notice to the opposing counsel no later than:

(a)     15 business days after the Court acts; or

(b)     15 business days after Defendant receives notice from the Settlement Administrator that the requisite number of Rule 23 class members have timely requested exclusion from the settlement; or

(c)     15 business days after Defendant receives notice from the Settlement Administrator, only if such notice occurs after the deadline for Settlement Class and Settlement Collective Action members to return their claim forms has elapsed, that fewer than ten percent of the class and collective action members submitted a claim to participate in the settlement.

## 3.     Effect of Termination:

In the event that this Agreement is canceled, rescinded, terminated, voided, or nullified, however that may occur, or the settlement of the Litigation is barred by operation of the law, is invalidated, is not approved or otherwise is ordered not to be carried out by any court:

(a)     The Agreement shall be terminated and shall have no force or effect, and no party shall be bound by any of its terms;

(b)     In the event the Agreement is terminated, Defendants shall have no obligation to make any payments to any Plaintiff, any member of the Settlement Classes or Settlement Collective Action, or Plaintiffs' Attorneys, but Defendants shall be responsible for paying the Settlement Administrator for services rendered up to the date the Settlement Administrator is notified that the Agreement has been terminated;

(c)     Any Order Granting Preliminary Approval, granting final approval to this settlement, and/or judgment, including any order of class certification, shall be vacated;

(d)     The Agreement and all negotiations, statements, and proceedings relating thereto, shall be without prejudice to the rights of any of the parties, all of whom shall be restored to their respective positions in the action prior to the settlement;

(e)     Neither this Agreement, nor any ancillary documents, actions, statements, or filings in furtherance of settlement (including all matters associated with the mediation) shall be admissible or offered into evidence in the Litigation or any other action;

(f)     Defendant will stipulate that Plaintiffs may revert to the First Amended Complaint as a basis for any further litigation, rather than the Second Amended Complaint which was submitted in connection with this Agreement.

34

## V.   OTHER SETTLEMENT PROVISIONS

### A.   Release of Claims

To settle the Litigation, and as consideration for Defendant's payment of the Gross Settlement Amount, and the other good and valuable consideration described herein, Plaintiffs agree to release any claims they may have against Defendants only as described herein.

### 1.   Description of released claims

As of the Effective Date, each and every Named Plaintiff, Authorized Claimant and Member of a Settlement Class ("Releasors") hereby forever completely settles, compromises, releases, and discharges Defendants from any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which any Releasor has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that relate to hours worked or the payment of wages arising on or before the date of the Court's final approval of the settlement, except to the extent that any such claim may not be waived as a matter of law. The claims released by Releasors specifically include without limitation (i) any and all claims asserted in the Litigation; (ii) any and all claims for unpaid wages, minimum wages, overtime, late payment of wages, retaliation for complaining about wages or for asserting wage-related claims and/or any other claims of any kind, or any other wage-related or recordkeeping-related claims, damages or relief of any kind, including but not limited to the federal FLSA, 29 U.S.C. § 201, *et seq.*, any and all claims under North Carolina state law, including but not limited to the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, et seq., and any and all claims under New Mexico state law, including but not limited to the New Mexico Minimum Wage Act

35

("NMMWA"), N.M. Stat. Ann. § 50-4-1, et seq.; or any other statutes and/or regulations regulating hours of work, wages, the payment of wages, wage-related or recordkeeping-related claims, the payment of minimum wages, and/or the payment of overtime compensation; (iii) any and all claims under state and federal law for earned wages, overtime, and/or missed or interrupted meal breaks, including such claims for breach of express contract or labor agreement, implied contract, money had and received in *assumpsit*, *quantum meruit*/unjust enrichment, fraud, negligent misrepresentation, equitable estoppel, promissory estoppel, conversion, and failure to keep accurate records. The settlements, compromises, releases, and discharges described in this paragraph shall extend to any such claims that arose at any time up to the date on which the Court grants final approval of the settlement. The settlements, compromises, releases, and discharges described in this paragraph have no application to any claim by any Releasor, except for Named Plaintiffs (who have received service awards and therefore do release any and all claims whatsoever), for discrimination in violation of state or federal law, or any claim of any type arising on or after the date on which the Court grants final approval of this Agreement.

In addition, the Named Plaintiffs will release all known and unknown claims of any type against the Defendants, except to the extent that any such claim may not be waived as a matter of law. This Release has no application to any claim of any type arising on or after the Effective Date of this Agreement.

## 2. Agreement not to seek or accept relief in any other action

Releasors further covenant and agree that, except as provided below in this section, since they are settling disputed claims, they will not accept, recover, or receive any back pay, liquidated damages, other damages, or any other form of relief based on any claims asserted or settled in this Litigation, which may arise out of, or in connection with any other individual, class, collective,

36

representative, administrative, or arbitral proceeding pursued by any individual, class, union, or federal, state or local governmental agency against any Defendant. Releasors further acknowledge that they are enjoined from pursuing any claim settled, compromised, released, and/or discharged as part of this settlement.

Notwithstanding any provision in Part V.A, including any of its sub-parts, any Releasor shall be free to participate in the California settlement of *Morris v. Fidelity Investments et al.*, No. 3:17-cv-06027 (N.D. Cal. Oct 20, 2017) ("Morris Settlement") insofar as eligible thereunder if they first participated in that settlement. Any Releasor who participates in the Morris Settlement shall not be deemed to have released any claims in this Litigation by virtue of their participation in the Morris Settlement.

### 3. Recognition of binding nature of release

The parties agree that, as of the Effective Date, all Authorized Claimants and members of the Settlement Classes will be bound by the terms and conditions of this Agreement, the order by the U.S. District Court for the Middle District of North Carolina, or any other court taking jurisdiction of the Litigation, granting final approval to the Agreement and this settlement, the final judgment in the Litigation, and the releases set forth herein.

### B. Dispute Procedure

Except as otherwise set forth herein (see Parts V.K & IV.E, *infra*), in the event of a dispute concerning the proper interpretation of the Agreement, the enforcement of this Agreement, the parties' rights or obligations under the Agreement, or any alleged breach of the terms of the Agreement, notice must be mailed to counsel for the opposing party as provided in Part II.Y, *infra*. After receipt of such notice, the parties shall meet and confer in a good faith attempt to resolve the matter for 10 calendar days.

### C. Assignment of Claims

Defendants and their counsel, and Plaintiffs' Attorneys, and Plaintiffs, represent, covenant and warrant that they have not directly or indirectly, assigned or transferred to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

The parties further agree that this Agreement will be binding upon, and inure to the benefit of, the parties, and their respective heirs, trustees, executors, successors, legal administrators, and assigns.

### D. Denial of Liability

Defendants deny that they have failed to comply with the law in any respect, or have any liability under the claims asserted in the Litigation. The parties acknowledge that this Agreement is entered into for the purpose of compromising disputed claims and that nothing herein is an admission of liability, wrongdoing, or the propriety of collective or class treatment by Defendants. Neither the Agreement nor any document prepared in connection with the settlement may be admitted in any proceeding as an admission by Defendants. Notwithstanding this paragraph, any and all provisions of this Agreement may be admitted in evidence and used in any proceeding to enforce the terms of this Agreement or in defense of any claims released or barred by this Agreement.

Additionally, no party will be considered a prevailing party in this Litigation for any purpose, except with respect to the evaluation of Plaintiffs' motion for an award of attorneys' fees, for which Plaintiffs will be treated as a prevailing party.

### E.     Construction and Interpretation

The parties hereto agree that the terms and conditions of the Agreement are the result of lengthy, intensive, arms-length negotiations among the parties, through counsel, and the Agreement shall not be construed in favor of or against any party by reason of the extent to which any party or his, her, or its counsel participated in the drafting of the Agreement.

Paragraph and section titles are inserted as a matter of convenience for reference, and in no way define, limit, extend, or describe the scope of this Agreement or an of its provisions. With the exception of Part I, *supra*, each term of this Agreement is contractual and not merely a recital.

All exhibits attached to the Agreement, and referenced herein, are incorporated into the Agreement by such references and are a material part of this Agreement. Any notice or other exhibit that requires approval of the Court must be approved without material alteration from its current form for this Agreement to become effective.

This Agreement shall be governed by and enforced in accordance with the laws of the State of North Carolina.

### F.     Modification

This Agreement, and any of its parts, may be amended, modified, or waived only by an express written instrument signed by all signatories below or their successors-in-interest.

### G.     Counterparts

This Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument. Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.

## H. Return of Confidential Materials

Plaintiffs and Plaintiffs' Attorneys agree to return to Defendants or destroy all confidential materials produced by Defendants during the course of the Litigation, including informal discovery in preparation for mediation, within 60 calendar days of the Effective Date. This includes all copies of such confidential materials, whether in hardcopy or electronic format. However, Plaintiffs' Attorneys may retain a copy of all pleadings filed in this matter, including any exhibits thereto. Further, Plaintiffs' Attorneys may retain any work product which refers to or quotes from discovery documents. Plaintiffs' Attorneys will notify Defendants in writing if they or Plaintiffs elect to destroy the confidential materials. Plaintiffs and Plaintiffs' Attorneys agree not to send or otherwise disseminate the confidential materials to any other individual or entity before its return or destruction.

## I. Parties Shall Cooperate to Effectuate Settlement

The parties shall cooperate with each other to achieve the purpose of this Agreement, and shall execute such other and further documents and take such other and further actions as may be necessary or convenient to effect the transaction described herein.

## J. Notices, Demands, and Communications Concerning the Settlement

Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by First Class U.S. Mail, addressed as follows:

To Plaintiffs, Named Plaintiffs, Opt-in Plaintiffs, members of the Settlement Classes or Settlement Collective Action, and/or Plaintiffs' Attorneys:

| | |
|---|---|
| Christine E. Webber, Esq. | Gilda Adriana Hernandez, Esq. |
| COHEN MILSTEIN SELLERS & TOLL PLLC | THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC |

1100 New York Avenue, N.W., Suite 500          1020 Southhill Drive, Suite 130
Washington, DC 20005                           Cary, NC 27513
cwebber@cohenmilstein.com                      ghernandez@gildahernandezlaw.com

<u>To Defendant and/or counsel for Defendant:</u>

Richard G. Rosenblatt
August W. Heckman III
MORGAN LEWIS & BOCKIUS, LLP,
502 Carnegie Center, Princeton, NJ 08540
Richard.rosenblatt@morganlewis.com
august.heckman@morganlewis.com

## K.      Form and Content Resolution

The parties agree they must reach agreement on the form and content of the Agreement and its exhibits, as well as: Plaintiffs' unopposed motion for preliminary approval of the settlement and authorization to send notice to members of the Settlement Classes and Settlement Collective Action concerning the settlement and the final fairness hearing; a proposed order granting the same unopposed motion; the notices to be sent to members of the Settlement Classes and Settlement Collective Action concerning the settlement; the website to be run by the Settlement Administrator (discussed in Part IV.A.4, *supra*); Plaintiffs' unopposed motion for final approval of the settlement; and a proposed order granting the same unopposed motion.   Plaintiffs shall move for approval of the settlement and Defendants shall not oppose such a motion, provided that they are afforded the opportunity to review and provide input into all motion papers before they are filed with the Court.

## L.      Authorization

Plaintiffs' Attorneys warrant and represent that they are fully authorized by Plaintiffs, and the Defendants' Attorneys warrant and represent that they are fully authorized by Defendants, to take all appropriate action required or permitted by this Agreement.   The parties agree to fully

41

cooperate with each other to accomplish the terms of the settlement and this Agreement, including, but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of the Agreement. The parties to the Agreement shall use their best efforts, including all efforts contemplated by the Agreement and any other efforts that may become necessary by order of the U.S. District Court for the Middle District of North Carolina, or any other court taking jurisdiction over the Litigation, or otherwise, to effectuate the Agreement and the terms set forth herein.

### M. Dismissal

Upon entry of a final order approving this Agreement, Plaintiffs agree to execute all documents necessary to dismiss with prejudice any and all claims raised against Defendants in the Litigation. But if an appeal leads to reversal of approval of this Agreement, then the parties agree that the claims will be reinstated as if never dismissed as described in Part IV.E.3

### N. Reasonableness of Settlement

The parties believe that this is a fair, reasonable, and adequate settlement and have arrived at this settlement through arms-length negotiations, taking into account all relevant factors, present and potential.

### O. Integration Clause

After this Agreement is fully executed by all parties, it will constitute the entire Agreement of the parties and fully supersedes any and all prior agreements or understandings, written or oral, between the parties pertaining to the subject matter hereof, including, but not limited to, any and all written and oral agreements reached between the parties during the mediation that resulted in this Agreement. This integration clause does not apply to the parties' Confidential Mediation Agreement entered into by the parties on September 20, 2018. In addition, this integration clause

does not apply to the parties' confidential settlement agreements entered on behalf of opt-in plaintiffs known as of the filing of this Agreement or included on a list lodged with the mediator who did not meet the revised FLSA class definition because they worked in Defendants' call centers serving retail brokerage customers, which are a condition precedent to the enforceability of this Agreement.

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement:

Dated:  February 22, 2019     By _____
                              Christine E. Webber, Esq.
                              COHEN MILSTEIN SELLERS & TOLL PLLC
                              Attorneys for Plaintiffs

Dated: 2/22/2019              By _____
                              Gilda A. Hernandez, Esq.
                              LAW OFFICES OF GILDA A. HERNANDEZ, PLLC
                              Attorneys for Plaintiffs

Dated: _____          By _____
                              Kelly Schultz
                              Head of HR, Workplace Investing
                              For Defendants

Dated: _____          By _____
                              Richard G. Rosenblatt, Esq.
                              August W. Heckman III, Esq.
                              MORGAN, LEWIS & BOCKIUS LLP
                              Attorney for Defendants

43

between the parties pertaining to the subject matter hereof, including, but not limited to, any and all written and oral agreements reached between the parties during the mediation that resulted in this Agreement. This integration clause does not apply to the parties' Confidential Mediation Agreement entered into by the parties on September 20, 2018. In addition, this integration clause does not apply to the parties' confidential settlement agreements entered on behalf of opt-in plaintiffs known as of the filing of this Agreement or included on a list lodged with the mediator who did not meet the revised FLSA class definition because they worked in Defendants' call centers serving retail brokerage customers, which are a condition precedent to the enforceability of this Agreement.

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement:

Dated: _____      By _____
                           Christine E. Webber, Esq.
                           COHEN MILSTEIN SELLERS & TOLL PLLC
                           Attorneys for Plaintiffs


Dated: _____      By _____
                           Gilda A. Hernandez, Esq.
                           LAW OFFICES OF GILDA A. HERNANDEZ, PLLC
                           Attorneys for Plaintiffs



Dated: 2/22/19             By Kelly A Schultz
                           Kelly Schultz
                           Head of HR, Workplace Investing
                           For Defendants


Dated: 2/22/19             By _____
                           Richard G. Rosenblatt, Esq.
                           August W. Heckman III, Esq.

43

# EXHIBIT 1

## Proposed Notice of Settlement

**NOTICE TO CLASS MEMBERS RE: PENDENCY OF A CLASS ACTION**
AND HEARING ON PROPOSED SETTLEMENT

*Reynolds, et al. v. Fidelity Investments Institutional Operations Company et al.*,
U.S. District Court, Middle District of North Carolina, Case No. 1:18-cv-423-CCE-LPA

**IF YOU WORKED AS A CALL CENTER ASSOCIATE SUPPORTING A FIDELITY WORKPLACE SERVICES CALL CENTER, PLEASE READ THIS NOTICE ABOUT YOUR RIGHTS.**

- A court authorized this notice. This is not a solicitation from a lawyer.

- Two former call center associates in Fidelity's Workplace Services call centers have sued Fidelity, claiming that Fidelity did not pay call center associates for pre-shift work and miscalculated overtime wages due.

- The Court has not yet addressed whether Fidelity did anything wrong, and Fidelity denies any wrongdoing. The parties have proposed a settlement of this case, and the Court has authorized notice of that proposed settlement to people who may be eligible to participate in it. Fidelity's records indicate you are entitled to receive notice and, if you return the claim form, would receive a monetary payment under the settlement.

- *Your legal rights are affected whether you act or not.* These options are explained below.

| HERE ARE YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| RETURN A CLAIM FORM, RECEIVE A SETTLEMENT PAYMENT | **To receive a settlement payment,** if the Court approves the settlement, **you must complete the claim form provided with this notice** and return it to the Settlement Administrator. You will also be bound by the release of claims explained below. |
| DO NOTHING, DO NOT RECEIVE A SETTLEMENT PAYMENT | **If you do nothing**, and do not return the claim form, **you will not receive a settlement payment**, but you may still be bound by the release of claims explained below. |
| OPT OUT, DO NOT RECEIVE A SETTLEMENT PAYMENT | **You may ask to be excluded** from the settlement. If you request exclusion, **you will not receive a settlement payment** and will not be bound by the release of claims explained below. |

**YOU MUST RETURN THE ENCLOSED CLAIM FORM BY [DATE] TO RECEIVE A PAYMENT FROM THIS SETTLEMENT.**

**BASIC INFORMATION**

| 1. | **Why Did I Get This Notice? What Is the Lawsuit About?** |
|---|---|

You have received this notice because records indicate that you worked during the relevant time period as a non-exempt call-center associate for Fidelity in a call center supporting Fidelity's Workplace Services business. Specifically, the call centers that are encompassed are Workplace Services Call Centers in: Covington, Kentucky; Durham, North Carolina; Merrimack, New Hampshire; Albuquerque, New Mexico; and Westlake, Texas. Plaintiffs Bailey Reynolds and Helen Martinez have sued Fidelity Investments Institutional Operations Company, Inc., FMR LLC, Fidelity Brokerage Services LLC, Fidelity Workplace Investing LLC, and Veritude

LLC (together, "Fidelity"), on behalf of themselves and other similarly situated call center associates. Plaintiffs claim that Fidelity did not pay call center associates in their Workplace call centers for required pre-shift work (including booting up computers, launching software programs, checking emails, reviewing call schedules and callbacks, and other required tasks), and that Fidelity did not include certain bonuses or reimbursements for student loan payments and fitness expenses in calculating the regular rate and the correct overtime rate. Plaintiffs claim that Fidelity violated the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b); the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.6, 95-25.22(a), (a1), and (d); and the New Mexico Minimum Wage Act, N.M. Stat. Ann. §§ 50-5-2, 50-4-15, 50-4-22(D), 50-4-26(C), (D), (E), and (G).

You have a right to know about a proposed settlement of a class action lawsuit, and your options, before the Court decides whether to approve the settlement. If the Court approves it and after any appeals are resolved, an administrator appointed by the Court will make the payments described here.

The Court in charge of the case is the United States District Court for the Middle District of North Carolina, and the case is known as *Reynolds, et al. v. Fidelity Investments Institutional Operations Company et al.*, Case No. 1:18-cv-423-CCE-LPA. The people who sued are called Plaintiffs, and the companies they sued (together referred to as Fidelity) are called Defendants.

Litigation is risky, and neither side can predict the outcome with certainty. As a result, Plaintiffs Bailey Reynolds and Helen Martinez and their counsel concluded, after careful consideration of the facts and circumstances following the exchange of extensive information and data and participation in a mediation, that the proposed settlement is fair, reasonable, and adequate, and is in the best interests of the opt-in plaintiffs and class members. This settlement avoids the costs and inconvenience associated with each phase of litigation (such as class certification, discovery, dispositive motions, and trial) while providing cash benefits to opt-in plaintiffs and class members.

Fidelity has not admitted to any of the claims in the lawsuit and maintains that is has not engaged in any wrongdoing. Fidelity has chosen to settle this matter and make payments to current and former employees instead of incurring the disruption to its business and further expense of litigation. Fidelity values its reputation as a responsible company and employer and contends that, in compliance with all laws, all call-center associates were paid all wages due.

## WHO IS INCLUDED IN THE NOTICE AND SETTLEMENT

| 2. | Am I Part of the Settlement? |
|----|------------------------------|

You are eligible to participate in the settlement if you were a non-exempt employee of Fidelity Workplace Investing LLC, Fidelity Investments Institutional Operations Company, Inc., FMR LLC, Fidelity Brokerage Services LLC or Veritude LLC who (1) worked at least 40 hours in one full workweek between August 7, 2015 and December 31, 2018, (2) for the Workplace Investing Business Group, (3) primarily interacting telephonically or on-line with customers, and (b) utilizing the Aspect or Genesys phone systems. If you were mailed this notice, Fidelity's records indicate that you meet these conditions.

If you return the enclosed claim form by the deadline, you are part of the FLSA class, and will receive a payment.

If you were a call-center associate for Fidelity in a call center in North Carolina after May 17, 2016, you are part of the North Carolina class. You will still need to return the claim form to receive a payment.

If you were a call-center associate for Fidelity in a call center in New Mexico after May 17, 2016, you are part of the New Mexico class. You will still need to return the claim form to receive a payment.

2

| 3. | Am I Still Eligible If I Am Included in the Settlement in *Adrian Morris v. Fidelity Brokerage Services, LLC, et al.*? |
| --- | --- |

Yes.  If you received notice of a settlement in *Adrian Morris v. Fidelity Brokerage Services, LLC, et al.*, United States District Court, Northern District of California Case No. 3:17-cv-06027-WHA, and are otherwise eligible to participate in this settlement as described in Section 3, you can still submit a claim form in this case.

**THE SETTLEMENT BENEFITS – WHAT YOU GET**

| 4. | What Does the Proposed Settlement Provide? |
| --- | --- |

The total amount of the settlement is $3,000,000. This amount will mostly be allocated to the current and former Workplace call center employees of Fidelity who are eligible for the settlement, but it will also be used to pay for Attorneys' fees and costs awarded by the Court, the Settlement Administrator's costs, and any service awards to Plaintiffs Bailey Reynolds and Helen Martinez or to other Fidelity associates who previously joined this lawsuit ("Opt-in Plaintiffs"), to the extent approved by the Court.

Plaintiffs Bailey Reynolds and Helen Martinez will ask the Court to award them $20,000 and $15,000 respectively, in addition to their regular settlement payment, for their roles as named plaintiffs prosecuting this lawsuit on the behalf of all Class Members and for the broader release they will provide.  In addition, Plaintiffs have requested the Court to permit Fidelity associates who previously submitted a written consent form requesting to join the FLSA collective action in this case to receive a minimum settlement payment of $2,000 in recognition of their support in prosecuting this case.  The Court has not yet ruled on whether it will award these amounts.  The Court may deny these requests or award less than these amounts.  The Court will make a determination on the reasonableness of these requests at a later date.

Your minimum payment is printed on your enclosed claim form.  It was calculated as described in paragraph 9, below.  No class member who returns a claim form will receive less than $25.

A full copy of the settlement agreement and key filings in this case may be reviewed on the following website: www.ReynoldsCallCenterSettlement.com.  You will need to enter the password **[THE PASSWORD HAS BEEN MUTUALLY AGREED UPON BY THE PARTIES]** to access the site.

| 5. | What Am I Giving Up If I Remain in the Settlement? |
| --- | --- |

If you are part of the North Carolina or New Mexico class, and you do not exclude yourself from the settlement by **[MAIL DATE + 75]** using the procedure explained below in Section 11, you will be deemed to have forever released and discharged Fidelity from any claims known or unknown, asserted or unasserted, of any kind whatsoever, that relate to hours worked or the payment of wages, that arose or will arise before the date of the Court's final approval of the settlement, except to the extent that any such claims may not be waived as a matter of law.  If you are part of the FLSA class and you return the claim form, then you will bound by the same release of claims.

This release of claims against Defendants (which includes Fidelity Investments Institutional Operations Company, Inc., FMR LLC, Fidelity Brokerage Services LLC, Fidelity Workplace Investing LLC, and Veritude LLC, their parents, affiliates and subsidiaries, and all of their successors and assigns and all owners, officers, directors, stockholders, managers, agents, employees, and representatives) specifically includes, without limitation:

(i) any and all claims asserted in the Litigation; AND

3

(ii) any and all claims for unpaid wages, minimum wages, overtime, late payment of wages, retaliation for complaining about wages or for asserting wage-related claims and/or any other claims of any kind, or any other wage-related or recordkeeping-related claims, damages or relief of any kind, including but not limited to the federal FLSA, 29 U.S.C. § 201, et seq., any and all claims under North Carolina state law, including but not limited to the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, et seq., and any and all claims under New Mexico state law, including but not limited to the New Mexico Minimum Wage Act ("NMMWA"), N.M. Stat. Ann. § 50-4-1, et seq.; or any other statutes and/or regulations regulating hours of work, wages, the payment of wages, wage-related or recordkeeping-related claims, the payment of minimum wages, and/or the payment of overtime compensation; AND

(iii) any and all claims under state and federal law for earned wages, overtime, and/or missed or interrupted meal breaks, including such claims for breach of express contract or labor agreement, implied contract, money had and received in assumpsit, quantum meruit/unjust enrichment, fraud, negligent misrepresentation, equitable estoppel, promissory estoppel, conversion, and failure to keep accurate records.

This release does not apply to any claim by any Class Member for discrimination in violation of state or federal law (except for Named Plaintiffs), or any claim of any type arising on or after the date the settlement has received final approval from the U.S. District Court for the Middle District of North Carolina.

## THE LAWYERS REPRESENTING YOU

| 6. | Do I Have a Lawyer in the Case? |
|---|---|

Opt-in plaintiffs and class members who do not request exclusion from the settlement are represented in this case by the following attorneys and law firms:

Christine E. Webber, Esq.
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Avenue, Suite 500 West
Washington, DC 20005
(202) 408-4600
www.cohenmilstein.com
cscherman@cohenmilstein.com

Gilda Adriana Hernandez, Esq.
THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC
1020 Southhill Drive, Suite 130
Cary, NC 27513
(919) 741-8693
www.gildahernandezlaw.com
rkreuz@gildahernandezlaw.com

The Court decided that these lawyers and law firms are qualified to represent the settlement class members in this case. These lawyers are called "Class Counsel." You can contact Class Counsel if you have questions about this case. If you want to be represented by your own lawyer, you may hire one at your own expense.

| 7. | How Will the Lawyers Be Paid? |
|---|---|

Class Counsel will ask the Court to approve payment of up to one-third of the gross settlement amount ($1,000,000), to compensate them for their services in this matter. Class Counsel will also ask the Court to approve reimbursement for their costs spent in litigating this case, which are currently estimated to be $30,033.87. Class Counsel will file a motion with the Court setting out the bases for their requested costs and fees. At a later date, the Court will decide whether Class Counsel's request is reasonable. If the Court does not approve the full amount of the fee request, then any unawarded funds will be added to the amount available for distribution to the class/collective.

4

## HOW YOU GET A PAYMENT – SUBMITTING A CLAIM FORM

| **8.** | **How Can I Get a Payment?** |
| --- | --- |

To receive a settlement payment, you must timely complete and sign the enclosed claim form and return it to the settlement administrator by U.S. Mail in the postage pre-paid enveloped included with this notice, by fax ((***) ***-****), or by e-mail ([EMAIL FOR SETTLEMENT ADMINISTRATOR]).

To be considered timely, any completed forms returned to the settlement administrator by U.S. Mail must be postmarked no later than [MAIL DATE + 75]. Any completed forms returned to the settlement administrator by fax or e-mail must be received no later than [MAIL DATE + 75]. You can also complete a claim form electronically on the settlement administrator's website www.ReynoldsCallCenterSettlement.com.

If you lose, misplace, or need another one of these forms, additional copies can be downloaded at the settlement administrator's website www.ReynoldsCallCenterSettlement.com. Alternatively, you can contact the settlement administrator by telephone at (***) ***-**** or [email] to request a new copy.

| **9.** | **How Much Can I Expect to Receive?** |
| --- | --- |

Your individual payment amount is printed on the enclosed claim form. Your payment depends on (1) the number of weeks you worked during the Class Period, as well as the number of overtime hours you worked during each week; (2) whether you received a relevant bonus and how many bonuses you received during the Class Period, as well as the number of overtime hours you worked during the period applicable to the bonus payment; (3) whether you participated in the student loan reimbursement program, as well as the number of student loan repayments you received and whether you worked overtime in any of the months in which you received a student loan repayment; and (4) whether you received a fitness reimbursement payment, and whether you worked overtime in any of the pay periods in which you received the fitness reimbursement. No class/collective member who timely submits a proper claim form will receive less than $25.

Your estimated payment was calculated using the formulas set forth in the settlement agreement and assuming that the Court approves and awards the other amounts requested to be paid from the Gross Settlement Amount, which were discussed in Section 6. If the Court does not approve the full amount of these other payments, your award payment may increase.

Each final settlement payment will be separated into two amounts: 75% will be allocated to the claims asserted in the lawsuit for wage-related damages, and 25% will be allocated to the claims asserted in the lawsuit for liquidated damages and other relief. The portion allocated to claims asserted in this lawsuit for unpaid overtime and other wage-related damages will be subject to all authorized or required deductions, just as if it were a regular paycheck, including, but not limited to: local, state and federal taxes, garnishments, child support orders, and tax levies/liens. The portion allocated to wage claims will be reported on an I.R.S. Form W-2. The portion allocated to liquidated damages and other relief will be reported as non-wage income and reported on an I.R.S. Form 1099. Additionally, the portion of the total settlement fund that is approved by the Court to pay attorneys' fees and litigation expenses is considered to be payments made on behalf of the class members. Therefore, your pro rata portion of that amount will be reported as income to you on an I.R.S. Form 1099. You should consult a tax professional about tax treatment of these payments, and the availability of a tax deduction for your pro-rated amount of attorneys' fees paid.

| **10.** | **When Would I Get My Payment?** |
| --- | --- |

If you are eligible to participate in the settlement and timely provide the form described in Section 10 above, you will be sent a settlement check approximately 45 days after the effective date of the settlement. Before the

settlement is effective, however, settlement class members must be given time to object to the settlement or opt-out, the Court must hold a hearing to consider the fairness of the settlement and grant final approval of the settlement, and any appeals of the court's order granting final approval must be resolved. Please be patient.

Please watch your mail for a check and cash it when you get it. **You will have 180 days from issuance of the check to cash it. The check will be void after 180 days**. The settlement agreement provides that any amounts from voided, uncashed checks will then be given to charities that protects workers' rights, the National Employment Law Project and Legal Aid of North Carolina.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

---
**11.     How Do I Get Out of the Settlement if I am part of the North Carolina or New Mexico class?**
---

If you are not part of the North Carolina or New Mexico class, and you do not return a claim form, then you will not be part of the settlement or bound by its terms. If you are part of the North Carolina or New Mexico class, and you do not wish to be part of this settlement, you may elect to "opt out" by excluding yourself from this action and the associated settlement and judgment. North Carolina and New Mexico Class Members who opt out of this action, and FLSA class members who do not return a claim form, would remain free, subject to the statute of limitations, to bring claims against Fidelity that are covered by this settlement and release, against which Fidelity would assert defenses and litigate. If you decide to opt out, you will not be allowed to object to this settlement. The deadline to opt out is **[MAIL DATE + 75].**

This deadline is final, and forms not postmarked before the pertinent deadline will not be honored. IF YOU OPT OUT OF THE SETTLEMENT, YOU WILL NOT RECEIVE A PAYMENT.

To opt out, you must submit a written statement to the settlement administrator expressly stating that you wish to be excluded from the settlement. Such requests for exclusion should state at the top of the letter "Request for Exclusion from Settlement in *Reynolds, et al. v. Fidelity Investments Institutional Operations Company et al.*, Case No. 1:18-cv-423-CCE-LPA." Also be sure to include your name, address, telephone number, and signature. All written requests for exclusion must be sent by First-Class U.S. Mail, postmarked no later than **[MAIL DATE + 75]** to:

*Reynolds, et al. v. Fidelity Investments Institutional Operations Company et al*. Settlement Administrator
c/o [Name of Settlement Administrator]
*********
**********, ** *****-****

You cannot exclude yourself by phone or by e-mail. Requests for exclusion that do not include all required information, or that are not timely postmarked, will be deemed null, void, and ineffective.

---
**12.     If I Do Not Exclude Myself, Can I Sue This Defendant for the Same Thing Later?**
---

If you are a North Carolina or New Mexico class member, unless you exclude yourself, you give up any right to sue defendants for the claims that this settlement resolves, which are set forth in Section 7 above. If you have a pending lawsuit asserting the claims resolved by this settlement, speak to your lawyer in the pending lawsuit immediately. You must exclude yourself from this settlement to continue your own lawsuit against Fidelity regarding the claims resolved by this settlement. If you are not a member of the North Carolina or New Mexico classes, and you do not submit a claim form confirming your participation in the FLSA class, then you retain the right to sue defendant for the claims covered by this settlement, subject to the statute of limitations and any other defenses Fidelity has asserted in this litigation or otherwise.

| **13.** | **If I Exclude Myself From the Settlement, Can I Get Money From This Settlement?** |
|---|---|

No.

## OBJECTING TO THE SETTLEMENT

| **14.** | **How Do I Object or Tell the Court That I Don't Like the Settlement?** |
|---|---|

You can ask the Court to deny approval of the settlement by filing an objection with the Court. You cannot ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.

To object, you must send a letter to the Court, Class Counsel, and counsel for Fidelity giving the reasons why you object to the proposed settlement. The top of your letter should be labeled with the name and case number of this lawsuit ("*Reynolds, et al. v. Fidelity Investments Institutional Operations Company et al.*, Case No. 1:18-cv-423-CCE-LPA ") and must include: (i) your full name, address, telephone number, the approximate dates of your employment with Fidelity, and the Fidelity call center(s) where you worked; and (ii) each specific reason for your objection, including any legal or evidentiary support you have for your objection.

You must mail copies of the objection to the Court, Class Counsel, and counsel for Fidelity (addresses below), postmarked no later than **[MAIL DATE + 75]**:

| THE COURT | CLASS COUNSEL | COUNSEL FOR FIDELITY |
|---|---|---|
| Clerk of Court | Christine E. Webber, Esq. | August W. Heckman, Esq. |
| U.S. District Court for the | COHEN MILSTEIN | MORGAN LEWIS & |
| Middle District of North Carolina | SELLERS & TOLL PLLC | BOCKIUS, LLP |
| 324 W. Market Street | 1100 New York Avenue, | 502 Carnegie Center |
| Greensboro, NC 27401-2544 | N.W., Suite 500 | Princeton, NJ 08540 |
| | Washington, DC 20005 | |

If you file a timely written objection, you may (but are not required to) appear at the Fairness Hearing, described in Section 19, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney.

| **15.** | **What Happens if the Court Rejects my Objection?** |
|---|---|

The Court will consider any objections that are timely filed. This does not mean, however, that the Court will necessarily take action based on any objection. If the Court rejects your objection, you will still be bound by the terms of the settlement and the release of claims explained in Section 7 above.

Moreover, if you intend to object to the settlement, but still wish to receive a settlement payment, you must timely file the required claim form described in Section 9 above. If the Court approves the settlement despite your objections, and you have not timely filed the required form necessary to receive a settlement payment, you will not receive a settlement payment.

| **16.** | **What's the Difference Between Objecting and Excluding?** |
|---|---|

Objecting is telling the Court you do not like something about the settlement. You can object only if you stay in the settlement. If you exclude yourself from this lawsuit, you are telling the Court you do not want to be part of

the lawsuit or settlement. If you request to be excluded from the lawsuit, you have no basis to object to the settlement, because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

| **17.** | **When and Where Will the Court Decide Whether to Approve the Settlement?** |
|---|---|

The Court preliminarily approved this settlement on [insert preliminary approval date]. The Court will hold a final hearing (sometimes called a fairness hearing) on this settlement on [final approval hearing date and time]. This hearing will take place in Courtroom [NUMBER] on the [NUMBER] floor of the U.S. District Court for the Middle District of North Carolina, located at 324 W. Market Street, Greensboro, NC 27401-2544, Judge Catherine Eagles presiding. After the hearing, the Court will decide whether to approve the settlement. We do not know how long the decision will take.

| **18.** | **Do I Have to Come to the Hearing?** |
|---|---|

No. Attendance at this hearing is completely optional. It is not required to participate in the settlement or opt out of the lawsuit.

| **19.** | **May I Speak at the Hearing?** |
|---|---|

You may ask the Court for permission to speak at the fairness hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear at Hearing on Final Approval of Class Settlement in *Reynolds, et al. v. Fidelity Investments Institutional Operations Company et al.*, Case No. 1:18-cv-423-CCE-LPA." Be sure to include your full name, address, telephone number, and signature. Your notice of intention to appear must be postmarked no later than [MAIL + 75], and be sent to the Clerk of Court, and to Class Counsel and Counsel for Fidelity at the addresses list above in Section 17. You cannot speak at the hearing if you have opted out of the lawsuit.

## IF YOU DO NOTHING

| **20.** | **What Happens If I Do Nothing at All?** |
|---|---|

You have the right to do nothing. If you do nothing, however, you will not receive any money from this proposed settlement. In addition, if you are in the North Carolina or New Mexico classes, unless you timely return a written request for exclusion, you will be bound by the Court's orders in this lawsuit and the release of claims explained in Section 7 above. You will not be able to start a legal action, continue with a legal action, or be part of any other legal action against Fidelity regarding the claims resolved by this settlement.

## NO RETALIATION OR DISCRIMINATION

| **21.** | **If I Am a Current Employee, Will I Experience Any Retaliation or Discrimination?** |
|---|---|

No. It is against the law to retaliate or discriminate against an employee who decides to participate in this settlement agreement. Fidelity will not discriminate or retaliate against you in any way because of your decision to participate or not in the lawsuit or this settlement.

## GETTING MORE INFORMATION

**22.** **Are There More Details About the Settlement?**

This notice summarizes the basic terms of the proposed settlement. Further information is available from the settlement administrator and/or Class Counsel.

More details of the settlement are also contained in the stipulation of settlement and the pleadings and other documents relating to the lawsuit that are on file with the U.S. District Court for the Middle District of North Carolina. Copies of the complete stipulation of settlement and select other filings in the lawsuit are available at www.ReynoldsCallCenterSettlement.com, using password **[THE PASSWORD HAS BEEN MUTUALLY AGREED UPON BY THE PARTIES]**

**23.** **How Do I Get More Information?**

You can call **(***) ***-****** toll free; write to *Reynolds, et al. v. Fidelity Investments Institutional Operations Company, et al.* Settlement Administrator, c/o [NAME OF SETTLEMENT ADMINISTRATOR] **\*\*\*\*\*\*\*\*\*, \*\*\*\*\*\*\*\*\*\*, \*\* \*\*\*\*\*-\*\*\*\*** or visit the website at www.ReynoldsCallCenterSettlement.com, password **[THE PASSWORD HAS BEEN MUTUALLY AGREED UPON BY THE PARTIES]** where you will find answers to common questions about the proposed settlement and other information. In addition, see Section 6 for further contact information.

**PLEASE DO NOT CALL THE COURT, THE CLERK, OR FIDELITY OR ITS COUNSEL ABOUT THIS SETTLEMENT**.

If, for any future reference or mailings, you wish to change the name or address listed on the envelope in which this Notice was sent, please inform the settlement administrator of your new address. You can do so by calling **(***) ***-****** or by sending a letter to:

*Reynolds, et al. v. Fidelity Investments Institutional Operations Company et al*. Settlement Administrator
c/o [Name of Settlement Administrator]
**\*\*\*\*\*\*\*\*\***
**\*\*\*\*\*\*\*\*\*\*, \*\* \*\*\*\*\*-\*\*\*\***

# EXHIBIT
# 2
## Proposed Claim Form

*Reynolds v. Fidelity Investments Institutional Operations Company, et. al.*
Settlement Administrator
c/o [Name of Settlement Administrator]
*****************
***********, ** *****-****

Estimated Award (before taxes):_$_____

*Reynolds v. Fidelity Investments Institutional Operations Company et al*
Case No. 1:18-cv- CV-00423-CCE-LPA

United States Court for the Middle District of North Carolina

[Class Member Name]
[Mailing Address 1]
[Mailing Address 2]
[City, State ZIP]

## CLAIM FORM AND CONSENT TO JOIN

In order to receive a payment under the Settlement Agreement, please complete and timely submit this Claim Form to the Settlement Administrator. To be considered timely, these forms must be postmarked by no later than [**MAIL DATE + 75**] if returned by U.S. Mail or received by [**MAIL DATE + 75**] if returned by fax or e-mail. **SEND COMPLETED CLAIM FORMS BY {DATE} TO:**

*Reynolds v. Fidelity, et al. Settlement Administrator* c/o
**Claims Administration**
*********
**********, ** *****-****
Fax: (***) ***-**** E-mail: [**EMAIL FOR SETTLEMENT ADMINISTRATOR**]

I, hereby opt into this settlement pursuant to Section 216(b) of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), authorize Class Counsel to represent me in this Settlement, and agree to waive and release any and all claims under the federal Fair Labor Standards Act ("FLSA"), North Carolina Wage and Hour Act ("NCWHA"), New Mexico Minimum Wage Act ("NMMWA"), and any other wage-related claims, laws, and regulations, from the start of my employment with Fidelity Investments Institutional Operations Company ("FIIOC"), Fidelity Brokerage Services ("FBS"), Fidelity Workplace Solutions ("FWS"),FMR LLC, and/or Veritude, LLC (collectively "Fidelity") through the Effective Date of the settlement, including, but not limited to, claims for back pay, liquidated damages, penalties, interest, and attorneys' fees, costs, and expenses. Further:

- I wish to participate in the parties' proposed settlement if approved by the Court.
- I understand that if the settlement is approved by the Court, I will receive a check totaling approximately $_____ before taxes.
- I understand that I must keep the Settlement Administrator informed of any change in my address. If I do not do so, I understand that I may not receive any settlement payment that I might otherwise be entitled to receive.

_____       _____
Signature                                                    Date

**Use back of form for address updates**
**In order to receive a settlement payment, you must submit a signed claim form by {date}**

*Reynolds v. Fidelity Investments Institutional*
*Operations Company, et. al.*
*Settlement Administrator*
c/o [Name of Settlement Administrator]
*******************
***********, ** *****-****

*Reynolds v. Fidelity Investments Institutional*
*Operations Company et al*
Case No. 1:18-cv- CV-00423-CCE-LPA

United States Court for the Middle District of North
Carolina

Name and Address Updates:

*If your name or address is different from what is printed above, please provide updated information below:*

First Name                          MI              Last Name

Mailing Address                                     Apt/Unit

City                                State           Zip Code

**Submit signed claim form and any address updates to:**

*Reynolds v. Fidelity, et al. Settlement Administrator* c/o
**Claims Administration**
*********
***********, ** *****-****
Fax: (***) ***-****  E-mail: [**EMAIL FOR SETTLEMENT ADMINISTRATOR**]

# EXHIBIT 3

## Proposed Reminder Notice

## IMPORTANT REMINDER REGARDING PROPOSED FIDELITY CALL CENTER CLASS AND COLLECTIVE ACTION WAGE PAYMENT SETTLEMENT

Within the past forty-five (45) days, you were mailed a Court-authorized Notice explaining that you are eligible to participate in a class and collective action settlement of claims on behalf of certain call-center associates who worked for Fidelity for unpaid wages and overtime.

**IMPORTANT:  Our records indicate that you have not submitted a Claim Form.  In order to participate in the class and collective action settlement and be eligible to collect compensation, you must complete the Claim Form sent to you with the Court-Authorized Notice and mail, e-mail, or fax it to:**

*Reynolds v. Fidelity*, Settlement Administrator
c/o RG2 Claims Administration LLC
**[INSERT ADDRESS]**
**phone: [INSERT PHONE]**
**fax: [INSERT FAX]**
**[INSERT EMAIL]**

If you have any questions about the notice or the case, or if you did not receive or no longer have the Notice, you can obtain a copy of the Notice, Claim Form, and answers to frequently asked questions at www.ReynoldsCallCenterSettlement.com password:  **[**THE PASSWORD HAS BEEN MUTUALLY AGREED UPON BY THE PARTIES**]**, or by contacting the Settlement Administrator using the number or email above. You may also contact Class Counsel by calling **[TO BE INSERTED]** or emailing **[TO BE INSERTED]**.

**In order to participate in this settlement, your Claim Form must be post-marked no later than [INSERT DUE DATE] if returned by U.S. Mail, or received by [INSERT DUE DATE] if returned by fax or e-mail.**