IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BAILEY REYNOLDS and HELEN MARTINEZ on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| *Plaintiffs,* | ) ) | No. 1:18-cv-00423-CCE-LPA |
| v. | ) ) | |
| FIDELITY INVESTMENTS INSTITUTIONAL OPERATIONS COMPANY, INC., FMR LLC, FIDELITY BROKERAGE SERVICES LLC, FIDELITY WORKPLACE INVESTING LLC, and VERITUDE LLC, | ) ) ) ) ) ) ) | |
| *Defendants.* | ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES**

# TABLE OF CONTENTS

I.      INTRODUCTION .......................................................................................1

II.     Class Counsel Are Entitled to a Reasonable Fee of One-Third of the
        Settlement Fund. ..................................................................................2

III.    The Percentage Method is Preferred for Awarding Attorneys' Fees in
        Common Fund Cases in the Fourth Circuit. ........................................3

IV.     The *Barber* Factors Support an Award of One-Third of the Fund. ..........7

        A.      Class Counsels' Time and Labor Expended (*Barber* Factor 1). ...................8

                1.      Initial Investigation of Named Plaintiff/Class Representatives
                        and Initial Briefing .............................................................8

                2.      Substantial Briefing on Plaintiffs' Motion for Conditional
                        Certification and Class Certification ................................10

                3.      The Parties' Settlement Negotiations ...............................10

        B.      The Novelty and Difficulty of the Questions Raised (*Barber* Factor
                2). .................................................................................................13

        C.      The Skill Required to Properly Perform the Legal Services Rendered
                (*Barber* Factor 3). .......................................................................15

        D.      Class Counsels' Opportunity Costs in Pursuing the Litigation *(Barber*
                Factor 4)*. ...................................................................................16

        E.      The Customary Fee for Like Work (*Barber* Factor 5). ...............17

        F.      Class Counsel's Expectations at the Outset of Litigation (*Barber*
                Factor 6). ....................................................................................19

        G.      The Time Limitations Imposed by the Client or Circumstances
                (*Barber* Factor 7). .......................................................................20

        H.      The Amount in Controversy and the Results Obtained (*Barber* Factor
                8). ...............................................................................................20

        I.      The Experience, Reputation, and Ability of the Attorneys (*Barber*
                Factor 9). ....................................................................................21

        J.      The Undesirability of the Case Within the Legal Community in

i

Which the Suit Arose (*Barber* Factor 10)......................................................22

K.     The Nature and Length of the Professional Relationship Between
       Attorney and Client (*Barber* Factor 11). .........................................23

L.     Attorneys' Fees Awards in Similar Cases (*Barber* Factor 12). ...................23

V.     Public Policy Considerations. ...................................................................25

VI.    The Lodestar Cross Check Further Supports an Award to Plaintiffs' Counsel
       of One-Third of the Settlement Fund.......................................................26

VII.   Plaintiffs' Counsel Are Entitled to Reimbursement of Litigation Costs Under
       the Settlement Agreement. .....................................................................27

VIII.  CONCLUSION ......................................................................................28

# TABLE OF AUTHORITIES

**Cases**

*A.H. Phillips, Inc. v. Walling*
324 U.S. 490 (1945) ...................................................................... 25

*Anselmo v. W. Paces Hotel Grp., LLC*
2012 U.S. Dist. LEXIS 164618 (D.S.C. Nov. 19, 2012) ................................. 26

*Archbold v. Wels Fargo Bank, N.A.*
2015 U.S. Dist. LEXIS 92855 (S.D. W. Va. July 13, 2015) ........................... 24

*Arvinger v. Mayor and City Council of Baltimore*
31 F.3d 196 (4th Cir. 1994) ........................................................... 21

*Barber v. Kimbrell's*
577 F.2d 216 (4th Cir. 1978) .................................................... passim

*Barrentine v. Ark.-Best Freight Sys.*
450 U.S. 728 (1981) ................................................................... 13

*Beaulieu v. EQ Indus. Servs.*
No. 5:06-CV-400-BR (E.D.N.C. Dec. 23, 2009) ......................................... 25

*Berry v. Schulman*
807 F.3d 600 (4th Cir. 2015) .................................................... 3, 7, 26

*Boeing Co. v. Van Gemert*
444 U.S. 472 (1980) .................................................................... 3

*Braun v. Culp, Inc.*
1985 U.S. Dist. LEXIS 20373 (M.D.N.C. Apr. 26, 1985) ........................... 21, 28

*Bunn v. Bowen*
637 F. Supp. 464 (E.D.N.C. 1986) ..................................................... 23

*Decohen v. Abbasi, LLC*
299 F.R.D. 469 (D. Md. 2014) ......................................................... 24

*Deloach v. Philip Morris Cos.*
2003 U.S. Dist. LEXIS 23240 (M.D.N.C. Dec. 19, 2003) ........................... 6, 27

*ECOS, Inc. v. Brinegar*
671 F. Supp. 381 (M.D.N.C. 1987) ................................................. 12, 27

*Faile v. Lancaster Cty.*

iii

2012 U.S. Dist. LEXIS 189610 (D.S.C. Mar. 8, 2012) ............................................. 13, 24

*Fangman v. Genuine Title, LLC*
2016 U.S. Dist. LEXIS 160434 (D. Md. Nov. 18, 2016).............................................. 5, 26

*Farrar v. Hobby*
506 U.S. 103 (1992) ............................................................................................... 20

*Faulkenbury v. Teachers' and State Employees' Ret. Sys.*
345 N.C. 683 (1997)................................................................................................. 3

*Flinn v. FMC Corp.*
528 F.2d 1169 (4th Cir. 1975).................................................................................. 3

*Gilbert LLP v. Tire Eng'g & Distrib., LLC,*
2017 U.S. App. LEXIS 8530 (4th Cir. May 15, 2017) .................................................. 16

*Goldberger v. Integrated Res. Inc.*
209 F.3d 43 (2d Cir. 2000) ....................................................................................... 5

*Goodman v. Phillip R. Curtis Enters., Inc.*
809 F.2d 228 (4th Cir. 1987)................................................................................... 16

*Hackett v. ADF Rest. Invs.*
2016 U.S. Dist. LEXIS 174775 (D. Md. Dec. 16, 2016) ............................................. 24

*Hall v. Higher One Machs., Inc.*
2016 U.S. Dist. LEXIS 131009 (E.D.N.C. Sep. 26, 2016) ......................................... 5, 26

*Hatzey v. Divurgent, LLC,*
2018 U.S. Dist. LEXIS 187007, at *15-16 (E.D. Va. Oct. 9, 2018) .............................. 26

*Helmick v. Columbia Gas Transmission*
2010 U.S. Dist. LEXIS 65808 (S.D. W. Va. July 1, 2010)........................................... 24

*Hess v. Sprint Communs. Co. L.P.*
2012 U.S. Dist. LEXIS 168963 (N.D.W. Va. Nov. 26, 2012)....................................... 4, 6

*Hoffman v. First Student, Inc.*
2010 U.S. Dist. LEXIS 27329 (D. Md. Mar. 23, 2010) ............................................... 25

*Hyatt v. Heckler*
586 F. Supp. 1154 (W.D.N.C. 1984)........................................................................ 20

*In re Dollar Gen. Stores FLSA Litig.*
2011 U.S. Dist. LEXIS 98162 (E.D.N.C. Aug. 22, 2011) ............................................ 26

iv

*In re Gentiva Health Services Inc.*
 No: 1:14-cv-01892-WBH (N.D. Ga. June 22, 2017) ...................................................... 19

*In re Microstrategy, Inc.*
 172 F. Supp. 2d 778 (E.D. Va. 2001) ............................................................................. 3, 5

*In re Montgomery Cty. Real Estate Antitrust Litig.*
 83 F.R.D. 305 (D. Md. 1979) ......................................................................................... 12, 27

*In re Red Hat, Inc. Sec. Litig.*
 2010 U.S. Dist. LEXIS 131249 (E.D.N.C. Dec. 10, 2010) .............................................. 24

*In re Steel Network, Inc.*
 2011 Bankr. LEXIS 3418 (U.S. Bankr. M.D.N.C. June 27, 2011) .................................. 20

*In re Wachovia Corp. ERISA Litig.*
 2011 U.S. Dist. LEXIS 123109 (W.D.N.C. Oct. 24, 2011) ............................... 4, 5, 25, 28

*Jackson v. Estelle's Place, LLC*
 391 F. App'x 239 (4th Cir. 2010) .................................................................................... 25

*Johannssen v. Dist. No. 1 - Pac. Coast Dist., MEBA Pension Plan*
 2001 U.S. Dist. LEXIS 10556 (D. Md. July 10, 2001) .................................................... 17

*Jones v. Dominion Res. Servs.*
 601 F. Supp. 2d 756 (S.D. W. Va. 2009) ........................................................ 4, 5, 25, 26

*Kirven v. Cent. States Health & Life Co.*
 2015 U.S. Dist. LEXIS 36393 (D.S.C. Mar. 23, 2015) ................................................... 24

*Land v. Sprint Communs. Co. L.P.*
 2013 U.S. Dist. LEXIS 196641 (D.S.C. Aug. 6, 2013) .................................................... 6

*LandAmerica 1031 Exch. Servs. v. Chandler*
 2012 U.S. Dist. LEXIS 159630 (D.S.C. Nov. 7, 2012) ................................................... 21

*Latham v. Branch Banking & Tr. Co.*
 2014 U.S. Dist. LEXIS 16490 (M.D.N.C. Jan. 14, 2014) ............................................... 3

*Lewis v. J.P. Stevens & Co.*
 1988 U.S. App. LEXIS 19610 (4th Cir. June 9, 1988) ............................................ 16, 22

*Lilly v. Harris-Teeter Supermarket*
 842 F.2d 1496 (4th Cir. 1988) ....................................................................................... 20

*Mackey v. Stetson*

1981 U.S. Dist. LEXIS 16768 (W.D.N.C. Sep. 21, 1981) ........................................ 21, 22

*Manuel v. Wells Fargo Bank, N.A.*
2016 U.S. Dist. LEXIS 33708 (E.D. Va. Mar. 15, 2016) .................................... 7

*Masters v. Wilhelmina Model Agency, Inc.*
473 F.3d 423 (2d Cir. 2007) ........................................................................ 6

*McAfee v. Boczar*
738 F.3d 81 (4th Cir. 2013) ......................................................................... 23

*McClaran v. Carolina Ale House Operating Co.*, LLC
2015 U.S. Dist. LEXIS 112985 (D.S.C. Aug. 26, 2015) ................................ 24

*McDaniels v. Westlake Servs., LLC*
2014 U.S. Dist. LEXIS 16081 (D. Md. Feb. 7, 2014) .................................... 24

*McLaurin v. Prestage Foods*
2012 U.S. Dist. LEXIS 13086 (E.D.N.C. Feb. 3, 2012) ........................... 19, 24

*Morris v. Cumberland Cty. Hosp. Sys.*
2013 U.S. Dist. LEXIS 165063 (E.D.N.C. Nov. 13, 2013) .............................. 7

*Nieman v. Duke Energy Corp.*
2015 U.S. Dist. LEXIS 148260 (W.D.N.C. Nov. 2, 2015) ............................. 26

*Parker v. Jekyll and Hyde Entm't Holdings, L.L.C.*
2010 U.S. Dist. LEXIS 12762 (S.D.N.Y. Feb. 9, 2010) ................................ 26

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*
483 U.S. 711 (1987) ............................................................................... 19, 22

*Phillips v. Triad Guar., Inc.*
2016 U.S. Dist. LEXIS 60950 (M.D.N.C. May 9, 2016) ........................ passim

*Plyer v. Evantt*
902 F.2d 273 (4th Cir. 1990) ..................................................................... 17

*Price v. City of Fayetteville*
2015 U.S. Dist. LEXIS 32577 (E.D.N.C. Mar. 17, 2015) ........................ 22, 23

*Randle v. H&P Capital, Inc.*
513 F. App'x 282 (4th Cir. 2013) ............................................................... 20

*Rehberg v. Flowers Baking Co. of Jamestown, LLC*
No. 3:12-cv-00596 (W.D.N.C. June 30, 2017) ............................................. 18

vi

*Reyes v. Altamarea Grp.*
  2011 U.S. Dist. LEXIS 115984 (S.D.N.Y. Aug. 16, 2011) ...................................... 12, 27

*Robinson v. Harrison Transp. Servs., Inc.*
  2016 U.S. Dist. LEXIS 86294 (E.D.N.C. June 30, 2016) ..................................................... 7

*Rum Creek Coal Sales, Inc. v. Caperton*
  31 F.3d 169 (4th Cir. 1994) ............................................................................... 13, 17

*Salinas v. Commercial Interiors, Inc.*
  848 F.3d 125 (4th Cir. 2017) ...................................................................................... 25

*Savani v. URS Prof'l Sols. LLC*
  121 F. Supp. 3d 564 (D.S.C. 2015) ............................................................................... 5

*Singleton v. Domino's Pizza, LLC*
  976 F. Supp. 2d 665 (D. Md. 2013) ............................................................................. 27

*Smith v. Krispy Kreme Doughnut Corp.*
  2007 U.S. Dist. LEXIS 2392 (M.D.N.C. Jan. 10, 2007) ..................................... 5, 25, 28

*Stocks v. Bowen*
  717 F. Supp. 397 (E.D.N.C. 1989) ............................................................................... 13

*Strang v. JHM Mortg. Sec. Ltd. P'ship*
  890 F. Supp. 499 (E.D. Va. 1995) ................................................................................. 5

*Tenn. C. v. Muscoda*
  321 U.S. 590 (1944) ...................................................................................................... 25

*Thomas v. FTS USA, LLC*
  2017 U.S. Dist. LEXIS 45217 (E.D. Va. Jan. 9, 2017) .................................................. 24

*Tomkins v. Amedisys*
  No. 3:12-cv-1082 (D. Conn. 2016) .............................................................................. 19

*Va. Acad. of Clinical Psychologists v. Blue Shield of Va.*
  543 F. Supp. 126 (E.D. Va. 1982) .......................................................................... 19, 20

**Other Authorities**

Federal Judicial Center, Manual for Complex Litigation (Fourth) ........................................ 4

John P. Dawson, Lawyers and Involuntary Clients in Public Interest Litigation, 88 Harv. L.
  Rev. 849 (1975) ............................................................................................................... 6

vii

Newberg on Class Actions § 15:73 (5th ed.) ...................................................... 25

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. of Empirical Legal Studies, 27 (2004) ......................................... 25

## I.    __INTRODUCTION__

In connection with Plaintiffs' Unopposed Motion for Preliminary Approval of Class and Collective Action Settlement; Approval of Settlement Administrator; and Approval of Plaintiffs' Notice of Settlement ("Motion for Preliminary Approval"), filed simultaneously with this motion,[1] and consistent with the terms of the Parties' Stipulation and Settlement Agreement ("Settlement Agreement"), Plaintiff and Class Counsel, The Law Offices of Gilda A. Hernandez, PLLC ("GAH"), and Cohen Milstein Sellers & Toll PLLC ("CMST") (collectively, "Class Counsel"), respectfully move this Court for an award of attorneys' fees in the amount of $1,000,000, one-third of the Gross Settlement Amount (the "Fund"), and reimbursement of the litigation costs of approximately $30,033.87 incurred in prosecuting this action, should the Court grant final approval to the parties' proposed settlement.

Over the past year and a half, Class Counsel have spent over 1380 attorney, paralegal, and support staff hours prosecuting this case.[2] *See* Decl. of Gilda A. Hernandez in Support of Plaintiffs' Unopposed Motions for Preliminary Approval of Class and Collective Action Settlement; Approval of Settlement Administrator; Approval of Plaintiffs' Notice of Settlement; Approval of Attorneys' Fees and Reimbursement of Expenses, and Approval of

---

[1] For a detailed account of the factual and procedural background of this case, Plaintiffs' Counsel refer the Court to the Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval, and the Hernandez Decl. ¶¶ 12-21.

[2] Pursuant to the parties' Stipulation and Settlement Agreement, Defendants have agreed not to oppose Plaintiffs' requests for an award of attorneys' fees not to exceed one-third of the Gross Settlement Amount provided for in that agreement (*i.e.*, $1,000,000), and for an award of litigation costs and expenses, incurred by Plaintiffs' Counsel in connection with the litigation, approximately $30,033.87.

1

Service Awards ("Hernandez Decl.") ¶¶ 37-48; Decl. of Christine Webber in Support of Plaintiffs' Unopposed Motions for Approval of Attorneys' Fees and Reimbursement of Expenses ("Webber Decl.") ¶ 17. Class Counsel have also incurred at least approximately $30,033.87 in litigation costs throughout the course of litigation, which were incidental and necessary to the prosecution of this lawsuit. *See* Hernandez Decl. ¶ 43; Webber Decl. ¶ 22.

Class Counsel's efforts to date have been without compensation, and their entitlement to payment has been wholly contingent upon procuring an award for their clients and the proposed settlement classes. *See* Hernandez Decl. ¶ 42. Class Counsel have also advanced all expenses associated with the litigation and settlement efforts. For the reasons set forth below, Class Counsel respectfully submit that the attorneys' fees and expense reimbursement they seek are fair and reasonable and should be awarded following final approval of the proposed settlement, in light of the contingency risk undertaken and the result achieved in this case. *See id.* ¶¶ 37-43.

## II.     **Class Counsel Are Entitled to a Reasonable Fee.**

Pursuant to the proposed Settlement Agreement, Class Counsel are entitled to attorneys' fees to compensate them for their work in recovering unpaid overtime wages on behalf of the class. *See* Dkt. 53-1 (Settlement Agreement), § IV(C). For purposes of Plaintiffs' request for an award of fees, Plaintiffs are treated as a prevailing party. Agreement § V(D) The agreement, for which Plaintiffs simultaneously seek preliminary approval by the Court, permits Plaintiffs' Attorneys to seek an award of up to one third of the Fund, plus reimbursement of expenses. *See id.* The proposed Notice of Settlement informs the class of the fees that will be sought. *See* Dkt. 53-1, Ex. 1 (Settlement Notice).

2

A prevailing party in an FLSA action is entitled to an award of a reasonable fee. *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984). If no objections are made to the fee request, that indicates the award is reasonable. *See Berry v. Schulman*, 807 F.3d 600, 618-19 (4th Cir. 2015) (few objections support finding fee request reasonable) (citing *Flinn v. FMC Corp.*, 528 F.2d 1169, 1174 (4th Cir. 1975)). Class Counsel believe their request for one-third of the Fund, plus expenses, is reasonable and well within the range approved by courts in similar cases, for the reasons set forth below.

### III. The Percentage Method is Preferred for Awarding Attorneys' Fees in Common Fund Cases in the Fourth Circuit.

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citations omitted). "The common fund doctrine is grounded in the belief that to deny attorneys a recovery of their fees from the funds they helped create would unjustly enrich the class members at the expense of their attorneys and representatives." *In re Microstrategy, Inc.*, 172 F. Supp. 2d 778, 784 n.16 (E.D. Va. 2001) (citing *Boeing*, 444 U.S. at 478. Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts. *Latham v. Branch Banking & Tr. Co.*, 2014 U.S. Dist. LEXIS 16490, at *7 (M.D.N.C. Jan. 14, 2014) ( "[f]ee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal

3

counsel," and awarding $450,000 in attorney's fees, from a total settlement of $1,800,000, although the lodestar amount was only $246,485).

Although the lodestar method and the percentage of the fund method are both available, —the trend in this Circuit is to use the percentage of the fund method in common fund cases like this one. *See Phillips v. Triad Guar., Inc.*, 2016 U.S. Dist. LEXIS 60950, at *5 (M.D.N.C. May 9, 2016); *Jones v. Dominion Res. Servs.*, 601 F. Supp. 2d 756, 758 (S.D. W. Va. 2009); *see also Hess v. Sprint Communs. Co. L.P.*, 2012 U.S. Dist. LEXIS 168963, at *6 (N.D.W. Va. Nov. 26, 2012) (collecting cases within the Fourth Circuit using the percentage method); *Federal Judicial Center, Manual for Complex Litigation* (Fourth) § 14.121 at 187 ("After a period of experimentation with the lodestar method . . . the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common-fund cases.").

There are several reasons that courts prefer the percentage method. First, the percentage method "better aligns the interests of class counsel and class members because it ties the attorneys' award to the overall result achieved rather than the hours expended by the attorneys." *Jones*, 601 F. Supp. 2d at 759; *see also Phillips*, 2016 U.S. Dist. 60950, at *6 (stating that the percentage method is preferred because it "closely associates the attorneys' fees with the overall result achieved."); *Hess*, 2012 U.S. Dist. LEXIS 168963, at *7; *In re Wachovia Corp. ERISA Litig.*, 2011 U.S. Dist. LEXIS 123109, at *16 (W.D.N.C. Oct. 24, 2011) .

Second, the percentage of the fund method promotes early resolution and removes any incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their

4

billable hours. *See Jones*, 601 F. Supp. 2d at 759 ("[W]hen the lodestar method is applied, class counsel has an incentive to 'over-litigate' or draw out cases in an effort to increase the number of hours used to calculate their fees."); *In re Wachovia*, 2011 U.S. Dist. LEXIS 123109, at *16 (noting that the percentage method promotes efficiency); *In re Microstrategy, Inc.*, 172 F. Supp. 2d at 787 (same).

Third, the percentage method preserves judicial resources because it "is more efficient and less burdensome than the traditional lodestar method." *See Fangman v. Genuine Title, LLC*, 2016 U.S. Dist. LEXIS 160434, at *14 (D. Md. Nov. 18, 2016); *Savani v. URS Prof'l Sols. LLC*, 121 F. Supp. 3d 564, 569 (D.S.C. 2015); *Strang v. JHM Mortg. Sec. Ltd. P'ship,* 890 F. Supp. 499, 503 (E.D. Va. 1995). The "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000). While courts still use the lodestar method as a "cross check" when applying the percentage of the fund method, they are not required to scrutinize the fee records as rigorously. *See Hall v. Higher One Machs., Inc.*, 2016 U.S. Dist. LEXIS 131009, at *20 (E.D.N.C. Sep. 26, 2016); *Phillips*, 2016 U.S. Dist. LEXIS 60950, at *6-7; *In re Wachovia*, 2011 U.S. Dist. LEXIS 123109, at *16.

In applying the common fund method courts, from the Supreme Court on down, have held that it is appropriate to award attorneys' fees as a percentage of the entire settlement fund, even where amounts to be paid to settlement class members who do not file claims will revert to the Defendants. *See Boeing*, 444 U.S. at 480-81 ("Although the full value of

5

the benefit to each absentee member cannot be determined until he presents his claim, a fee awarded against the entire judgment fund will shift the costs of litigation to each absentee in the exact proportion that the value of his claim bears to the total recovery.") (citation omitted); *Land v. Sprint Communs. Co. L.P.*, 2013 U.S. Dist. LEXIS 196641, at *6 (D.S.C. Aug. 6, 2013) ("Under the percentage-of-the-fund method, it is appropriate to *base the percentage on the gross cash benefits available for class members to claim*, plus the additional benefits conferred on the class by the [s]ettling [d]efendants' separate payment of attorney's fees and expenses, and the expenses of administration.") (emphasis added); *Hess*, 2012 U.S. Dist. LEXIS 168963, at *7; *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436-37 (2d Cir. 2007) ("The entire [f]und, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class.  An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available whether claimed or not.").[3]

---

[3] Courts have occasionally declined to award a percentage of the entire settlement fund in settlements providing for a reversion for reasons not applicable here.  For example, in *Deloach v. Philip Morris Companies*, the court did not apply the "percentage of recovery" method, because no fund or fixed amount of money had been established, and the parties instead agreed to have the court separately award fees, distinct from the plaintiffs' recovery. *See Deloach v. Philip Morris Cos.*, 2003 U.S. Dist. LEXIS 23240, at *16-17 (M.D.N.C. Dec. 19, 2003).  Moreover, the *Deloach* court distinguished its ruling from the facts of cases in which the parties reached an agreement regarding the limit of fees to be awarded. *Id.* at *15-16.  Even there, however, the court awarded plaintiffs' counsel a multiplier of 4.45 times plaintiffs' counsel's lodestar. *Id.* at *37-39.   Here, where there is a limit to the fees of one-third of the gross settlement fund, as agreed by all parties, there is no reason why the percentage method should not be applied.

## IV. The *Barber* Factors Support an Award of One-Third of the Fund.

Reasonableness is the touchstone for determining attorneys' fees. *See Robinson v. Harrison Transp. Servs., Inc.*, 2016 U.S. Dist. LEXIS 86294, at *13-14 (E.D.N.C. June 30, 2016); *Morris v. Cumberland Cty. Hosp. Sys.*, 2013 U.S. Dist. LEXIS 165063, at *12 (E.D.N.C. Nov. 13, 2013). The Supreme Court has opined that consensual resolution of attorney's fees, as was achieved by the parties in this action, is ideal. *See Hensley*, 461 U.S. at 437 ("A request for attorney's fees should not result in a second major litigation. Ideally of course, litigants will settle the amount of the fee."). Furthermore, the reasonableness of an award can be deduced by evidence of an arm's-length negotiation. *See Berry*, 807 F.3d at 618-19 (recognizing that the court may approve a fee request when there is "no reason to think that class counsel left money on the table in negotiation[s]" and there is a "lack of objection [from class members] to the fee request"). While some courts within the Fourth Circuit have noted that "the percentage method, in addition to the absence of any objection to the fee award, obviates the need for an exhaustive review" of factors showing the reasonableness of a fee award, *see Manuel v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist. LEXIS 33708, at *14 (E.D. Va. Mar. 15, 2016), in *Barber*, the Fourth Circuit articulated twelve factors for courts to consider in determining the reasonableness of fee applications:

(1)     the time and labor expended by counsel;

(2)     the novelty and difficulty of the questions raised;

(3)     the skill required to properly perform the legal services rendered;

(4)     the attorney's opportunity costs in pressing the instant litigation;

(5)     the customary fee for like work;

7

(6)     the attorney's expectations at the outset of the litigation;

(7)     the time limitations imposed by the client or circumstances;

(8)     the amount in controversy and the results obtained;

(9)     the experience, reputation and ability of the attorney;

(10)    the undesirability of the case within the legal community in which the suit arose;

(11)    the nature and length of the professional relationship between attorney and client; and

(12)    attorney's fees awards in similar cases.

*Barber v. Kimbrell's*, 577 F.2d 216, 226 n.28 (4th Cir. 1978). All of the *Barber* factors weigh in favor of granting approval of Class Counsel's fee application.

A.     Class Counsels' Time and Labor Expended (*Barber* Factor 1).

According to the Supreme Court, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation," provided that there is a "good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433-34.

1.     Initial Investigation of Named Plaintiffs'/Class Representatives' Claims and Initial Briefing

From the initial stages of case evaluation and discovery, Class Counsel spent significant effort to achieve the $3 million settlement. Plaintiffs' Counsel was retained by Bailey Reynolds on June 22, 2017, and immediately began a legal and factual investigation of her claims, conducting a thorough investigation into the merits of the potential claims and

8

defenses. Hernandez Decl. ¶ 21. This effort included investigation and legal research on the underlying merits of the collective and class claims, the likelihood of obtaining liquidated damages and an extended FLSA statute of limitations, the proper measure of damages, the likelihood of collective and class certification, and Defendants' involvement in previous FLSA litigation. *Id.* Plaintiffs' Counsel ultimately conducted in-depth interviews with each of the named and opt-in Plaintiffs, as well as other witnesses who did not seek to join the action, for a combined total of about thirty-five (35) Plaintiffs and witnesses, to determine what pre-shift activities they engaged in, how long such activity took, when they were permitted to report time worked and be paid for that time, the hours that they individually worked, the number of hours that they worked for which they were not paid, their rate of pay, the wages they were paid, the bonuses they received and whether such bonuses were included in the calculation of their hourly rate for overtime purposes, the student loan repayments and fitness reimbursements they received and whether such payments were included in the calculation of their hourly rate, and other information relevant to their claims. *Id.* ¶¶ 15-17.

After substantial investigation, Plaintiffs' Counsel contacted Defendants in September 2017, in an attempt to resolve the dispute prior to filing a lawsuit. Hernandez Decl. ¶ 15. Plaintiffs' Counsel discussed the matter extensively with former counsel for Defendants, including an exchange of letters as well as telephone communication. Hernandez Decl. ¶ 15. Ultimately, Defendants' former counsel were unwilling to provide sufficient information to enable Plaintiffs' counsel to settle the dispute, and Plaintiffs' Counsel were forced to file this lawsuit. *Id.*

9

## 2. Briefing on Defendants' Motion to Dismiss and Plaintiffs' Motion for Conditional Certification

The suit was filed on May 17, 2018. Dkt. 1. On July 13, 2018, Defendants FIIOC and FMR LLC responded with a Motion for Partial Dismissal of Plaintiffs' Complaint. *See* Dkt. 20. Plaintiffs filed a response to that motion, and, that same day, filed their First Amended Complaint, which added Defendants Fidelity Brokerage Services LLC and Fidelity Workplace Investing LLC. *See* Dkts. 27-28. On August 7, 2018, Plaintiffs filed a motion for conditional certification of their FLSA claims. Dkts. 29, 30; Hernandez Decl. ¶¶ 15-17. This included declarations from the Named Plaintiffs and several opt-in plaintiffs. *Id*. Prior to the Court's ruling on this motion, the action was stayed to allow the parties to participate in voluntary mediation. *See* Dkt. 45.

## 3. The Parties' Settlement Negotiations

The parties had multiple discussions just to reach agreement on a structure for mediation, which ultimately included an extensive exchange of documents and data, a scheduled exchange of damages models, tolling the statute of limitations, and identifying a mediator, all of which was set forth in a negotiated mediation agreement. The parties subsequently employed Michael Dickstein, an attorney with extensive experience in mediation of complex wage and hour actions, as a neutral mediator to assist in the attempt to reach a settlement. In advance of mediation, the parties agreed to a confidential production of documents, and Defendants produced over 2,000,000 lines of payroll data and thousands of pages of policy documents related to class members' claims. Hernandez Decl. ¶ 20. Plaintiffs' Counsel spent considerable time reviewing these documents, analyzing data to

determine whether paid pre-shift time was for fewer minutes than the amount of pre-shift work, working with a data analyst to determine the total amount of possible damages for all class members, and discussing issues related to the data production with counsel for Defendants. *Id.* Plaintiffs submitted a 16-page letter to Defendants including analysis of both the case and damages specifically and participated in a videoconference to further address data and damages issues. *See id.*

On December 14, 2018, the parties participated in an all-day mediation session with Mr. Dickstein. Hernandez Decl. ¶ 21. At mediation, the Parties reached an agreement in principle, but numerous issues remained to be determined through continued negotiations. *See id.* On December 24, 2018, the parties filed a joint notice to advise the Court that the parties had reached an agreement in principle to resolve all claims. *See id.; see also* Dkt. 47

4. Post-Mediation Work

After the mediation, Plaintiffs' counsel had considerable work to complete, including drafting and negotiating with Defendants over the text of the 45-page settlement agreement and accompanying notices, drafting the Second Amended Complaint and motion for leave to file same, and drafting the motions for preliminary approval of the settlement, approval of the service awards, and this motion for approval of fees.

In performing these tasks, Class Counsel expended over 1380 hours of attorney, paralegal, and staff member time – resulting in an aggregate lodestar of $736,015.00, Hernandez Decl.¶¶ 37-42; Webber Decl. ¶¶ 21-23. Class Counsel believe these hours are reasonable for a case like this one and compiled them from contemporaneous time records maintained by each timekeeper. Hernandez Decl. ¶ 37-42; Webber Decl. ¶¶ 21-23. Class

11

Counsel used a small team of primarily four attorneys in order to minimize duplication of efforts and maximize billing judgment. Hernandez Decl. ¶ 32.

Moreover, the requested fee is not based solely on time and effort already expended, rather, it is also meant to compensate Plaintiffs' Counsel for time that will be spent administering the settlement in the future. Hernandez Decl. ¶¶ 40-41; *see ECOS, Inc. v. Brinegar*, 671 F. Supp. 381, 400-01 (M.D.N.C. 1987) ("[T]he court recognizes that . . . attorneys reasonably expended additional time seeking fees, in this action, for which an award is not requested. It is proper that the fee award compensate all of the time reasonably spent in this litigation . . . ."); *In re Montgomery Cty. Real Estate Antitrust Litig.*, 83 F.R.D. 305, 323 (D. Md. 1979) (designating a fund to be "set aside from the settlement fund against which attorneys may apply for fees for time expended in administering the settlement."); *see also Reyes v. Altamarea Grp.*, 2011 U.S. Dist. LEXIS 115984, at *23 (S.D.N.Y. Aug. 16, 2011) ("The fact that [c]lass [c]ounsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request" of 33% of the fund.).

In Class Counsel's experience, administering class settlements of this nature and size requires a substantial and ongoing commitment. Hernandez Decl. ¶ 40. For example, Class Counsel anticipate that as soon as Notice is mailed, Class Counsel and staff will be required to respond to dozens of inquiries from class members about the terms of the settlement and the amount of their settlement award. *Id.* at ¶ 40. As is common in wage and hour class actions, Class Counsel expects to respond to more Class Member inquiries after final approval, especially after checks are issued. *Id.* Class Counsel also expects to spend

12

additional time working on this case, including preparing for and attending the final fairness hearing, answering class member questions, answering questions from the Settlement Administrator, and negotiating and possibly litigating disagreements with Defendants about the distribution of funds. *Id.*

B.  The Novelty and Difficulty of the Questions Raised (*Barber* Factor 2).

Cases raising novel and complex issues warrant a higher fee award. *See Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 180 (4th Cir. 1994); *Stocks v. Bowen*, 717 F. Supp. 397, 403 (E.D.N.C. 1989). Courts have recognized that wage and hour cases involve complex legal issues. *See, e.g., Barrentine v. Ark.-Best Freight Sys.*, 450 U.S. 728, 743 (1981) ("FLSA claims typically involve complex mixed questions of fact and law … [that] must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings."); *DeWitt*, 2013 U.S. Dist. LEXIS 172624, at *31 ("In the Court's experience, overtime cases under the Fair Labor Standards Act can be very complex and difficult."); *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, No. 1:16-CV-01088, 2018 WL 6718948, at *4 (M.D.N.C. Dec. 18, 2018) ("the novelty and difficulty of the questions raised weighs in favor of approving the fee because collective counsel had to address procedurally and substantively complex FLSA issues."); *Faile v. Lancaster Cty.*, 2012 U.S. Dist. LEXIS 189610, at *33 (D.S.C. Mar. 8, 2012) (same). Hybrid actions, such as this one, where state wage and hour violations are brought as an "opt out" class action pursuant to Rule 23 combined with an FLSA "opt in" collective action pursuant to 29 U.S.C. § 216(b), have been held to be more complex than the typical FLSA case. *Faile*, 2012 U.S. Dist. LEXIS 189610, at *26.

13

In this case, the requested fee amount is reasonable in consideration of the nature and difficulty of the responsibility assumed by Class Counsel. While not many briefs were filed with the Court, Class Counsel researched and drafted numerous submissions to Defendant and the mediator regarding a number of complex disputes, on topics including, but not limited to, Defendants' payroll policies and practices, joint employment, statutory and administrative interpretations, and appropriate overtime rates. Class Counsel also had to assess and analyze a voluminous production of time and payroll records. *See* Hernandez Decl. ¶¶ 21-23.

In addition to the large amount of data produced and number of disputed legal issues, Plaintiffs' Counsel was also required to contend with a novel issue regarding Defendants' bonus plans. *See* Hernandez Decl. ¶ 20. Defendants argued that these plans were not required to be included in the regular rate for overtime purposes because they were percentage-based bonuses as described in 29 C.F.R. § 778.210. However, Plaintiffs' Counsel concluded that the bonuses were calculated as a percentage of a pool awarded to each team of employees, not based on the individual employees' compensation. *See id*. There is no authority directly addressing these particular facts, where a bonus initially calculated by other means is then adjusted to reflect a percentage of an employee's compensation. *See id*. Because this issue has not yet been addressed, Plaintiffs' Counsel were required to engage in substantial research and analysis, as well as numerous discussions with Defense Counsel about the issue. *Id.*

Moreover, the magnitude of this case—involving thousands of putative class members—is significant and adds to the complexity.

14

C.     The Skill Required to Properly Perform the Legal Services Rendered (*Barber* Factor 3).

Attorneys' fees may be increased based on the particular skills and experience required to litigate a claim. "Employment law is a very dynamic area of the law, requiring counsel to stay abreast of developments in both state and federal law. Moreover, as with any litigation in federal court, attorneys in overtime cases must be thoroughly familiar with developments and changes in the Federal Rules of Civil Procedure . . . ." *DeWitt*, 2013 U.S. Dist. LEXIS 172624, at *31. In particular, "the skill required to properly perform the legal services rendered weighs in favor of approving the fee because FLSA collective actions involve law which changes regularly due to growing jurisprudence across the country." *Kirkpatrick*, 2018 WL 6718948, at *4. The claims alleged here required sophisticated class action experience by Class Counsel. Having counsel well-versed in complex collective and class action practice was critical to the successful prosecution of this case. Additionally, the interplay between the FLSA and the NCWHA and NMMWA requires particular skill and experience to properly litigate such cases. Class Counsel has experience litigating hybrid wage and hour cases, including several cases involving hundreds or thousands of class members, employees required to work uncompensated pre-shift time, and employees subject to improper overtime rates. *See* Hernandez Decl. ¶¶ 4-10; Webber Decl. ¶¶ 3-5. Class Counsel in this action brought a wealth of knowledge and expertise to this case, as outlined below, and such knowledge and experience was necessary to adjudicate and settle this matter.

**D.** **Class Counsels' Opportunity Costs in Pursuing the Litigation** *(Barber* Factor 4).

Courts consider the contingency of the litigation to determine the "opportunity costs or preclusion from other employment." *Lewis v. J.P. Stevens & Co.*, 1988 U.S. App. LEXIS 19610, at *10 (4th Cir. June 9, 1988); *see also Gilbert LLP v. Tire Eng'g & Distrib., LLC,*, 2017 U.S. App. LEXIS 8530, at *12 (4th Cir. May 15, 2017) ("Contingency agreements transfer a significant portion of the risk of loss to the attorneys."); *Goodman v. Phillip R. Curtis Enters., Inc.*, 809 F.2d 228, 235 (4th Cir. 1987) (same). Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk. Hernandez Decl. ¶ 42. Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming. *Id.* Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. *Id.* Under the contingent fee arrangement, lawyers are asked to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. *Id.* Plaintiff's Counsel stood to gain nothing in the event the case was unsuccessful. *Id.* Accordingly, the opportunity costs in this action, requiring a large investment of time, energy, and resources, with no guarantee of success, were significant.

Moreover, the size of Class Counsel's practice, and the time demands of the litigation, may support this *Barber* factor and/or increase attorneys' fees for a prevailing plaintiff. *See Vincent*, 2011 U.S. Dist. LEXIS 123780, at *13 ("[D]ue to . . . the small size of the firm of [p]laintiff's attorneys, and the finite resources of such firm, acceptance of this [p]laintiff's

16

case resulted in the inability to accept other paying work," constituting significant opportunity costs); *DeWitt*, 2013 U.S. Dist. LEXIS 172624, at *32 (stating that where counsel documented over 187 hours, "represent[ing] a significant opportunity cost for an attorney . . . in terms of other cases that could have been handled during the same period," and where counsel "advanced all of the costs of this litigation," the opportunity costs factor was satisfied); *Johannssen v. Dist. No. 1 - Pac. Coast Dist., MEBA Pension Plan*, 2001 U.S. Dist. LEXIS 10556, at *13 (D. Md. July 10, 2001) ("The extensive time spent on this case could certainly have been spent handling other cases; thus, involvement in this litigation carried with it significant opportunity costs."). In this matter, Class Counsel is composed of a small team of attorneys between two firms, and they spent over 1380 hours litigating and settling this action with many more hours which will be spent with further briefing, attending the fairness hearing and responding to calls after the distribution of notice, and later the checks, takes place. *See* Hernandez Decl. ¶ 41. The opportunity costs in this litigation, accordingly, are certainly significant.

    E.    <u>The Customary Fee for Like Work (*Barber* Factor 5).</u>

To satisfy its burden under the *Barber* factors, the plaintiff must "present the Court with adequate evidence of the prevailing rates in the relevant market." *Plyer v. Evantt*, 902 F.2d 273, 277 (4th Cir. 1990). "While evidence of fees paid to attorneys of comparable skill in similar circumstances is relevant, so too is the rate actually charged by the petitioning attorneys when it is shown that they have collected those rates in the past from the client." *Caperton*, 31 F.3d at 175. In a recent decision displaying customary fees charged, reached on June 30, 2017, the Western District of North Carolina approved attorneys' fees and

17

expenses of $3.8 million, for an FLSA/NCWHA hybrid collective/class action, that settled for a total of $9 million. *See Rehberg v. Flowers Baking Co. of Jamestown, LLC*, No. 3:12-cv-00596, Dkt. 250 (W.D.N.C. June 30, 2017). In doing so, the court approved all of the following hourly rates for all attorneys who participated in that matter: $975 per hour (partner); $850 per hour (partner); $850 per hour (partner); $795 per hour (partner); $795 per hour (partner); $780 per hour (partner); $700 per hour (associate); $695 per hour (partner); $590 per hour (partner); $550 per hour (partner); $550 per hour (partner); $525 per hour (associate); $525 per hour (partner); $500 per hour (associate); $475 per hour (associate practicing since 2015); $450 per hour (associate practicing since 2014); $450 per hour (associate practicing since 2014); $450 per hour (associate practicing since 2014); $400 per hour (associate practicing since 2013); and $375 per hour (associate). *See id.*, Dkts. 245-1, 245-2, 245-3, 245-4, 245-5, 250.

Here, as described above, and assessed below for the ninth *Barber* factor (experience, reputation, and ability of the attorney), Class Counsel have extensive North Carolina and national wage and hour experience, including in complex collective and class action lawsuits. *See infra.* Class Counsel's current rates, $650 and $820 per hour, fall to the lower end of customary rates for an experienced partner's participation in FLSA/NCWHA hybrid actions. *Id.* Since 2013, when the GAH law practice was launched, Class Counsel Hernandez's hourly rate has increased by only 10%, from $595 to $650, which is a proportionate increase as compared to the firm's growth, demand, and increased experience. Hernandez Decl. ¶ 34. To that end, Class Counsel's customary rates have been previously approved by other courts. *See, e.g., In re Gentiva Health Services Inc.*, No: 1:14-cv-01892-

18

WBH, Dkt. 113 (N.D. Ga. June 22, 2017) (approving GAH's then $595 rate and CEW's then $765 rate as the basis of a lodestar crosscheck for a common fund award that was approved by the court in nationwide action); *Tomkins v. Amedisys*, No. 3:12-cv-1082 (D. Conn. 2016) (approving GAH's then $595 rate and CEW's then $735 rate as the basis of a lodestar crosscheck for a common fund award that was approved by the court in nationwide action); *McLaurin v. Prestage Foods*, 2012 U.S. Dist. LEXIS 13086 (E.D.N.C. Feb. 3, 2012) (same, at the then-charged lower rate of $385 per hour, charged while counsel was a firm associate, not owner, and before attaining an additional seven years of collective/class action experience both locally and in nationwide actions, and stating, "[T]he court [allows] the motion for attorneys' fees and awards attorneys' fees . . . . [t]he court finds this amount to be reasonable in light of the complexity of the case, the history of the litigation, and the results obtained."). As such, Class Counsel's fees are consistent with the customary fee for like work and satisfy the fifth factor of *Barber*.

F.     <u>Class Counsel's Expectations at the Outset of Litigation (*Barber* Factor 6).</u>

According to the Supreme Court, "[t]he fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 723 (1987) (citations omitted). "Courts have generally recognized that a contingent fee lawyer may have the right to expect a fee greater than if his fee were guaranteed." *Va. Acad. of Clinical Psychologists v. Blue Shield of Va.*, 543 F. Supp. 126, 148 (E.D. Va. 1982). Because Class Counsel represented Plaintiff on a contingency basis, Class Counsel took on significant risk of non-payment, the burden of advancing litigation

expenses, and the substantial opportunity cost of having to turn down other potentially lucrative work. Class Counsel thus reasonably expected a fee greater than if they had been paid on an hourly basis. *Id.*

G. The Time Limitations Imposed by the Client or Circumstances (*Barber* Factor 7).

Priority work that takes time away from the lawyer's other legal work is entitled to some premium. *See In re Steel Network, Inc.*, 2011 Bankr. LEXIS 3418, at *34 (U.S. Bankr. M.D.N.C. June 27, 2011); *Va. Acad. of Clinical Psychologists*, 543 F. Supp. at 148-49; *see also Hyatt v. Heckler*, 586 F. Supp. 1154, 1158 (W.D.N.C. 1984). This case involved filings which necessarily involved strict time limitations, as well as extensive pre-mediation review of documents within a short period of time. *See supra*. These time limitations frequently required Class Counsel to take time away from other matters and devote substantial resources to particular deadlines. Nevertheless, given the relatively early stage of the case, this factor is neutral with regard to Class Counsel's requested fee.

H. The Amount in Controversy and the Results Obtained (*Barber* Factor 8).

In the Fourth Circuit, "the most critical factor in calculating a reasonable fee award is the degree of success obtained." *Randle v. H&P Capital, Inc.*, 513 F. App'x 282, 284 (4th Cir. 2013) (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)); *Lilly v. Harris-Teeter Supermarket*, 842 F.2d 1496, 1511 (4th Cir. 1988) (citing *Hensley*, 461 U.S. at 434-37). Success warranting attorneys' fees occurs when the moving party prevails "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Arvinger v. Mayor and City Council of Baltimore*, 31 F.3d 196, 200 (4th

20

Cir. 1994).

In this case, Class Counsel obtained significant success on behalf of Plaintiffs. In terms of recovery, the class is obtaining substantial benefits. A settlement of $3 million for uncompensated pre-shift work which took five (5) to fifteen (15) minutes per day is significant. Indeed, $3 million is more than 50% of the estimated total lost wages Plaintiffs prepared. To recover more than 50% of that amount is a significant success. The certainty of receiving a high proportion of lost wages now is worth more to class members than the chance that they might – or might not – recover 100% of their losses at some point in the future. The relief obtained under the FLSA, NCWHA and NMMWA is excellent in light of the defenses likely to be faced at trial and the risk of decertification.

I.    The Experience, Reputation, and Ability of the Attorneys (*Barber* Factor 9).

To determine the ninth *Barber* factor, courts review, among other things, attorneys' "expertise in complex litigation . . . [and] history of success in difficult, high-stakes litigation." *LandAmerica 1031 Exch. Servs. v. Chandler*, 2012 U.S. Dist. LEXIS 159630, at *17 (D.S.C. Nov. 7, 2012); *see also Braun v. Culp, Inc.*, 1985 U.S. Dist. LEXIS 20373, at *8 (M.D.N.C. Apr. 26, 1985).

Class Counsel have substantial experience prosecuting large-scale wage and hour class and collective actions. Hernandez Decl. ¶¶ 4-10 (listing GAH's substantial experience with wage and hour actions, and listing cases); Webber Decl. ¶ 4 (listing cases). Class Counsel's skill and experience litigating wage and hour cases contributed to obtaining the settlement and weigh in favor of granting the requested fees. *Id.*; *see also Mackey v. Stetson*, 1981 U.S. Dist. LEXIS 16768, at *6 (W.D.N.C. Sep. 21, 1981) (holding that lead counsel's

21

experience representing plaintiffs in class actions "justifies an upward adjustment in the award.").

J.    The Undesirability of the Case Within the Legal Community in Which the Suit Arose (*Barber* Factor 10).

Courts in this Circuit may enhance attorneys' fees "when the prevailing party can establish that, absent an adjustment, [the plaintiffs] 'would have faced substantial difficulties in finding counsel in the local or other relevant market.'" *Lewis*, 1988 U.S. App. LEXIS 19610, at *11 (quoting *Delaware Valley*, 482 U.S. at 731 (1987)). Lawsuits that are undesirable, either because of novelty of the issue or difficulty of the litigation, are eligible for premium attorneys' fees. *See Mackey*, 1981 U.S. Dist. LEXIS 16768, at *6 (stating the fact that "not all lawyers are willing to handle" a certain type of case, warrants "[a]n upward adjustment . . . to reward plaintiffs' counsel's willingness to handle th[e] case, and to encourage others to do so in the future."); *see also Price v. City of Fayetteville*, 2015 U.S. Dist. LEXIS 32577, at *14 (E.D.N.C. Mar. 17, 2015) ("In light of the difficult . . . legal issues presented by this case, in addition to the challenges in development of the factual record, without guarantee of success or attorney fees, plaintiffs have demonstrated the undesirability of the case within the Fayetteville, North Carolina, legal community in which the suit arose."). Relevant to this factor in this matter is that Class Counsel took this complex, expensive, and time-consuming case on a contingency basis, with no guarantee of payment, unless the litigation was successfully resolved by settlement or judgment. Class Counsel brought this case knowing they would face vigorous, hard-fought litigation from highly-motivated opponents and high-caliber defense attorneys. The GAH Class Counsel is

22

also the only firm, not only in Wake County, but in the State of North Carolina, that practices *exclusively* wage and hour law, pursuant to the FLSA and NCWHA, giving Class Counsel a far greater degree of expertise and experience than other attorneys. These factors would render this case undesirable to many attorneys and, accordingly, this factor supports the fee request here.

K. The Nature and Length of the Professional Relationship Between Attorney and Client (*Barber* Factor 11).

A first-time, one-time, and/or contingency relationship may render this factor irrelevant from the attorneys' fee analysis, and therefore inconsequential. *See Price*, 2015 U.S. Dist. LEXIS 32577, at *14-15; *DeWitt*, 2013 U.S. Dist. LEXIS 172624, at *35; *Bunn v. Bowen*, 637 F. Supp. 464, 472 (E.D.N.C. 1986). In contrast, an on-going relationship with a client who brings repeat business to a firm tends to lead to lower hourly rates. *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1300, 1305 (11th Cir. 1988); *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996). In situations such as this, with a one-time retention not likely to lead to repeat business from the same client, rates should be higher than what firms obtaining repeat business charge.

L. Attorneys' Fees Awards in Similar Cases (*Barber* Factor 12).

Courts also consider the size of the settlement to ensure that the percentage awarded does not constitute a "windfall." *See, e.g.*, *McAfee v. Boczar*, 738 F.3d 81, 92 (4th Cir. 2013);

The size of the proposed $3 million settlement weighs in favor of granting the requested fee award of one-third of the common fund. Numerous courts in this Circuit have granted requests for approximately one-third of the fund in cases with settlement funds

similar to this one. *See, e.g.*, *Thomas v. FTS USA, LLC*, 2017 U.S. Dist. LEXIS 45217, at *15 (E.D. Va. Jan. 9, 2017) (approving a one-third fee of a $1.3 million settlement, plus $50,000 in costs, and finding that "a fee award of one-third of the settlement fund would be consistent with that awarded in other cases."); *Hackett v. ADF Rest. Invs.*, 2016 U.S. Dist. LEXIS 174775, at *14-17 (D. Md. Dec. 16, 2016) (awarding class counsel one-third of settlement); *Phillips*, 2016 U.S. Dist. LEXIS 60950, at *29 (approving a 30% fee award on a $1.6 million settlement); *McClaran v. Carolina Ale House Operating Co.*, LLC, 2015 U.S. Dist. LEXIS 112985, at *11 (D.S.C. Aug. 26, 2015) (" In a number of [wage and hour] cases, courts found that a fee award of one-third of the settlement fund was reasonable."); *Archbold v. Wels Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 92855, at *13 (S.D. W. Va. July 13, 2015) (same); *Kirven v. Cent. States Health & Life Co.*, 2015 U.S. Dist. LEXIS 36393, at *34 (D.S.C. Mar. 23, 2015) (same); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 482 (D. Md. 2014) (approving a one-third award because of the contingency fee basis, complexity of the matter, and risk); *McDaniels v. Westlake Servs., LLC*, 2014 U.S. Dist. LEXIS 16081, at *38 (D. Md. Feb. 7, 2014) (same); *DeWitt*, 2013 U.S. Dist. LEXIS 172624, at *22 (same); *Faile*, 2012 U.S. Dist. LEXIS 189610, at *20 (same); *McLaurin*, 2012 U.S. Dist. LEXIS 13086, at *3 (approving one-third of a $1.8 million FLSA/NCWHA settlement for attorney's fees); *In re Red Hat, Inc. Sec. Litig.*, 2010 U.S. Dist. LEXIS 131249, at *3 (E.D.N.C. Dec. 10, 2010) (approving $6 million in attorney's fees from a $20 million settlement, equating to 30%); *Helmick v. Columbia Gas Transmission*, 2010 U.S. Dist. LEXIS 65808, at *15 (S.D. W. Va. July 1, 2010) ("[A] fee award in the amount of 33 1/3 % (one-third) is a reasonable); *Hoffman v. First Student, Inc.*, 2010 U.S. Dist. LEXIS 27329, at *11 (D. Md.

24

Mar. 23, 2010) (same); *Beaulieu v. EQ Indus. Servs.*, No. 5:06-CV-400-BR, Dkt. 427 (E.D.N.C. Dec. 23, 2009) (approving approximately $3 million in attorneys' fees, 38% of the settlement fund); *Smith*, 2007 U.S. Dist. LEXIS 2392, at *6 ("In this jurisdiction, contingent fees of one-third (33.3%) are common."); *see generally* Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. of Empirical Legal Studies, 27, 31-33 (2004) (same); Newberg on Class Actions § 15:73 (5th ed.) (same).

In sum, the *Barber* factors support the fee award requested.

## V.     Public Policy Considerations.

Plaintiffs also believe public policy considerations weigh in favor of granting Class Counsel's requested fees. In rendering awards of attorneys' fees, courts within the Fourth Circuit take into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *See Phillips*, 2016 U.S. Dist. LEXIS 60950, at *26-27; *Jones*, 601 F. Supp. 2d at 760; *In re Wachovia*, 2011 U.S. Dist. LEXIS 123109, at *23. The FLSA and NCWHA are remedial statutes designed to protect the wages of workers. *See A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945); *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 133 (4th Cir. 2017) (referring to the FLSA's "remedial and humanitarian" purpose) (citing *Tenn. C. v. Muscoda*, 321 U.S. 590, 597 (1944)). In order to achieve those remedial objectives, courts recognize that adequate fee awards are essential for those who step forward to represent employees with wage and hour claims. *See Jackson v. Estelle's Place, LLC*, 391 F. App'x 239, 246 (4th Cir. 2010); *DeWitt*, 2013 U.S. Dist. LEXIS 172624, at *28.

## VI. The Lodestar Cross Check Further Supports an Award to Plaintiffs' Counsel of One-Third of the Settlement Fund.

Although the percentage method is preferred within the Fourth Circuit, courts still use the lodestar method to "cross check" the reasonableness of the fee percentage requested, though rigorous scrutiny of the fee records is not necessary. *See Hall*, 2016 U.S. Dist. LEXIS 131009, at *20; *Phillips*, 2016 U.S. Dist. LEXIS 60950, at *6-7. As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *See In re Dollar Gen. Stores FLSA Litig.*, 2011 U.S. Dist. LEXIS 98162, at *10 (E.D.N.C. Aug. 22, 2011). Courts then consider whether a multiplier is warranted and reasonable based on the factors set out in *Barber*, as detailed above. *See Berry*, 807 F.3d at 617; *see also Barber*, 577 F.2d at 226; *Anselmo v. W. Paces Hotel Grp., LLC*, 2012 U.S. Dist. LEXIS 164618, at *11 (D.S.C. Nov. 19, 2012).

Class Counsel's request for one-third of the proposed settlement Fund – $1,000,000 – is slightly more than their calculated "lodestar." Where supported by the relevant considerations, courts within the Fourth Circuit "have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee." *Jones*, 601 F. Supp. 2d at 766 (ultimately approving "a lodestar multiplier between 3.4 and 4.3 which is closer to the middle of the range considered reasonable by courts."); *Hatzey v. Divurgent, LLC,* 2018 U.S. Dist. LEXIS 187007, at *15-16 (E.D. Va. Oct. 9, 2018) (approving a multiplier of 6.4 ); *Fangman v. Genuine Title, LLC*, 2016 U.S. Dist. LEXIS 160434, at *36 (D. Md. Nov. 18, 2016) (approving a multiplier of 5.6); *Nieman v. Duke Energy Corp.*, 2015 U.S. Dist. LEXIS 148260, at *5 (W.D.N.C. Nov. 2, 2015) (approving "an upward variance from a 4.5

multiplier"); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 689 (D. Md. 2013) (approving a multiplier of 3); *Deloach*, 2003 U.S. Dist. LEXIS 23240, at *38 (approving a 4.45 multiplier); *Goldenberg*, 33 F. Supp. 2d at 439 n.6 (approving a 3.6 multiplier, and stating that it was "well within the average range of 3-4.5 for comparable cases."). Multipliers which – like here – are less than 2, have been described as "modest." *Smith v. Krispy Kreme Doughnut Corp.*, 2007 WL 119157, at *1–3 (M.D.N.C. Jan. 10, 2007) (approving a "modest" multiplier of 1.6); *Kirkpatrick*, 2018 WL 6718948, at *5 (finding a multiplier of 1.8 "well within the normal range of lodestar multipliers); *Kruger v. Novant Health, Inc.*, No. 1:14CV208, 2016 WL 6769066, at *4–5 (M.D.N.C. Sept. 29, 2016) (approving a one-third fee of 3.69 times the lodestar).

Class Counsel spent over 1380 hours litigating and settling this matter. Hernandez Decl. ¶¶37-42; Webber Decl. ¶ 16. The time spent by Plaintiffs' Counsel is described in Plaintiffs' Counsel's Declarations. The hours Class Counsel worked, at the rates set forth in the accompanying declarations, yields a lodestar calculated at $736,015.00. Hernandez Decl. ¶¶37-42; Webber Decl. ¶ 16. As noted above at 16, Class Counsel's lodestar and expenses will increase as the settlement progresses. Hernandez Decl. ¶41. The additional work Class Counsel will perform after this petition, and even after final approval is granted, supports the requested fee. *See ECOS*, 671 F. Supp. at 400-01; *In re Montgomery Cty.*, 83 F.R.D. at 323; *Reyes*, 2011 U.S. Dist. LEXIS 115984, at *23.

## VII. <u>Plaintiffs' Counsel Are Entitled to Reimbursement of Litigation Expenses Under the Settlement Agreement.</u>

Class Counsel request reimbursement of $30,033.87 in litigation expenses to be paid

27

from the Fund, in addition to fees.   Hernandez Decl. ¶ 40; Webber Decl. ¶ 17.   Attorneys may be compensated for litigation expenses "reasonably incurred by counsel in prosecuting a class action."  *See In Re Wachovia Corp.*, 2011 U.S. Dist. LEXIS 123109, at *30; *see also Smith*, 2007 U.S. Dist. LEXIS 2392, at *12-13; *Braun v. Culp, Inc.*, 1985 U.S. Dist. LEXIS 20373, at *13 (M.D.N.C. Apr. 26, 1985).   Here, Class Counsel's current expenses were incidental and necessary to the representation of the Class.   Hernandez Decl. ¶ 43.   These expenses include court fees, the costs of data analysis prior to mediation, the mediator's fee, travel associated with the mediation, and long distance and courier costs.   *Id.*

## VIII.   <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Attorneys' Fees and Reimbursement of Expenses, and enter an Order: (i) awarding attorneys' fees in the amount of $1,000,000 which represents one-third of the Fund, should the parties' proposed settlement receive final approval and become effective; and (ii) reimbursing $30,033.87 in litigation expenses that Class Counsel incurred and anticipate, should the parties' proposed settlement receive final approval and become effective.

Dated: February 22, 2019.

Respectfully submitted,

BY: */s/ Gilda Adriana Hernandez*
     Gilda A. Hernandez (NCSB # 36812)
     **THE LAW OFFICES OF GILDA A.**
     **HERNANDEZ, PLLC**
     1020 Southhill Drive, Suite 130
     Cary, NC 27513

28

Telephone: (919) 741-8693
Facsimile: (919) 869-1853
ghernandez@gildahernandezlaw.com

Christine E. Webber (#439368), *pro hac vice*
**COHEN MILSTEIN SELLERS & TOLL, PLLC**
1100 New York Avenue, Suite 500 West
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
cwebber@cohenmilstein.com

*Attorneys for Plaintiffs*

29

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing complies with Local Rule 7.3(D)(1), as it contains

8,095 words, excluding parts of the memorandum that are exempted by LR 7.3(D)(1).

I certify that the foregoing is true and accurate.

Dated: February 22, 2019

/s/ Gilda A. Hernandez
Gilda A. Hernandez (NCSB No. 36812)

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2019, I electronically filed the foregoing true and accurate copy of **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** with the Court using the CM/ECF system, and I hereby certify that I have thereby electronically served the document to the following:

Richard G. Rosenblatt (*pro hac vice*)
August W. Heckman III (*pro hac vice*)
**MORGAN, LEWIS BOCKIUS LLP**
502 CARNEGIE CENTER
PRINCETON, NJ 08540-6289
TELEPHONE: (609) 919-6600
FACSIMILE: (609) 919-6701
EMAIL: richard.rosenblatt@morganlewis.com
august.heckman@morganlewis.com

Kevin Scott Joyner
Regina W. Calabro
Robert A. Star
**OGLETREE DEAKINS NASH SMOAK & STEWART, P.C.**
4208 SIX FORKS ROAD, SUITE 1100
RALEIGH, NC 27609
TELEPHONE: (919) 787-9700
FACSIMILE: (919) 783-9412
EMAIL: kevin.joyner@ogletreedeakins.com
regina.calabro@ogletreedeakins.com
robert.sar@ogletreedeakins.com

*Attorneys for Defendants*

Respectfully submitted,

/s/ *Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB # 36812)

31

**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Drive, Suite 130
Cary, NC 27513
Telephone: (919) 741-8693
Facsimile: (919) 869-1853
ghernandez@gildahernandezlaw.com


Christine E. Webber (#439368), *pro hac vice*
**COHEN MILSTEIN SELLERS & TOLL, PLLC**
1100 New York Avenue, Suite 500 West
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
cwebber@cohenmilstein.com

*Attorneys for Plaintiffs*