IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BAILEY REYNOLDS and HELEN MARTINEZ on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| *Plaintiffs,* | ) ) | No. 1:18-cv-00423-CCE-LPA |
| v. | ) ) ) | |
| FIDELITY INVESTMENTS INSTITUTIONAL OPERATIONS COMPANY, INC., FMR LLC, FIDELITY BROKERAGE SERVICES LLC, FIDELITY WORKPLACE INVESTING LLC, and VERITUDE LLC, | ) ) ) ) ) ) ) | |
| *Defendants.* | ) ) ) | |

## DECLARATION OF GILDA ADRIANA HERNANDEZ IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTIONS FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; APPROVAL OF SETTLEMENT ADMINISTRATOR; APPROVAL OF PLAINTIFFS' NOTICE OF SETTLEMENT; APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND APPROVAL OF SERVICE AWARD

I, Gilda Adriana Hernandez, declare as follows:

1.      I am an attorney in good standing, duly licensed and admitted to the North Carolina Bar. I am an attorney with the Law Offices of Gilda A. Hernandez, PLLC ("GAH"). The testimony set forth in this Declaration is based on first-hand knowledge, about which I could and would testify competently in open Court if called upon to do so, and on records contemporaneously generated and kept by my Firm in the ordinary course of its law practice.

2.     I provide this Declaration for the purpose of setting forth the background and qualifications of Plaintiffs' counsel to act as Class Counsel in this action and to describe the work completed by my firm in this action, our rates, and expenses incurred in the course of this litigation and to support Plaintiffs' Motion for Preliminary Approval of the Settlement.

### *Adequacy of Counsel*

3.     I graduated from the University of Illinois, Chicago with a B.A. in Criminal Justice and received my Juris Doctor degree from Southwestern University School of Law, Los Angeles, California.

4.     In 1997, I started my wage and hour career.  I worked as a United States Department of Labor, Wage and Hour ("USDOL-WHD") official, enforcing and administering wage and hour laws pursuant to the Fair Labor Standards Act ("FLSA"), Family Medical Leave Act ("FMLA"), Davis Bacon Act ("DBA"), and Service Contracts Act ("SCA").  I investigated employers to determine their compliance with all relevant wage and hour laws, regarding overtime, minimum wage, prevailing wages, child labor, misclassification of salaried employees, and H-1(B) issues, in addition to, providing employers with guidance on achieving and maintaining compliance.

5.      In 2003, I interned with the United States Department of Labor – Solicitor of Labor, where I conducted legal research on relevant wage and hour laws and advised Regional Solicitors of Labor on whether cases were suitable for wage and hour litigation.

6.     Since 2008, I have worked in private practice, representing employees exclusively in individual and collective/class action litigation for alleged violations of the

2

FLSA and relevant state wage and hour laws. Since that time, I have represented thousands of workers and recovered millions of dollars in both nationwide and local actions. In 2011, I tried the first of its kind, NCWHA wage and hour class action in Mecklenburg County, obtaining a verdict on behalf of a class of janitorial workers, resulting in actual and liquidated damages, pre-judgement interest, and attorneys' fees and costs.

7. GAH, together with Cohen Milstein Sellers & Toll, PLLC ("CMST"), are the attorneys for Plaintiffs. Our firms represent plaintiffs in a wide variety of employment matters, including individual and class action litigation involving wage and hour matters.

8. Plaintiffs' Counsel have substantial experience in prosecuting and settling wage and hour collective/class actions and are well-versed in wage and hour law and class action law.

9. Given my substantial experience in prosecuting wage and hour class and collective actions, I have regularly been appointed class counsel in such matters. *See Kincaid v. Courier Express/Charlotte Inc., et al*, No. 1:18-cv-707-AT (N.D. Ga Jan. 31, 2019) (conditionally finding plaintiff's counsel "are adequate to serve as [c]lass [c]ounsel" and appointing GAH as class counsel for the settlement classes – approximately 1500 couriers affected); *Berber v. Hutchison Tree Serv.*, No. 5:15-CV-143-D, 2018 WL 3869980, at *2 (E.D.N.C. Aug. 14, 2018) (appointed class counsel in conditional/class certification action; affecting over 120 individuals); *Velasquez-Monterrosa v. Mi Casita Rests.,* No. 5:14-CV-448-BO, 2016 U.S. Dist. LEXIS 56089 (E.D.N.C. Sept. 26, 2017) (collective/class action affecting over 200 individuals; settlement approved for $2.5 million); *Alfaro Zelaya v. A+ Tires, Brakes, Lubes, & Mufflers, Inc.*, No. 5:13CV810-F,

3

2015 U.S. Dist. LEXIS 1320225 (E.D.N.C. Sep. 28, 2015) ("named plaintiffs are also represented by competent and qualified counsel. Counsel has extensive experience litigating similar matters, including other wage and hour suits in North Carolina") (affecting over 200 workers); *Tomkins v. Amedisys, Inc.,* No. 3:12-cv-1082 (WWE), 2014 U.S. Dist. LEXIS 3660 (D. Conn. Jan. 13, 2014) (represented over 2500 clinicians in a nationwide action involving in excess of 35 states; settlement approved for $8 million in 2016); *Rindfleisch v. Gentiva Health Services, Inc.,* No. 1:10-cv-3288-SCJ, 2011 U.S. Dist. LEXIS 57949 (N.D. Ga. Apr. 13, 2011) (represented initially over 1,000 clinicians in a nationwide collective action in over thirty states; settlement approved for $3.3 million in 2017); *McLaurin v. Prestage Foods Inc.,* 271 F.R.D. 465, 479 (E.D.N.C. 2010) ("the court finds that plaintiffs' counsel possess the necessary qualifications….Gilda A. Hernandez shall serve as counsel for the class") (affecting approximately 1,800 Class Members; *see also Mitchell v. Smithfield Packing Co*., 2011 U.S. Dist. LEXIS 108974, *10 (E.D.N.C. 2011)[1] ("….Gilda Hernandez [who is a] capable trial counsel with substantial experience in complex civil litigation, including class action lawsuits"); *Horne v. Smithfield Packing Co*., 2011 U.S. Dist. LEXIS 108978, *10 (E.D.N.C. 2011) ("The court finds that Ms. Hernandez ….will fairly and adequately represent the interests of the class"); *Romero v. Mountaire Farms Inc*., 796 F. Supp. 2d 700, 715 (E.D.N.C. 2011) ("the court finds that plaintiffs' counsel possess the necessary qualifications") (affecting approximately 10,000 poultry processing employees); *Guerrero et al v. Pro Klean, Inc*., CA No. 09 CVS 29529

---

[1]Smithfield cases collectively affected approximately 3,500 Class Members.

(Mecklenburg County, Superior Ct. 2012) ("Ms. Hernandez has specialized experience in the field of wage and hour law.").

10. I have also been involved in many educational and legal groups, including the American Bar Association, National Employment Lawyers Association, the National Employment Law Project, the North Carolina Advocates for Justice, and the North Carolina Bar Association, for which I have authored articles relating to FLSA and NCWHA requirements. Additionally, I have lectured on various FLSA and NCWHA topics, including collective/class action litigation at meetings, conferences, and CLE programs sponsored by the National Employment Lawyers Association, the North Carolina Bar Association, and the North Carolina Advocates for Justice.

11. Christine Webber of CMST is also experienced in prosecuting wage and hour class and collective actions and has been appointed Class Counsel numerous times based on that experience. *See* Dkt No. 59, Declaration of Christine Webber.

### *Nature of Plaintiffs' Claims*

12. Defendants Fidelity Investments Institutional Operations Company FMR LLC, Fidelity Brokerage Services LLC, Fidelity Workplace Investments LLC, and Veritude LLC (collectively "Fidelity") operate several call centers located around the country, from which representatives answer customer questions about Fidelity's financial products, such as 401(k)s, IRAs, annuities, managed accounts, and brokerage and case management products.

13. Plaintiff Bailey Reynolds worked as a call center associate for Defendants in their Durham, North Carolina, location from November 2015 to May 16, 2017, and Plaintiff Martinez worked as a call center associate for Defendants from September 2013

5

until October 2016. They assert claims on behalf of themselves and all others similarly situated, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b); the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.6, 95-25.22(a), (a1), and (d); and the New Mexico Minimum Wage Act ("NMMWA") N.M. Stat. Ann. §§ 50-5-2, 50-4-15, 50-4-22(D), 50-4-26(C), (D), (E), and (G). Plaintiffs claim that Defendants failed to pay workers in their call centers for required pre-shift work (including booting up computers, launching software programs, checking emails, reviewing call schedules and callbacks, and other tasks necessary for Plaintiffs to complete their work), that Defendants failed to include certain bonuses in calculating the regular and the correct overtime rate(s), and that Defendants failed to include reimbursements for student loan payments and fitness expenses in calculating the applicable and regular overtime rate(s). Plaintiffs claim that each of these violations resulted in a failure to accurately calculate overtime due, in violation of the FLSA, the NCWHA, and the NMMWA, and that the unpaid pre-shift time violates the NCWHA even in weeks when no overtime was worked. In addition, Plaintiff Bailey Reynolds asserts that Defendants retaliated against her in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, for taking intermittent FMLA leave.

14.     On these grounds, Plaintiffs sought to recover on their own behalf, as well as on behalf of two classes, FLSA (opt-in plaintiffs) and Rule 23 (opt-out) class members, consisting of employees who were not paid for pre-shift activities or who did not have all wages included in the calculation of their overtime rate, and seeking unpaid wages, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs.

***Plaintiffs' Initial Investigation of Potential Claims***

15.     Plaintiff Reynolds retained the Law Offices of Gilda A. Hernandez, PLLC for legal representation on June 22, 2017.  In April 2018, GAH and CMST began representing Named Plaintiff Helen Martinez.  Beginning in June 2017 through May 2018 and prior to filing this action, Plaintiffs' Counsel conducted a thorough investigation into the merits of the potential claims and defenses.  This included investigation and legal research on the underlying merits of the class claims, the likelihood of obtaining liquidated damages and an extended FLSA statute of limitations, the proper measure of damages, and the likelihood of class certification.  After substantial investigation, Plaintiffs' Counsel contacted Defendants' Counsel in September 2017, in an attempt to resolve the dispute prior to filing a lawsuit.  Plaintiffs' Counsel discussed the matter extensively with former counsel for Defendants, including an exchange of letters as well as telephone communication.  Ultimately, Defendants' former counsel were unwilling to provide sufficient information to enable Plaintiffs' counsel to settle the dispute.  As such, Plaintiffs were forced to initiate this lawsuit.  As stated above, the claims include allegations that Plaintiffs and all similarly situated employees were not permitted to record all of their pre-shift time worked and that their quarterly bonuses, student loan repayments, and fitness reimbursements made by Fidelity were not used in the calculation of their overtime rate. However, based on interviews with Plaintiffs and a review of numerous bonus plans produced by Defendants, Plaintiffs' Counsel concluded that the bonuses were initially calculated as a percentage of a pool awarded to each team of employees, not based on the individual employees' salaries.  There is no authority, including regulations, case law, or

7

Department of Labor (DOL) guidance, directly addressing these particular facts, where a bonus initially calculated by other means is then adjusted to reflect an even percentage of an employee's salary. Because this issue has not yet been addressed, Plaintiffs' Counsel were required to engage in substantial research and analysis, as well as numerous discussions with Defense Counsel about the issue.

16. Plaintiffs' Counsel also conducted in-depth interviews with named and opt-in Plaintiffs as well as putative class members for a total of about thirty-five (35) individuals, to determine the hours that they individually worked, the number of hours that they worked for which they were not paid, their rate of pay, the wages they were paid, the bonuses they received and whether such bonuses were included in the calculation of their hourly rate for overtime purposes, the student loan repayments and fitness reimbursements they received and whether such payments were included in the calculation of their hourly rate, and other information relevant to their claims and those of other putative plaintiffs and Rule 23 class members.

17. Throughout litigation, Plaintiffs' Counsel has maintained contact with each named and opt-in plaintiff, addressing concerns, providing progress updates, and seeking additional information regarding new assertions by Defendants.

### ***The Litigation and Settlement Negotiations***

18. On May 17, 2018, Bailey Reynolds and Helen Martinez filed a complaint in the U.S. District Court for the Middle District of North Carolina, raising putative collective-action claims under the FLSA and putative class-action claims under North Carolina and New Mexico state law. *See* Dkt. No. 1.

19.    On July 13, 2018, Defendants filed a Motion for Partial Dismissal of Plaintiffs' claims. *See* Dkt. No. 20. Plaintiffs filed their Response in Opposition on August 3, 2018. *See* Dkt. No. 28. Meanwhile, Plaintiffs filed their Motion for Conditional Certification of the FLSA class and for authorization to send court-supervised notice to potential participants in the collective action on August 7, 2018. *See* Dkt. No. 29, 30.

20.    On September 13, 2018, the Parties jointly moved to stay the litigation to allow them to participate in voluntary mediation, a motion the Court granted. (Dkts. No. 43, 45). In preparation for mediation, Defendants produced over 2,000,000 lines of payroll data, more than 28,000,000 lines of time-keeping data, and thousands of pages of policy documents related to putative class members' claims. Plaintiffs' Counsel spent considerable time reviewing these documents, analyzing data and working with a data analyst to determine the total amount of damages for all putative class members, and discussing disputed issues related to the data production with counsel for Defendants. Plaintiffs submitted a 17-page letter to Fidelity outlining the facts, law supporting Plaintiffs' claims, an analysis of the data, and a proposal for settlement. Prior to mediation, counsel for the Parties also participated in a videoconference to further address data and damages issues.

21.    On December 14, 2018, the parties participated in an all-day mediation session in New York City with mediator Michael Dickstein. At mediation, the Parties reached an agreement in principle, but numerous issues remained to be determined through continued negotiations. On December 24, 2018, the parties filed a joint notice to advise the Court that the parties had reached an agreement in principle to resolve named and opt-in

9

Plaintiffs' and R.23 class members' claims, under the FLSA and pursuant to the NCWHA and NMMWA, and Rule 23 of the Federal Rules of Civil Procedure.  *See* Dkt. No. 47.

22.     For a true and correct copy of the Settlement Agreement with proposed Notice(s) and Claim Forms, see Dkt. No. 53-1.

23.     At all times during the settlement negotiation process, negotiations were conducted at arms'-length.

24.     On February 22, 2019, Plaintiffs sought leave to file their Second Amended Complaint to narrow the definition of the proposed class in light of information obtained during the informal discovery in advance of mediation.  In addition, since the mediation, CMST and GAH have drafted the settlement agreement, notice, and various motions and other documents necessary to effectuate the proposed settlement.

### *Risk of Litigation*

25.     Although Plaintiffs and their counsel believe their case is strong, they recognize that it is subject to considerable risk. Among other things, Plaintiffs' Counsel recognize the risk that the Court would not find all Fidelity defendants to be joint employers of the Plaintiffs and the risk of requesting class certification and maintaining it through trial. The Court has not certified any Rule 23 Classes yet, and Plaintiffs anticipate that such a determination would be reached only after intense, exhaustive briefing. Plaintiffs believe that the settlement set forth in this Agreement confers substantial benefits on Settlement Class Members and have determined that the settlement is in the best interest of Named Plaintiffs, Opt-in Plaintiffs, and the other members of the Settlement Classes.

### The Settlement Fund

26.    Plaintiffs' Counsel believe the settlement represents a substantial recovery for putative Plaintiffs/Class Members, particularly in light of the risks of litigation.  These risks included the risk of not obtaining collective or class certification, losing on the merits, and losing on appeal.

27.    Here, Defendants have agreed to settle this case for an amount of $3 million, which Plaintiffs' Counsel believe is substantial.

28.    Simultaneous with Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Expenses, Plaintiffs have also filed Unopposed Motions for Provisional Certification of the Settlement Class; Appointment of Plaintiffs' Counsel as Class Counsel; Preliminary Approval of Class and Collective Action Settlement; Approval of Settlement Administrator and Approval of Plaintiffs' Notice of Settlement.

### Settlement Administrator

29.    Subject to Court approval, the parties intend to retain RG2 Claims Administration LLC., ("RG2") to administer the settlement.  If the Court grants preliminary approval to the Parties' proposed settlement, it is anticipated that once RG2 sends the Notice of Settlement, Plaintiffs' Counsel and staff will have to respond to numerous class members' questions about the terms of the settlement and the amount of their settlement award.

### Time Spent on the Litigation

30.     As of February 22, 2019, both GAH and CMST have spent more than 1,463.9 hours litigating and settling this litigation, including time spent by attorneys, paralegals, and law clerks.

31.     Throughout this case, CMST and GAH made efforts to work efficiently and avoid duplication.  For example, GAH took primary responsibility for drafting the complaint, first amended complaint, motion for conditional certification along with the supporting declarations.  As part of this process, GAH took primary responsibility for interviewing plaintiffs and coordinating with potential opt-ins plaintiffs.  CMST took responsibility for drafting the opposition to Fidelity's motion to dismiss.  During the pre-mediation discovery phase, our firms divided the document review process by subject matter.  CMST primarily reviewed documents involving call-center associates' pre-shift time and Fidelity's time-tracking systems.  GAH primarily reviewed Fidelity documents involving quarterly bonuses, fitness reimbursements, student loan repayments, and contacted named and opt-in Plaintiffs to further discuss information found in the data. During this time, CMST conducted in-house analysis of data Fidelity provided from its ARTIC timekeeping system, using a paralegal working under the supervision of attorneys. In addition, GAH contracted an outside consultant who analyzed Fidelity's payroll records with CMST's guidance, and given the complexities in the damage calculations, lead counsel for both firms coordinated with the consultant to ensure that his data analysis considered the relevant payments and made the correct regular rate and overtime calculations based on the law.   After the mediation, CMST and GAH divided the work necessary to effectuate the proposed settlement.   While CMST focused on drafting the

second amended complaint and motion for leave to file, the settlement agreement, notice, reminder post card, claim form and individual agreements for those opt-ins not within the class, GAH took primary responsibility in drafting the motion and supporting brief for preliminary approval, proposed order, motion and supporting brief for fees and litigation expenses, and motion and supporting brief for service awards.

32.     As such, a small team of attorneys from both firms was primarily utilized at any one time in order to minimize duplication of efforts and maximize billing judgment. GAH has up to date detailed time records with redactions to protect attorney work product and attorney/client privilege, and they are available upon request for the Court's *in-camera* review.

33.     The hours reported are reasonable for a case of this complexity and size. They were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff person participating in the case.

### *GAH's Rate*

34.     As a 22-year wage and hour practitioner, my current rate is $650.00 per hour for this type of litigation.  Notably, though, all wage and hour individual or class action lawsuits litigated by GAH are done so on a pure contingency fee basis, meaning GAH does not require clients to pay hourly fees or retainers and if a matter does not result in money recovery, GAH recovers no attorney's fees, and is not reimbursed for any out-of-pocket expenditures.

35.     Since January 2013, (when I started my practice), my rate has increased by

13

less than 10%, from $595 per hour to $650 per hour, which is a fair change proportionate to the risk associated with contingency fees and the firm's growth, high demand, and increased experience in wage and hour litigation. GAH's rates are consistent with the usual and customary hourly rates for the type of work GAH performed, as established in similar collective/class action matters, nation and state-wide. *Rehberg v. Flowers Banking Co. of Jamestown, LLC,* No. 3:12-cv-00596, Dkt. 250 (W.D.N.C. June 30, 2017) (approving hourly rates ranging from $375 per hour (associate) to $975 per hour (partner); *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 260 (E.D. Va. 2009) (approving as reasonable rates ranging from $440 to $775 for partners and $295 to $525 for associates); *Dooley v. Saxton*, No. 1:12-cv-01207-MC, ECF No. 187 (D. Or. Oct. 19, 2015) (approving as reasonable rates ranging from $375 to $790 per hour); *Slipchenko v. Brunel Energy, Inc.*, No. CIV.A. H-11-1465, 2015 WL 338358, at *19 (S.D. Tex. Jan. 23, 2015) (approving as reasonable "$240–$260 for paralegals, $415–$530 for associates, and $635–$775 for partners"); *Parker v. Dish Network, L.L.C.*, No. 4:11-cv-1457, ECF No. 63 (N.D. Cal. Feb. 13, 2012), granted, ECF No. 87 (Apr. 17, 2012) ($530 to $710 for partners and $350 for associates).

36. GAH's hourly rate(s) have also been separately approved for payment by courts in other litigation. *See, e.g., Kincaid v. Courier Express/Charlotte, Inc., et al*, 1:18-cv-707-AT, Dkt. 87 (N.D. Ga Jan. 31, 2019) ("Plaintiff's Counsel are awarded attorneys' fees in the amount equal to one-third of the Maximum Gross Settlement Amount (i.e., $533,333.33) should the Court grant final approval. . .."); *Velasquez-Monterrosa v. Mi Casita Restaurants*, No. 5:14-CV-448-BO, 2016 WL 1703351 (E.D.N.C. Sept. 26, 2017)

(approving GAH's former $595 rate and approving one-third of the settlement fund for class counsel's attorneys' fees); *In Re Gentiva Health Services Inc.*, No: 1:14CV01892-WBH, Dkt. 113 (June 22, 2017) (approving GAH's former $595 rate as the basis of a lodestar crosscheck for a common fund award that was approved by the court in nationwide action); *Tomkins v. Amedisys*, No. 3:12-cv-1082 (D. Conn. 2016) (approving GAH's $595 rate of three years ago as the basis of a lodestar crosscheck for a common fund award that was approved by the court in nationwide action); *McLaurin v. Prestage Foods*, 2012 U.S. Dist. LEXIS 13086 (E.D.N.C. Feb. 3, 2012) (same, at the then-charged lower rate of $385 per hour, while GAH was a firm associate, not owner, and before attaining an additional seven years of collective/class action experience both locally and in nationwide actions, and stating, "[T]he court [allows] the motion for attorneys' fees and awards attorneys' fees . . . . [t]he court finds this amount to be reasonable in light of the complexity of the case, the history of the litigation, and the results obtained").

### *Plaintiffs Counsels' Lodestar*

37. As of February 22, 2019, GAH's lodestar is $401,429.50. Plaintiffs' Counsel's total lodestar on the case, thus far, is $736,015.00.

38. GAH's lodestar calculation is made based upon our current billing rates for each timekeeper, multiplied by their recorded hours.

| Timekeeper | Position | Rate | Hours | Lodestar |
|---|---|---|---|---|
| Hernandez, Gilda A. | Attorney | $650 | 479.8 | $304,858.00 |
| Cohen, Michael | Attorney | $300 | 69.1 | $20,730.00 |
| Smiley, Emma | Attorney | $300 | 215.1 | $70,140.00 |

15

| Smith, Charlotte | Attorney | $275 | 6.5 | $1,787.50 |
| Kreuz, Rachael | Paralegal | $190 | 20.6 | $3,914.00 |
| **Total** | | | | **$401,429.50** |

39.     The time worked on this case overall is more substantial than the time set forth above. In this fee petition, I have excluded time worked by individuals who had very limited involvement in the litigation, generally assisting when the regular paralegals were unavailable, or any other time that I did not believe should be included in an exercise of the Firm's billing judgment. In total, I have excluded $6,059.50 of time. With this reduction, I believe that the remaining time was reasonably and necessarily expended in the prosecution of this action on behalf of putative plaintiffs and class members. In addition, work was done even after the settlement in principle was reached. Such time includes, but is not limited to, reviewing, and/or editing the draft of the settlement agreement, drafting the motion for excess word count, motion for preliminary approval, proposed order, brief in support, fee petition, declaration(s), exhibits, and motion for service awards, and that time is included here.

40.     If the Court grants final approval to the Parties' proposed settlement agreement, Plaintiffs' Counsel also expects to respond to more class member inquiries after that final approval order, especially after checks are issued. Plaintiffs' Counsel also expect to spend additional time working on this case, including preparing for and attending the final fairness hearing, answering class member questions, and answering questions from the Settlement Administrator.

41.     In Plaintiffs' Counsel's experience, settlements of this nature and size require a substantial ongoing commitment.  Plaintiffs' Counsel undertook to prosecute this action without any assurance of payment for their services, litigating the case on a wholly contingent basis in the face of tremendous risk.  Wage and hour cases of this type are, by their very nature, complicated and time-consuming.  Lawyers undertaking representation of large numbers of affected employees in wage and hour actions inevitably must be prepared to make tremendous investment of time. Plaintiffs' Counsel stood to gain nothing in the event the case was unsuccessful.

### *Expenses Incurred in this Litigation*

42.     As of February 22, 2019, Plaintiffs' Counsel have incurred a total of approximately $30,033.87, in litigation expenses to prosecute this litigation.  CMST has incurred $12,119.63 in litigation expenses, and GAH has incurred approximately $17,914.24 in litigation expenses (i.e., postage, courier fees (UPS and FedEx), long distance, computer legal research, transportation, working meals, photocopies, and electronic research, and expert fees).  The expenses incurred were reasonable and necessary under the circumstances of this litigation.  The expenses incurred in this action are reflected on the books and records of this firm.  These books and records are prepared from invoices, expense vouchers, and other source materials and are an accurate record of the expenses incurred.  The underlying invoices and receipts are available for inspection if the Court requests.   The expenses incurred by our Firm can be divided into the following categories:

| Category | Amount |
|---|---|
| Mailing Expenses | $38.90 |
| Expert Fees | $14,932.50 |

| | |
|---|---:|
| Middle District of NC Filing Fees | $400.00 |
| Mediation Travel - Hotel | $947.99 |
| Mediation Travel - Meals | $481.88 |
| Mediation Travel – Transportation | $1,112.97 |
| **Total** | **$17,914.24** |

Plaintiffs' Counsel also anticipate incurring additional litigation expenses in travel, meals, and miscellaneous expenses relating to any potential upcoming fairness hearing, meetings with client(s) to discuss the potential fairness hearing, including any potential traveling to meet with them, ongoing long-distance communications with class members and opt-in plaintiffs to discuss settlement payments before and after distribution of such payments, and any other miscellaneous expenses not anticipated. Still, Plaintiffs' counsel requests a total of $ **30,033.87** in litigation expenses.

### *Service Awards for named and opt-in Plaintiffs.*

43.    Named Plaintiffs Bailey Reynolds, Helen Martinez, and Opt-In Plaintiffs have made important contributions to the prosecution and fair resolution of this case on behalf of opt-in plaintiffs and putative Plaintiffs and Class Members.

44.    Named and Opt-In Plaintiffs assisted Plaintiffs' Counsel's investigation and prosecution of the claims by providing detailed factual information regarding their job duties, job locations, compensation, and Defendants' recordkeeping and compensation practices and other information relevant to their claims. Several of the Named and Opt-In Plaintiffs submitted declarations in support of Plaintiffs' motion for conditional certification.

45.    Named and Opt-In Plaintiffs provided extensive information, and in some cases, declarations in support of Plaintiffs' Motion for Conditional Certification. Named

Plaintiffs Bailey Reynolds and Helen Martinez also reviewed extensive documents produced during the mediation process and discussed various aspects of the case as needed.

46.     Specifically, the Named Plaintiffs provided extensive information about the nature of Defendants' pre-shift activities, the amount of time engaged in such activities, in addition to, policies and practices relating to timekeeping, bonuses and fitness reimbursements.  Furthermore, they provided documents and a declaration, to support the same. Finally, during the investigative phase of this matter, litigation and prior to/following mediation, Plaintiff Reynolds met with Plaintiffs' counsel several times, to bring and review documents.  As to Ms. Martinez, while she was unavailable personally, she always made herself available telephonically, (i.e., weeknights, weekends, and even during the day), as she understood the significance of her contributions, to the success of this case. Similarly, Opt-In Plaintiffs who previously submitted a written consent form requesting to join the FLSA collective action in this case should receive a minimum settlement payment of $2,000 in recognition of their support in prosecuting this case, to explain the policies and practices while employed at Defendants' various call centers.  These service awards reflect the significant contributions they made to the case and the time and effort spent in producing, coordinating, and reviewing documents and information.

47.     Overall, their involvement in the case was instrumental to Plaintiffs' counsel's ability to prosecute these claims, and without their hard work, effort, and risks taken, the parties may not have been able to reach a settlement agreement at this stage.


I declare under penalty of perjury, under 28 U.S.C. § 1746, under the laws of North

Carolina that the foregoing is true and correct to the best of my knowledge.

Executed this 22 February 2019.

*/s/Gilda Adriana Hernandez*
Gilda A. Hernandez NCSB #36812
**THE LAW OFFICES OF GILDA A.
HERNANDEZ, PLLC**
1020 Southhill Drive, Suite 130
Cary, NC 27513
Telephone: (919) 741-8693
Facsimile: (919) 869-1853
ghernandez@gildahernandezlaw.com

*Attorney for Plaintiffs*

## CERTIFICATION OF SERVICE

I hereby certify that on February 22, 2019, I electronically filed the foregoing true and accurate copy of **DECLARATION OF GILDA ADRIANA HERNANDEZ IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION**S **FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; APPROVAL OF SETTLEMENT ADMINISTRATOR; APPROVAL OF PLAINTIFFS' NOTICE OF SETTLEMENT; APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND APPROVAL OF SERVICE AWARD** with the Court using the CM/ECF system, and I hereby certify that I have thereby electronically served the document to the following:

Richard G. Rosenblatt  (*pro hac vice*)
August W. Heckman III (*pro hac vice*)
**MORGAN, LEWIS BOCKIUS LLP**
502 CARNEGIE CENTER
PRINCETON, NJ 08540-6289
TELEPHONE: (609) 919-6600
FACSIMILE: (609) 919-6701
EMAIL: richard.rosenblatt@morganlewis.com
august.heckman@morganlewis.com

Kevin Scott Joyner
Regina W. Calabro

Robert A. Star
**OGLETREE DEAKINS NASH SMOAK & STEWART, P.C.**
4208 SIX FORKS ROAD, SUITE 1100
RALEIGH, NC 27609
TELEPHONE: (919) 787-9700
FACSIMILE: (919) 783-9412
EMAIL: kevin.joyner@ogletreedeakins.com

regina.calabro@ogletreedeakins.com
robert.sar@ogletreedeakins.com

*Attorneys for Defendants*

Respectfully submitted,

/s/ *Gilda Adriana Hernandez*

Gilda A. Hernandez (NCSB # 36812)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Drive, Suite 130
Cary, NC 27513
Telephone: (919) 741-8693
Facsimile: (919) 869-1853
ghernandez@gildahernandezlaw.com

Christine E. Webber (#439368), *pro hac vice*
**COHEN MILSTEIN SELLERS & TOLL, PLLC**
1100 New York Avenue, Suite 500 West
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
cwebber@cohenmilstein.com

*Attorneys for Plaintiffs*