IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BAILEY REYNOLDS and HELEN MARTINEZ on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:18-CV-423 |
| FIDELITY INVESTMENTS INSTITUTIONAL OPERATIONS COMPANY, INC., FMR LLC, FIDELITY BROKERAGE SERVICES LLC, FIDELITY WORKPLACE INVESTING LLC, and VERITUDE LLC, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The plaintiffs seek final court approval of a settlement agreement with the defendants and dismissal with prejudice of two Rule 23 class actions and a collective action under the Fair Labor Standards Act. In April 2019, the Court granted preliminary approval, ordered settlement notice to be sent to class members, and set a fairness hearing that was subsequently continued to January 3, 2020. No class member filed an objection to the proposed settlement, and only five opted out. After considering the record, the proposed settlement agreement, the supporting memoranda and exhibits, and the statements of counsel during the fairness hearing, the Court finds that the settlement meets the requirements of Rule 23 and of the Fair Labor Standards Act, and it is fair, reasonable, and adequate. The Court will grant the motion and approve the settlement.

**Procedural History**

Plaintiffs Bailey Reynolds and Helen Martinez worked as call center associates for the defendants in their Durham, North Carolina and Albuquerque, New Mexico locations, respectively. They assert claims on behalf of themselves and all others similarly situated, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b); the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.6, 95-25.22(a), (a1), and (d); and the New Mexico Minimum Wage Act ("NMMWA"), N.M. Stat. Ann. §§ 50-4-15, 50-4-22(D), 50-4-26(C), (D), (E), and (G).

The plaintiffs claim that the defendants failed to pay workers in their Workplace Call Centers for required pre-shift work and failed to include some bonuses and reimbursements for student loan payments and fitness expenses in calculating the regular rate and the correct overtime rate. The plaintiffs assert that each violation resulted in a failure to accurately calculate overtime due, in violation of all three statutes, and that the unpaid pre-shift time violates the NCWHA even in weeks when no overtime was worked.[1] In addition, Plaintiff Bailey Reynolds asserts that the defendants retaliated against her individually in violation of the Family Medical Leave Act ("FMLA"). 29 U.S.C. § 2601, *et seq*. In February 2019, the Court allowed the plaintiffs to file a Second Amended Complaint, which added the defendant Veritude LLC and narrowed class claims to Workplace call centers specifically. The defendants denied all of these allegations.

---

[1] For simplicity this Order will refer to the plaintiffs seeking class certification based on their claims under the NCWHA and NMWHA as "the Rule 23 class," and the plaintiffs seeking to pursue a collective action under the FLSA as "the FLSA class."

Although class-wide merits discovery had not yet begun at time of settlement, this case had already involved litigation over several motions. The parties engaged in briefing before any ruling on conditional certification, including the defendants' partial motion to dismiss and the plaintiffs' motion for conditional certification of an FLSA collective. Soon after the plaintiffs filed the motion for conditional certification, the parties agreed to participate in mediation, negotiated a detailed mediation agreement, and jointly moved to stay proceedings in order to pursue mediation. *See* Doc. 43. Under the parties' mediation agreement, the defendants provided time and payroll data for the plaintiffs' retained data expert to calculate possible damages for the plaintiffs and other similarly situated individuals.

On December 14, 2018, the parties participated in an all-day mediation session with an attorney experienced in the mediation of complex wage and hour actions. The parties reached an agreement in principle, and after nearly two months of further negotiation, the parties reached the settlement agreement described *infra*.

On February 22, 2019, the plaintiffs filed their unopposed motion for preliminary settlement approval, consistent with the parties' Stipulation and Settlement Agreement, to (1) provisionally certify the settlement classes; (2) appoint plaintiff's counsel as Class Counsel; (3) approve the appointment of RG/2 as settlement administrator; and (4) approve the proposed Notice and Claim Form. Doc. 52. The Court held a telephonic hearing and asked the parties' counsel to respond to questions about the settlement agreement, notice, and forms. To address some of the Court's concerns, plaintiffs' counsel filed a supplemental memorandum. Doc. 64.

On April 10, 2019, the Court preliminarily approved, subject to further consideration at the Final Approval Hearing, the Parties' Stipulation and Settlement Agreement; the proposed notices for mailing, consistent with the procedures outlined in the Parties' Stipulation and Settlement Agreement; and the appointment of RG/2 as the Settlement Administrator. Doc. 65. The Court conditionally certified the Putative FLSA Collective under Section 216(b) of the FLSA and conditionally certified the Putative Rule 23 Settlement Class under Rule 23 of the Federal Rules of Civil Procedure, for settlement purposes only. *Id*. The Court ordered the appointed Settlement Administrator, RG/2, to notify class members of the settlement and how to opt out or object to the settlement terms. *Id.* at ¶¶ 15–19, 25. Under Fed. R. Civ. P. 23(e), the Court scheduled a fairness hearing for August 21, 2019. *Id.* at ¶¶ 37–39.

On June 21, 2019, the plaintiffs sought to extend the notice period and to permit sending notice via text message to increase responses. Doc. 66. On July 5, the plaintiffs modified their motion: due to a significant surge in claim forms received—to 1,121, a 300% increase following the postcard reminder—the plaintiffs no longer believed the text message was necessary and asked for a second reminder postcard instead. Doc. 70. On July 9, the Court granted the plaintiffs' motion for extension of time, along with the request for a second reminder card to be mailed to putative class members, which the defendants did not oppose. Doc. 71.

One month later, the parties filed a joint motion to continue the fairness hearing date because approximately 700 putative class members were inadvertently omitted from the distribution list and thus did not receive notice of the settlement. Doc. 72. The Court

4

granted the parties additional time to send notice to these additional putative class members, giving them seventy-five days to send back the claim form.  A reminder card was sent to the timely claimants, advising them of the delay and that the fairness hearing would be rescheduled for January 3, 2020.  The Court gave plaintiffs until December 13 to file supplemental evidence in support of the motion for approval of settlement, service awards, and attorneys' fees.  *See* Doc. 74.

The RG/2 Director of Claims Administration affirms that notice and reminder postcards were mailed to all 5,761 class members and notice was published on a settlement website.  Doc. 78-1 at ¶¶ 6–7, 9–10, 12–15.  Of the notices returned undeliverable, RG/2 was able to identify corrected or updated addresses for all but 263 of the 5,761 class members.  *Id.* at ¶ 17.  The notice sent to class members informed them of the deadline to submit a claim form, as well as the extensions of that deadline noted *supra*.  *Id.* at ¶¶ 8, 10, 14.  Overall, RG/2 received 1,945 claim forms, representing 33.7% of the class.  Doc. 90 at ¶ 2.  No class members objected, and only five opted out.  Doc. 78-1 at ¶¶ 18–19.

**Proposed Settlement Agreement**

The proposed settlement agreement provides for a Gross Settlement Amount of $3,000,000.  Doc. 64-1 at § II(A)(6).  From this and subject to Court approval, Class Counsel may receive up to $1,000,000, or one-third the common fund, in attorney's fees and reimbursement of litigation expenses (which total $33,931.42).  Doc. 64-1 at § IV(C); Doc. 79 at ¶ 11.  The named plaintiffs may also receive $20,000 and $15,000 in addition to their settlement allocations, and FLSA opt-in plaintiffs may receive the greater of

5

$2,000 or their settlement allocation. Doc. 64-1 at § III(C)(3), (4). Class Counsel have requested these awards and reimbursement in other motions, Docs. 54 and 56, which the Court has granted in an Order issued concomitantly with this one.

RG/2 estimates that class members will receive $984,389.74, excluding service awards. Doc. 90 at ¶ 2. This amount will be distributed to class members in amounts proportional to each person's estimated unpaid wages. *See* Doc. 64-1 at §§ III(C)(1), (2). The estimated maximum recovery by an individual class member is $5,972.17, the lowest is $25, and the average is $506.11. Doc. 90 at ¶ 2. The defendants will pay the employer's share of all required payroll taxes, the amount of which is not included in the Gross Settlement Amount. Doc. 64-1 at § III(D). The settlement does not include injunctive relief because, as their counsel noted at the fairness hearing, the defendants have since instituted an automatic log-in for their timekeeping system that they aver will avoid uncompensated time going forward. North Carolina claimants may recover for any weeks worked, and other claimants may only recover for weeks in which they worked more than 40 hours, as explained *infra*. *Id.* at §§ II(A)(24), (25).

Class members must timely submit a claim form to receive payment, which also serves as an opt-in form for the FLSA collective action. *Id.* at § III(B). Claimants whose calculated award is less than $25 will be awarded $25. *Id.* at § III(C)(2). Any unclaimed funds—i.e., for class members who do not timely submit the claim forms or who opt out of the settlement—will revert to the defendants. *Id.* at § III(B). If claimants do not timely cash their settlement checks, that amount will go to *cy pres* recipients, the National Employment Law Project and Legal Aid of North Carolina. *Id.* at § IV(D)(2).

Class members agree to release all claims that "relate to hours worked or the payment of wages" and that arose before the final approval of the settlement agreement. *Id.* at § V(A)(1). Other than for the named plaintiffs, this release does not include discrimination claims. *Id.* Released claims are thus limited to the subject matter and timeframe of this case. The settlement agreement further clarifies that members of a settlement class who do not opt into the collective action have not waived claims under the FLSA. *Id.*

## Final Settlement Approval

"It has long been clear that the law favors settlement." *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992). This is particularly true in class actions. *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011); *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *Reed v. Big Water Resort, LLC*, No. 2:14-cv-01583-DCN, 2016 WL 7438449, at *5 (D.S.C. May 26, 2016) (quoting same); William B. Rubenstein, 4 *Newberg on Class Actions* § 13.44, n.1 (5th ed. Dec. 2019 Update) (collecting cases).

The Court may approve a class settlement only if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "In applying this standard, the Fourth Circuit has bifurcated the analysis into consideration of fairness, which focuses on whether the proposed settlement was negotiated at arm's length, and adequacy, which focuses on whether the consideration provided the class members is sufficient." *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06–CV–00400–BR, 2009 WL 2208131, at *23 (E.D.N.C. July

7

22, 2009) (citing, e.g., *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991)). The Court acts as a fiduciary of the class members. *Sharp Farms v. Speaks*, 917 F.3d 276, 293–94 (4th Cir. 2019).

A four-factor test is applied to determine the fairness of a proposed settlement: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area [of law at issue]." *Jiffy Lube*, 927 F.2d at 159; *see also West v. Cont'l Auto. Inc.*, No. 3:16-cv-00502-FDW-DSC, 2018 WL 1146642, at *4 (W.D.N.C. Feb. 5, 2018) (applying same standard).

The Court assesses the adequacy of the settlement through the following factors: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Jiffy Lube*, 927 F.2d at 159; *Beaulieu*, 2009 WL 2208131, at *26 (applying same factors). The first two factors are the most important. *Sharp Farms*, 917 F.3d at 299.

Under Rule 23, the Court also considers whether the proposed settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). Any differential treatment requires justification. *See* 4 *Newberg on Class Actions* § 13:56.

Under the FLSA, a party's failure to opt into a collective action does not prevent them from bringing their own suits at a later date. FLSA collective actions thus do not

8

implicate the same due process concerns as Rule 23 actions. *See Hall v. Higher One Machs., Inc.*, No. 5-15-CV-670-F, 2016 WL 5416582, at *4 (E.D.N.C. Sept. 26, 2016). Approval of FLSA collective action settlements "generally involves less stringent standards than Rule 23 class settlements." *DeWitt v. Darlington Cty.*, No. 4:11-cv-00740-RBH, 2013 WL 6408371, at *3 (D.S.C. Dec. 6, 2013). Courts may approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1355 (11th Cir. 1982); *Saman v. LBDP, Inc.*, No. DKC 12–1083, 2013 WL 2949047, at *3 (D. Md. June 13, 2013). Courts consider "(1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23, and (3) the reasonableness of the attorneys fees." *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 407–08 (D. Md. 2014).

### A. Final Approval of the Rule 23 Class Action

1. All four fairness factors favor approval here.

2. The parties agreed to a settlement in principle after a full-day mediation session with a mediator experienced in wage and hour law, and they continued to negotiate additional issues that were memorialized in the settlement agreement. *See* Doc. 58. The mediation itself required extensive preparation, including several legal filings and the review of records produced by the defendants. The plaintiffs also responded to defendants' motion to dismiss, filed an amended complaint, and briefed the motion for class certification—giving Class Counsel a thorough understanding of the strengths of and potential problems with their claims. *See West*, 2018 WL 1146642, at *4 (evaluating

whether "Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation").[2] Further litigation would be complex, expensive, and uncertain. Thus, the posture of the case at the time the settlement was proposed weighs in favor of final approval.

3. The Parties have completed sufficient informal discovery to recommend settlement. To prepare for mediation, the defendants produced payroll and time records for the named and opt-in plaintiffs and putative class members. Class Counsel conducted extensive factual investigation with the help of the named and opt-in plaintiffs. Briefing on the motions noted *supra* also provided plaintiffs and their counsel with a wealth of information. Thus, the second factor weighs in favor of final approval.

4. The circumstances surrounding the negotiations also favor approval. An experienced mediator assisted the parties, and there is no evidence of coercion or collusion that would cast doubt on the fairness of these negotiations.

5. Finally, Class Counsel have extensive experience in FLSA and class action litigation. *See* Doc. 58 at ¶¶ 3–11; Doc. 59 at ¶¶ 3–4.

6. In addition, the liability release terms for the class members are fair. Except for named plaintiffs, who release "any and all claims whatsoever," the release is limited to claims "that relate to hours worked or the payment of wages" and does not include discrimination claims. Doc. 64-1 at § V(A)(1). The release terms only apply to claims arising before the settlement agreement goes into effect, and class members only

---

[2] The Court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

waive claims under the FLSA if they submitted a claim form. *Id.*

7. The settlement is also adequate in light of the relevant factors and the record.

8. First, Class Counsel represent they have thoroughly investigated and researched potential claims, *see* Doc. 58 at ¶¶ 15–16, and the record shows that the defendants only sought a partial motion to dismiss that has since been mooted. The plaintiffs also further refined their class definitions in the operative complaint using informal discovery of data provided by the defendants. Doc. 62. These developments indicate that the plaintiffs' case has been well vetted and refined to present the strongest position. It is not, however, a sure thing. Class Counsel also state there is no legal authority directly addressing the issue of bonus compensation as it impacts the calculation of overtime here. *See* Doc. 58 at ¶ 15. Absent settlement, the plaintiffs would have to overcome probable attempts to decertify the collective action and certification of the Rule 23 Classes. Moreover, the plaintiffs would still have to address the defense arguments on the compensability of pre-shift activities, because they maintain the plaintiffs, opt-ins, and Rule 23 class members have been paid for such time. Doc. 53 at 39. The settlement amount thus reasonably takes into account the strengths and weaknesses of the plaintiffs' case, as well as the risk incurred in proceeding through motions practice and trial and, even if they are successful, the delay in benefits to the class members.

9. Class Counsel have not expressed any concerns as to the solvency of the defendants or their ability to recover if they were to proceed to trial, nor is there a basis for any such concerns on the record.

10. The class members' reaction to the settlement was positive. The notices sent to all Settlement Class Members included an explanation of the allocation formula that would be used to determine their individual share of the settlement. The form of the Court-approved notice sent to the Rule 23 Settlement Class also informed individuals of their right to object to or exclude themselves from the Settlement and explained how to do so. No Settlement Class Member objected to the proposed settlement, and only five requested exclusion. This favorable response supports a finding that the settlement is fair and reasonable. *See, e.g.*, *West*, 2018 WL 1146642, at *6 ("the absence of a large number of objections . . . raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members," which "weighs in favor of approving the Settlement"); *Deem v. Ames True Temper, Inc.*, No. 6:10–cv–01339, 2013 WL 2285972, at *2 (S.D. W. Va. May 23, 2013).

11. The different treatment of the North Carolina Rule 23 class members is justified by a difference in applicable state law. The North Carolina class members are entitled to recover unpaid wages for weeks where they worked under 40 hours, and other class members may only recover for weeks with more than 40 work hours. *See* Doc. 64-1 at §§ II(A)(24), (25). Class Counsel explained in supplemental briefing and at the fairness hearing that North Carolina wage and hour law is more generous in this respect than both the FLSA and New Mexico state wage and hour laws. *See* Doc. 64 at 5; Doc. 62 at ¶¶ 141–50. FLSA collective action members in Kentucky, New Hampshire, and Texas who opt in will release claims under those states' wage and hour laws; however, where such state laws may be more favorable to the putative collective members than the

FLSA, that information is in the amended notice, and the defendants' data indicates relatively few plaintiffs would benefit from these laws. Doc. 64 at 7–9. This differential treatment is thus explained by the availability of greater damages to class members in North Carolina. *See Petruzzi's, Inc. v. Darling-Delaware Co., Inc.*, 880 F. Supp. 292, 300–301 (M.D. Pa. 1995) ("different claims or greater damages" may justify disparate treatment of some class members).

12. As the settlement agreement is fair, adequate, and reasonable, and the differential treatment among class members is justified, the Court approves the Settlement as to the Rule 23 classes.

**B. Final Approval of the FLSA Collective Action**

13. The settlement agreement also meets the three factors necessary for approval under the FLSA.

14. First, there are FLSA issues actually in dispute. In response to the plaintiffs' claim for unpaid overtime and for an incorrect method of calculating their pay, the defendants maintain the plaintiffs were correctly paid for all time owed. As noted *supra*, Class Counsel have also asserted that the question of how to calculate certain bonuses in this context is unclear and not explained by applicable legal authority. "[S]uch uncertainty confirms the existence of a *bona fide* dispute as to the extent of Defendants' FLSA liability (if any) in this case." *Saman*, 2013 WL 2949047, at *4.

15. As analyzed *supra* under Rule 23, the settlement is fair and reasonable. *See Latham v. Branch Banking & Tr. Co.*, No. 1:12–cv–00007, 2014 WL 464236, at *1 (M.D.N.C. Jan. 14, 2014) (noting district courts have "generally considered the fairness

factors" under Rule 23(e) when evaluating the fairness of a FLSA collective action settlement); *Saman*, 2013 WL 2949047, at *3 (listing factors in FLSA case).

16. The requested attorney's fees and costs are also reasonable for purposes of approving the FLSA settlement; these requests are fully analyzed in a separate order entered concomitantly. Class Counsel's request for one-third of the Gross Settlement Amount in attorney's fees is common among Fourth Circuit district courts, and the lodestar amount—supported by Class Counsel's declarations as to the number of hours and the reasonableness of the hourly rates, *see Saman*, 2013 WL 2949047, at *7—is just under $1,000,000. "There do not appear to be unsuccessful claims unrelated to the successful ones, which could reduce the amount otherwise properly payable," and the expenses are supported by the documentation submitted. *In re Dollar Gen. Stores FLSA Litig.*, No. 5:09–MD–1500, 2011 WL 3904609, at *4 (E.D.N.C. Aug. 23, 2011).

17. The Court approves the FLSA settlement as a fair and reasonable resolution of a *bona fide* dispute of FLSA provisions.

## Conclusion

It is **ORDERED** that the consent motion for final approval of the settlement agreement, Doc. 77, is **GRANTED** and the settlement of the Rule 23 class actions and FLSA collective action is approved as fair, adequate, and reasonable to the parties. Judgment will be entered separately.

This, the 7th day of January, 2020.

UNITED STATES DISTRICT JUDGE